UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

RAYMOND E. CONNIFF, III,

                                        Plaintiff,

v.                                                          1:25-cv-00848
                                                            (AMN/TWD)


MICHAEL BURTON and ST. MARY'S HOSPITAL,

                                        Defendants.
_____

APPEARANCES:

RAYMOND E. CONNIFF, III
*Plaintiff, pro se*
913582
Montgomery County Jail
P.O. Box 432
Fultonville, NY 12072

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## REPORT-RECOMMENDATION AND ORDER

## I.    INTRODUCTION

The Clerk has sent to the Court for review a complaint submitted by *pro se* plaintiff

Raymond E. Conniff, III, together with an amended application to proceed *in forma pauperis*

("IFP").  *See* Dkt. Nos. 1, 9, 11, 13.[1]  Plaintiff, who is incarcerated at the Montgomery County

Jail, has not paid the filing fee for this action.

_____

[1] By Order entered on July 9, 2025, Plaintiff's initial application to proceed IFP was denied as incomplete, and the action was administratively closed.  Dkt. No. 4.  Upon receiving the completed IFP application, *see* Dkt. Nos. 9, 11, 13, this action was reopened and restored to the Court's active docket on September 19, 2025.  Dkt. No. 12.

## II.     IFP APPLICATION

"28 U.S.C. § 1915 permits an indigent litigant to commence an action in a federal court without prepayment of the filing fee that would ordinarily be charged."[2] *Cash v. Bernstein*, No. 1:09-CV-1922, 2010 WL 5185047, at *1 (S.D.N.Y. Oct. 26, 2010).  "Although an indigent, incarcerated individual need not prepay the filing fee at the time of filing, he must subsequently pay the fee, to the extent he is able to do so, through periodic withdrawals from his inmate accounts."  *Id.* (citing 28 U.S.C. § 1915(b); *Harris v. City of New York*, 607 F.3d 18, 21 (2d Cir. 2010)).

Upon review, Plaintiff has submitted a completed and signed IFP application which demonstrates economic need.  *See* Dkt. Nos. 9, 11, 13.  Plaintiff also filed the inmate authorization form required in this District.  Dkt. No. 10.  Accordingly, Plaintiff's IFP application is granted.

## III.     STANDARD OF REVIEW

The Court must dismiss an IFP complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915(e)(2)(B); *see Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998).  The Court must also dismiss a complaint when the Court lacks subject matter jurisdiction of the claims raised.  *See* Fed. R. Civ. P. 12(h)(3).

---

[2] Section 1915(g) prohibits a prisoner from proceeding IFP where, absent a showing of "imminent danger of serious physical injury," a prisoner has filed three or more actions or appeals that were subsequently dismissed as frivolous, malicious, or failing to state a claim upon which relief may be granted.  28 U.S.C. § 1915(g).  Based upon the Court's review of Plaintiff's litigation history on the Federal Judiciary's Public Access to Court Electronic Records ("PACER") Service, it does not appear Plaintiff has accumulated three strikes for purposes of 28 U.S.C. § 1915(g).

While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted, emphasis in original). "But the 'special solicitude' in *pro se* cases has its limits – to state a claim, *pro se* pleadings still must comply with Rule 8 of the Federal Rules of Civil Procedure, which requires a complaint to make a short and plain statement showing that the pleader is entitled to relief." *Bey v. Officer Carrillo, et al.*, No. 25-CV-2099, 2025 WL 1644044, at *1 (S.D.N.Y. June 10, 2025) (internal citation omitted) (citing Fed. R. Civ. P. 8(a)).

A claim is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 324-25 (1989), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); *see also Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992) (holding that "finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible"); *Livingston*, 141 F.3d at 437 ("[A]n action is 'frivolous' when either: (1) the factual contentions are clearly baseless . . .; or (2) the claim is based on an indisputably meritless legal theory.") (internal quotation marks and citation omitted).

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The statement of the claim must do more than present "an unadorned, the-defendant-harmed-me accusation." *Id*. It must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550

U.S. at 555 (internal quotation marks and citations omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555).

## IV.    BACKGROUND [3]

The following facts are set forth as alleged by Plaintiff in the complaint. Dkt. No. 1. On or about March 30, 2025, Plaintiff admitted himself "into St. Mary's Hospital (M.H.U.) Mental Health Unit." *Id.* at 2. Every morning, Plaintiff would have conversations with Dr. Russell Loeber about discharge. *Id.* "He would give innuendos of the chance of possibly getting arrested, in which derived from a statement that was given by Michael Burtons daughter Alana. This gave Mr. Michael Burton the ulterior motive to call police so as to arrest Plaintiff leaving the Mental Health Unit." *Id.* The complaint continues:

> As Plaintiff endured from the time of admittance, claimant took approach of rehabilitating hisself privately. However, the said Dr. Loeber Russell ask pesonal questions as to the editing of discharge arrangements intermittently but in exiting gave claimant hints of being arrested this was the last thing claimant knew before discharging.
>
> It was during one of these intermitting interactions through personnel **Michael Burton** received information. Thus he received company information through nurses of claimants discharge. Theren leaving the facility Plaintiff was arrested when he exited the side door to the facility. This could only be through intermittently conversing with personnel by **Michael Burton**, as to imply a violation of the H.I.P.P.A. This should not go unnoticed nor disregaurded. What is most embellished is the repetatitive nature

---

[3] Citations to Plaintiff's submissions refer to the pagination generated by CM/ECF, the Court's electronic filing system. Plaintiff writes using irregular capitalization. For readability, where appropriate, the Court uses standard capitalization when quoting from the complaint. All other errors in spelling, grammar, and punctuation are as in the original unless otherwise indicated.

> that was implyed in or by colloquy.  It is so many times this happens
> thus to be read by other personnel that is, are not 'nor should not be
> allowed open H.I.P.P.A. violations.  Daily repetitiveness occurs
> though this should be noted or amended so no clients would be
> violated in the future as did the Plaintiff herein.

*Id*. at 3.

The complaint identifies two defendants: (1) Michale Burton, a security guard at St. Mary's Healthcare Hospital; and (2) St. Mary's Hospital, also referred to as St. Mary's Healthcare Hospital (together, "Defendants").  *Id*. at 1-2.[4]  Plaintiff lists three causes of action: (1) "First Amendment ainvassin of privacy whenever common colluguy occurs violating H.I.P.P.A."; (2) "Sixth Amendment when important private papers are left laying around so as not safeguard ones entitled privacy this therefore violates the Sixth Amendment"; and (3) "Fourteenth Amendment decisions from the discharge planner should have been discret thus the backbone to ensurity for protecting the Plaintiff was not availed.  To be put in a program when innuendoes are given so as to threaten to be locked up instead".  *Id*. at 4.  Plaintiff seeks "compensatory damage in the amount of 20 million as well as 30 million for punitive damages for the Mental Trauma induced by the invasion of privacy also with need of psychological assistance with his therapists is being frequented more since the situation occurred."  *Id*. at 5.

On October 9, 2025, Plaintiff filed a one-page "fixed doc." entitled "Cause of action" listing: (1) "Eighth amendment invasion of privacy wherever common collogue occurs violating the H.I.P.P.A."; (2) "Sixth amendment when important private papers are left laying around or

---

[4] Rule 10(a) of the Federal Rules of Civil Procedure provides that, "the title of the complaint must name all the parties."  Fed. R. Civ. P. 10(a).  A party not named in the caption of the complaint or list of parties is not a party to the action.  *See Abbas v. United States*, No. 10-CV-0141, 2014 WL 3858398, at *2 (W.D.N.Y. Aug. 1, 2014) (holding that the failure to name the individual defendant against whom the plaintiff intends to assert claims makes it "infeasible for the Court to determine which of the individual officers mentioned in the body of the complaint should be deemed to be defendants to which claims").

openly shared with staff and other personal that are not authorized to see this therefor violates the

sixth amendment"; and (3) "Fourteenth amendment decisions from the discharge planner should

have been discreet thus the backbone to ensure the protection of said plaintiff was not availed.

To be put into a program when innuendos are given so as to threaten to be locked up."  Dkt. No.

14 at 1.  The submission is not signed and does not contain a caption or list of parties.  *See id*.

Piecemeal pleadings are unacceptable.  *See* N.D.N.Y. L.R. 15.1.  Nevertheless, in view of

Plaintiff's *pro se* status, the Court will consider Dkt. No. 14 as part of the original complaint.

## V.    ANALYSIS

Plaintiff brings this action pursuant to 42 U.S.C. § 1983, which establishes a cause of

action for "the deprivation of any rights, privileges, or immunities secured by the Constitution

and laws of the United States."  *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990)

(internal quotations and citations omitted).  "Section 1983 itself creates no substantive rights; it

provides only a procedure for redress for the deprivation of rights established elsewhere."  *Sykes*

*v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808,

816 (1985)).

To state a valid claim under Section 1983, a plaintiff must allege that the challenged

conduct: (1) was attributable to a person acting under color of state law; and (2) deprived the

plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United

States.  *Whalen v. Cnty. of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997).  The requirement that a

defendant act "under color of state law," means that the typical § 1983 claim is brought against

state and local government officials and entities, not against private individuals or entities.

Private actors "may only be held liable under § 1983 where the conduct at issue constitutes 'state

action' [–] which only occurs where the challenged action of a private party is 'fairly

attributable' to the state." *Hulett v. City of Syracuse*, 253 F. Supp. 3d 462, 504 (N.D.N.Y. 2017)

(citing *Hollander v. Copacabana Nightclub*, 624 F.3d 30, 33 (2d Cir. 2010)).

> For the purposes of section 1983, the actions of a nominally private entity are attributable to the state when: (1) the entity acts pursuant to the 'coercive power' of the state or is 'controlled' by the state ('the compulsion test'); (2) when the state provides 'significant encouragement' to the entity, the entity is a 'willful participant in joint activity with the [s]tate,' or the entity's functions are 'entwined' with state policies ('the joint action test' or 'close nexus test'); or (3) when the entity 'has been delegated a public function by the [s]tate,' ('the public function test').

*Sybalski v. Indep. Grp. Home Living Program, Inc*., 546 F.3d 255, 257 (2d Cir. 2008)).  "The

fundamental question under each test is whether the private entity's challenged actions are 'fairly

attributable' to the state." *Fabrikant v. French*, 691 F.3d 193, 207 (2d Cir. 2012).

In order to prevail on a Section 1983 cause of action against an individual, a plaintiff

must show "a tangible connection between the acts of a defendant and the injuries suffered."

*Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986).  This is true even for supervisory officials.

*See Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) ("There is no special rule for

supervisor liability."). "[A] plaintiff must plead and prove 'that each Government-official

defendant, [including supervisors,] through the official's own individual actions, has violated the

Constitution.'"  *Id*. (quoting *Iqbal*, 556 U.S. at 676).

Upon review, even afforded a liberal construction, the complaint fails to comply with the

pleading requirements set forth in the Federal Rules of Civil Procedure and fails to state a claim

upon which relief may be granted.

### A.    Deficient Pleading

Rule 8 of the Federal Rules of Civil Procedure requires a pleading contain, *inter alia*, "a

short and plain statement of the claim showing that the pleader is entitled to relief . . . . "  Fed. R.

Civ. P. 8(a)(2).  "The purpose of [Rule 8] is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable."  *Flores v. Graphtex*, 189 F.R.D. 54, 55 (N.D.N.Y. 1999) (internal quotations and citations omitted).  Therefore, allegations "so vague as to fail to give the defendants adequate notice of the claims against them" are subject to dismissal.  *Sheehy v. Brown*, 335 F. App'x 102, 104 (2d Cir. 2009) (summary order).

Rule 10 of the Federal Rules of Civil Procedure provides "[a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances . . . . If doing so would promote clarity, each claim founded on a separate transaction or occurrence – and each defense other than a denial – must be stated in a separate count or defense."  Fed. R. Civ. P. 10.  Rule 10 serves "to provide an easy mode of identification for referring to a particular paragraph in a prior pleading . . . ."  *Flores*, 189 F.R.D. at 55 (internal quotations and citation omitted).

A complaint that fails to comply with these pleading requirements "presents far too a heavy burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of their claims," and may properly be dismissed by the Court.  *Gonzales v. Wing*, 167 F.R.D. 352, 355 (N.D.N.Y. 1996).  Such is the case here.  *See Lamothe v. Brown*, 5:22-CV-161 (TJM/CFH), 2023 WL 316013, at *8 (D. Vt. Jan. 19, 2023) ("The lack of factual support, context, or clear statements of the claims and explanations as to how each defendant is personally involved in the alleged violation of each area of law or right asserted renders plaintiff's complaint plainly violative of Rule 8[.]"); *Joseph v. JRF Income Tax Bus. Servs.*, No. 21-CV-3869, 2021 WL 3516421, at *5 (E.D.N.Y. Aug. 10,

2021) ("A complaint that offers nothing more than 'an unadorned, the-defendant-unlawfully-harmed-me accusation' or that 'tenders naked assertions devoid of further factual enhancement' is insufficient.") (quoting *Iqbal*, 556 U.S. at 678).

Here, Plaintiff's complaint is difficult to understand. It lacks a short and plain statement showing Plaintiff is entitled to relief as well as numbered paragraphs, limited as far as practicable to a single set of circumstances. Therefore, the Court recommends dismissal of the complaint for failure to comply with the pleading requirements of Rules 8 and 10 of the Federal Rules of Civil Procedure. *See, e.g.*, *Griffith v. New York State*, No. 5:23-CV-1266 (DNH/ML), 2024 WL 1641587, at *4 (N.D.N.Y. Mar. 20, 2024) (recommending "dismissal of the Complaint because it is not acceptable under Rules 8 and 10 of the Fed. R. Civ. P. and because Plaintiff's Section 1983 claim or claims against Defendant are entirely unclear"), *report and recommendation adopted*, 2024 WL 1639856 (N.D.N.Y. Apr. 16, 2024).

## B.    Section 1983 Claims

In addition to the foregoing pleading defects, Defendants are a private individual and an entity that Plaintiff has not alleged to have any connection with any government body or to have acted under color of state law.[5]  *See White v. St. Joseph's Hosp.*, 369 F. App'x 225, 226 (2d Cir. 2010) ("[P]rivate actors and institutions, such as the hospitals . . . named as defendants in [plaintiff's] complaint, are generally not proper § 1983 defendants because they do not act under color of state law."); *Basile v. Connolly*, 538 F. App'x 5, 7 (2d Cir. 2013) (explaining, "private individuals . . . cannot be sued under 42 U.S.C. § 1983 absent a plausible allegation that they acted under color of state law."); *Story v. Cent. Intel. Agency*, No. 1:24-CV-00631 (MAD/CFH),

---

[5] A search of the New York State Department of State website confirms that "St. Mary's Healthcare" is a domestic not-for-profit corporation. *See* https://apps.dos.ny.gov/publicInquiry/EntityDisplay (last visited Oct. 29, 2025).

2024 WL 4849844, at *2 (N.D.N.Y. Nov. 21, 2024) (explaining, "to the extent Plaintiff alleges that civilian conduct violated his constitutional rights, such claims cannot amount to a violation of Plaintiff's constitutional rights because private individuals are not state actors."); *see also Jeanty v. Nassau Cnty.*, No. 24-CV-5062, 2025 WL 2972645, at *8 (E.D.N.Y. Oct. 22, 2025) ("As a general rule, private hospitals do not act under color of state law for § 1983 purposes."); *see, e.g.*, *Guillory v. Benedict*, No. 5:21-CV-0073 (GLS/ATB), 2021 WL 707076, at *2 (N.D.N.Y. Feb. 4, 2021) (recommending dismissal of the plaintiff's § 1983 claims against private medical institution St. Joseph's Hospital), *report and recommendation adopted*, 2021 WL 706644 (N.D.N.Y. Feb. 23, 2021).

Furthermore, "it is well settled that to state a civil rights claim under § 1983, a complaint must contain specific allegations of fact which indicate a deprivation of constitutional rights; allegations which are nothing more than broad, simple, and conclusory statements are insufficient to state a claim under § 1983." *Alfaro Motors, Inc. v. Ward*, 814 F.2d 883, 887 (2d Cir. 1987). Here, Plaintiff's conclusory allegations that his First, Sixth, Eighth, and Fourteenth Amendment rights were violated are insufficient to state a claim under Section 1983.

Accordingly, the undersigned also recommends that Plaintiff's Section 1983 claims against be dismissed without prejudice for failure to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

### C.    "H.I.P.P.A." Claims

To the extent Plaintiff seeks to allege claims pursuant to the Health Insurance Portability and Accountability Act of 1996, Pub. L. 104-191, 110 Stat. 1936 ("HIPAA"), referred to as a "H.I.P.P.A" violations in the complaint, such claims are not plausible. It is well-established that there is no private right of action under the HIPAA law. *See, e.g.*, *Warren Pearl Constr. Corp. v.*

*Guardian Life Ins. Co. of Am.*, 639 F. Supp. 2d 371, 377 (S.D.N.Y. 2009) (collecting cases across numerous circuits standing for that proposition). Rather, HIPAA enforcement actions are in the exclusive purview of the Department of Health and Human Services. *See* 42 U.S.C. § 300gg-22(a) (explaining that the Secretary shall enforce HIPAA); *Montgomery v. Cuomo*, 291 F. Supp. 3d 303, 317 n.42 (W.D.N.Y. 2018) ("Only the Secretary of Health and Human Services or other government authorities may bring a HIPAA enforcement action. There is no private right to sue for a HIPAA violation.") (citing 42 U.S.C. § 300gg-22); *Ames v. Group Health Inc.*, 553 F. Supp. 2d 187, 192 (E.D.N.Y. 2008) (stating that case law is "clear that plaintiffs cannot bring a HIPAA enforcement action due to improper disclosures of medical information").

Accordingly, to the extent Plaintiff seeks relief under HIPAA, the undersigned recommends dismissal of such claims with prejudice for failure to state a claim upon which relief may be granted and as frivolous. *See* 28 U.S.C. § 1915(e)(2)(B)(i), (ii).

### D.    Supplemental Jurisdiction

A district court may decline to exercise supplemental jurisdiction over state law claims when it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Generally, "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988). Having recommended dismissal of Plaintiff's Section 1983 claims, the undersigned also recommends that the District Court decline to exercise supplemental jurisdiction over any state law claims Plaintiff may be asserting.

### E.    Leave to Amend

Based on the foregoing, the Court recommends dismissal of the complaint in its entirety. "Generally leave to amend should be freely given, and a *pro se* litigant in particular should be afforded every reasonable opportunity to demonstrate that he has a valid claim."  *Matima v. Celli*, 228 F.3d 68, 81 (2d Cir. 2000) (cleaned up).  Accordingly, out of an abundance of caution and in deference to Plaintiff's *pro se* status, the undersigned recommends granting Plaintiff leave to amend to cure the deficiencies identified herein.

The Court advises Plaintiff that should he be permitted to amend his complaint, any amended complaint he submits must comply with Rules 8 and 10 of the Federal Rules of Civil Procedure.  Any such amended complaint, which shall supersede and replace in its entirety the original complaint, must contain sequentially numbered paragraphs containing only one act of misconduct per paragraph.  Any amended complaint submitted by Plaintiff must set forth all of the claims he intends to assert against the defendants and must demonstrate that a case or controversy exists between the Plaintiff and the defendants which Plaintiff has a legal right to pursue and over which this Court has jurisdiction.  Plaintiff is further cautioned that no portion of his original complaint shall be incorporated into his amended complaint by reference.

## VI.    CONCLUSION

**WHEREFORE**, it is hereby

**ORDERED** that Plaintiff's amended IFP application (Dkt. Nos. 9, 11, 13) is **GRANTED**;[6] and it is further

---

[6] Plaintiff is advised, however, he will be required to pay fees he may incur in this action, including copying and/or witness fees.

**ORDERED** that the Clerk shall provide the Superintendent of the facility, designated by Plaintiff as his current location, with a copy of Plaintiff's inmate authorization (Dkt. No. 10) and notify the official that this action has been filed and that Plaintiff is required to pay the Northern District of New York the statutory filing fee of $350.00 in installments, over time, pursuant to 28 U.S.C. § 1915;[7] and it is further

**ORDERED** that the Clerk shall provide a copy of Plaintiff's inmate authorization (Dkt. No. 10) to the Financial Deputy of the Clerk's Office; and it is further

**RECOMMENDED** that Plaintiff's complaint (Dkt. No. 1) be **DISMISSED WITH LEAVE TO AMEND** to cure the deficiencies identified herein; and it is further

**ORDERED** that the Clerk provide to Plaintiff a copy of this Report-Recommendation and Order, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report.[8]  Such objections shall be filed with the Clerk of the Court.  **<u>FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW</u>**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

---

[7] Prisoners are not exempt from paying the filing fee, even when they have been granted permission to proceed IFP.  *See* 28 U.S.C. § 1915(b)(1).

[8] If you are proceeding *pro se* and are served with this Report-Recommendation and Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Report-Recommendation and Order was mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. P. 6(a)(1)(C).

**IT IS SO ORDERED.**

Dated: October 29, 2025
   Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge

2010 WL 5185047
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

David J. CASH, Plaintiff,

v.

BERNSTEIN, MD, Defendant.

No. 09 Civ.1922(BSJ)(HBP).
|
Oct. 26, 2010.

*REPORT AND RECOMMENDATION* [1]

[1]     At the time the action was originally filed,
the Honorable Leonard B. Sand, United States
District Judge, granted plaintiff's application for *in
forma pauperis* status based on plaintiff's *ex parte*
submission (Docket Item 1). Although the present
application seeking to revoke plaintiff's *in forma
pauperis* status is non-dispositive, I address it by
way of a report and recommendation to eliminate
any appearance of a conflict between the decision
of a district judge and that of a magistrate judge.

PITMAN, United States Magistrate Judge.

**\*1**  TO THE HONORABLE BARBARA S. JONES, United
States District Judge,

I. *Introduction*
By notice of motion dated March 4, 2010 (Docket Item 11),
defendant moves pursuant to 28 U.S.C. § 1915(g) to revoke
plaintiff's *in forma pauperis* ("IFP") status on the ground that
plaintiff has previously had at least three Section 1983 actions
dismissed as frivolous, malicious or failing to state a claim
upon which relief could be granted, and has not shown that he
is in imminent danger of serious physical injury. Defendant
further seeks an order directing that the action be dismissed
unless plaintiff pays the full filing fee within thirty (30) days.
For the reasons set forth below, I respectfully recommend that
defendant's motion be granted.

II. *Facts*

Plaintiff, a sentenced inmate in the custody of the New
York State Department of Correctional Services, commenced
this action on or about January 12, 2009 by submitting his
complaint to the Court's Pro Se office. Plaintiff alleges, in
pertinent part, that he has "a non-healing ulcer that is gane
green [*sic* ]" and that defendant Bernstein "did not want
to treat the ulcer right" (Complaint, dated March 3, 3009
(Docket Item 2) ("Compl."), at 3).

The action was originally commenced against two defendants
—Dr. Bernstein and Dr. Finkelstein. The action was dismissed
as to Dr. Finkelstein because the complaint contained no
allegations whatsoever concerning Dr. Finkelstein (Order
dated February 18, 2010 (Docket Item 9)).

On March 4, 2010, the sole remaining defendant—Dr.
Bernstein—filed the current motion. Plaintiff failed to submit
a response. Accordingly, on August 20, 2010, I issued an
Order advising plaintiff that if he wished to oppose the
motion, he must submit his opposition by September 15, 2010
and that after that date I would consider the motion fully
submitted and ripe for decision (Order dated August 20, 2010
(Docket Item 15)). The only submission plaintiff has made
in response to my Order is a multi-part form issued by the
New York State Department of Correctional Services entitled
"Disbursement or Refund Request." [2] By this form, plaintiff
appears to request that the New York State Department of
Correctional Services pay the filing fee for this action. The
form is marked "Denied."

[2]     Plaintiff sent this form directly to my chambers,
and it has not been docketed by the Clerk of the
Court. The form will be docketed at the time this
Report and Recommendation is issued.

III. *Analysis*
28 U.S.C. § 1915 permits an indigent litigant to commence
an action in a federal court without prepayment of the filing
fee that would ordinarily be charged. Although an indigent,
incarcerated individual need not prepay the filing fee at the
time at the time of filing, he must subsequently pay the fee,
to the extent he is able to do so, through periodic withdrawals
from his inmate accounts. 28 U.S.C. § 1915(b); *Harris v.
City of New York,* 607 F.3d 18, 21 (2d Cir.2010). To prevent
abuse of the judicial system by inmates, paragraph (g) of
this provision denies incarcerated individuals the right to
proceed without prepayment of the filing fee if they have
repeatedly filed meritless actions, unless such an individual
shows that he or she is in imminent danger of serious

Case 1:25-cv-00848-AMN-TWD    Document 15    Filed 10/29/25    Page 16 of 77
Cash v. Bernstein, Not Reported in F.Supp.2d (2010)
2010 WL 5185047

physical injury. See *Ortiz v. McBride,* 380 F.3d 649, 658 (2d Cir.2004) ("[T]he purpose of the PLRA ... was plainly to curtail what Congress perceived to be inmate abuses of the judicial process."); *Nicholas v. Tucker,* 114 F.3d 17, 19 (2d Cir.1997). Specifically, paragraph (g) provides:

> **\*2** In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g).

If an inmate plaintiff seeks to avoid prepayment of the filing fee by alleging imminent danger of serious physical injury, there must be a nexus between the serious physical injury asserted and the claims alleged. *Pettus v. Morgenthau,* 554 F.3d 293, 298 (2d Cir.2009).

Section 1915(g) clearly prevents plaintiff from proceeding in this action without prepayment of the filing fee. The memorandum submitted by defendant establishes that plaintiff has had his IFP status revoked on at least four prior occasions as a result of his repeatedly filing meritless actions.

- In 2005, plaintiff commenced an action in the United States District Court for the Northern District of New York seeking to have his infected leg amputated. *Nelson[3] v. Lee,* No. 9:05–CV–1096 (NAM)(DEP), 2007 WL 4333776 (N.D.N.Y. Dec. 5, 2007). In that matter, the Honorable Norman A. Mordue, Chief United States District Judge, accepted and adopted the Report and Recommendation of the Honorable David E. Peebles, United States Magistrate Judge, that plaintiff had brought three or more prior actions that had been dismissed for failure to state a claim and that plaintiff's IFP status should, therefore, be revoked. 2007 WL 4333776 at *1–*2.

3  It appears that plaintiff uses the names David J. Cash and Dennis Nelson interchangeably. In his complaint in this matter, plaintiff states that the Departmental Identification Number, or DIN, assigned to him by the New York State Department of Correctional Services ("DOCS") is 94–B–0694 (Compl. at 7). DOCS inmate account records submitted by plaintiff in connection with his application for IFP status indicate that DIN 94–B–0694 is assigned to Dennis Nelson. In addition, the DOCS form described in footnote two bears the docket number of this action, but is signed in the name of Dennis Nelson and was sent in an envelope identifying the sender as Dennis Nelson. A subsequent action has been filed in this Court in which the plaintiff identifies himself as Dennis Nelson but lists his DIN as 94–B–0694, the same DIN used by plaintiff here. Finally, plaintiff has submitted nothing to controvert the assertion in defendant's papers that David Cash and Dennis Nelson are the same person. In light of all these facts, I conclude that David Cash and Dennis Nelson are both names used by plaintiff.

- In *Nelson v. Nesmith,* No. 9:06–CV–1177 (TJM)(DEP), 2008 WL 3836387 (N.D.N.Y. Aug. 13, 2008), plaintiff again filed an action concerning the medical care he was receiving for his left leg. The Honorable Thomas J. McAvoy, United States District Judge, accepted the Report and Recommendation of Magistrate Judge Peebles, and revoked plaintiff's IFP status and dismissed the action on the ground that plaintiff had previously commenced at least three actions that had been dismissed on the merits. 2008 WL 3836387 at *1, *7.

  - In *Nelson v. Spitzer,* No. 9:07–CV–1241 (TJM) (RFT), 2008 WL 268215 (N.D.N.Y. Jan. 29, 2008), Judge McAvoy again revoked plaintiff's IFP status on the ground that plaintiff had commenced three or more actions that constituted "strikes" under Section 1915(g) and had not shown an imminent threat of serious physical injury. 2008 WL 268215 at *1–*2.

  - Finally, in *Nelson v. Chang,* No. 08–CV–1261 (KAM)(LB), 2009 WL 367576 (E.D.N.Y. Feb. 10, 2009), the Honorable Kiyo A. Matsumoto, United

States District Judge, also found, based on the cases discussed above, that plaintiff had exhausted the three strikes permitted by Section 1915(g) and could not proceed IFP in the absence of a demonstration of an imminent threat of serious physical injury. 2009 WL 367576 at *2–*3.

**\*3** As defendant candidly admits, there is one case in which plaintiff's leg infection was found to support a finding of an imminent threat of serious physical injury sufficient to come within the exception to Section 1915(g). Nelson v. Scoggy, No. 9:06–CV–1146 (NAM)(DRH), 2008 WL 4401874 at *2 (N.D.N.Y. Sept. 24, 2008). Nevertheless, summary judgment was subsequently granted for defendants in that case, and the complaint was dismissed. Judge Mordue concluded that there was no genuine issue of fact that plaintiff had received adequate medical care for his leg wound and that the failure of the leg to heal was the result of plaintiff's own acts of self-mutilation and interference with the treatment provided. Nelson v. Scoggy, No. 9:06–CV–1146 (NAM)(DRH), 2009 WL 5216955 at *3–*4 (N.D.N.Y. Dec. 30, 2009). [4]

[4]    Although the form complaint utilized by plaintiff expressly asks about prior actions involving the same facts, plaintiff disclosed only the *Scoggy* action and expressly denied the existence of any other actions relating to his imprisonment (Compl. at 6).

In light of the foregoing, there can be no reasonable dispute that plaintiff has exceeded the three "strikes" allowed by Section 1915(g) and that he cannot, therefore, proceed here without prepaying the filing fee unless he demonstrates an imminent threat of serious physical injury. Plaintiff has declined to attempt to make this showing in response to defendant's motion, and the only suggestion in the record of serious physical injury is the bare statement in the complaint that plaintiff "need[s] to go back to a wound speci [a]list before the gane green [*sic* ] kills [him]" (Compl. at 5). "However, unsupported, vague, self-serving, conclusory speculation is not sufficient to show that Plaintiff is, in fact, in imminent danger of serious physical harm." *Merriweather v. Reynolds,* 586 F.Supp.2d 548, 552 (D.S.C.2008), *citing Ciarpaglini v. Saini,* 352 F.3d 328, 330 (7th Cir.2003) *and White v. Colorado,* 157 F.3d 1226, 1231–32 (10th Cir.1998); *see also Martin v. Shelton,* 319 F.3d 1048, 1050 (8th Cir.2003) (imminent danger exception to Section 1915(g) requires "specific fact allegations of ongoing serious physical injury, or of a pattern of misconduct evidencing the likelihood of imminent serious physical injury"). Given the plaintiff's

history, as set forth in the cases described above, I conclude that this vague statement is insufficient to support a finding that plaintiff is in imminent danger of serious physical injury. [5]

[5]    Plaintiff has sent me several letters describing his wound and its symptoms in detail, and I have no doubt that the wound is serious. However, in granting summary judgment dismissing an action last year based on the same allegations, Judge Mordue of the Northern District found that there was no genuine issue of fact that plaintiff's own conduct was responsible for the ineffectiveness of the treatment he was provided:

Furthermore, to the extent that Nelson's medical treatment was delayed, much of the delay was due to his own refusal to cooperate with medical staff and his self-mutilations. Nelson's actions to thwart the medical treatment of his wound cannot be construed as interference or indifference by anyone else.... [T]he medical treatment Nelson received complied with constitutional guarantees as it was appropriate, timely, and delayed only by Nelson's own actions.

*Nelson v. Scoggy, supra,* 2009 WL 5216955 at *4.* Given plaintiff's total failure to respond to the pending motion and his failure to even deny that he is actively thwarting treatment of his wound, it would be sheer speculation for me to conclude that he is in imminent danger of a serious injury as a result of defendant's conduct.

## IV. *Conclusion*

Accordingly, for all the foregoing reasons, I find that plaintiff has had three or more prior actions dismissed as being frivolous, malicious or failing to state a claim and that plaintiff's *in forma pauperis* status should, therfore, be revoked. If your Honor accepts this recommendation, I further recommend that the action be dismissed unless plaintiff pays the filing fee in full within thirty (30) days of your Honor's final resolution of this motion.

## V. *OBJECTIONS*

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from receipt of this Report to file written objections. *See also* Fed.R.Civ.P. 6(a). Such objections (and

2010 WL 5185047

responses thereto) shall be filed with the Clerk of the Court, with courtesy copies delivered to the Chambers of the Honorable Barbara S. Jones, United States District Judge, 500 Pearl Street, Room 1920, and to the Chambers of the undersigned, 500 Pearl Street, Room 750, New York, New York 10007. Any requests for an extension of time for filing objections must be directed to Judge Jones. FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS **WILL** RESULT IN A WAIVER OF OBJECTIONS AND **WILL** PRECLUDE APPELLATE REVIEW. *Thomas v. Arn,* 474 U.S. 140, 155

(1985); *United States v. Male Juvenile,* 121 F.3d 34, 38 (2d Cir.1997); *IUE AFL–CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1054 (2d Cir.1993); *Frank v. Johnson,* 968 F.2d 298, 300 (2d Cir.1992); *Wesolek v. Canadair Ltd.,* 838 F.2d 55, 57–59 (2d Cir.1988); *McCarthy v. Manson,* 714 F.2d 234, 237–38 (2d Cir.1983).

**All Citations**

Not Reported in F.Supp.2d, 2010 WL 5185047

---

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

 © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2025 WL 1644044
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Jeremy Jacob Morales BEY, Plaintiff,

v.

Officer CARRILLO, Badge #973983; Lieutenant
Bautista; NYPD Precinct #020; Department of Motor
Vehicles Traffic Violations Division, Defendants.

25-CV-2099 (KMW)
|
Signed June 10, 2025

**Attorneys and Law Firms**

Jeremy Jacob Morales Bey, New York, NY, Pro Se.

ORDER OF DISMISSAL

KIMBA M. WOOD, United States District Judge:

**\*1** Plaintiff, appearing *pro se*, brings this action invoking the Court's diversity of citizenship jurisdiction and alleging that Defendants violated his rights with respect to a traffic ticket. By order dated April 17, 2025, ECF No. 7, the court granted Plaintiff's request to proceed *in forma pauperis* ("IFP"), that is, without prepayment of fees. [1] For the reasons set forth below, the Court dismisses the complaint.

[1] The IFP application that Plaintiff filed with this complaint included insufficient information. By order dated March 21, 2025, Chief Judge Laura Taylor Swain directed Plaintiff to either pay the filing fees or submit an amended IFP application. Plaintiff filed an amended IFP application on March 28, 2025.

STANDARD OF REVIEW

The Court must dismiss an IFP complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see Livingston v. Adirondack Beverage Co.,* 141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss

a complaint when the Court lacks subject matter jurisdiction of the claims raised. *See* Fed. R. Civ. P. 12(h)(3).

Although the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills,* 572 F.3d 66, 72 (2d Cir. 2009), and to interpret them to raise the "strongest [claims] that they *suggest,*" *Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 474 (2d Cir. 2006) (per curiam)(internal quotation marks and citations omitted) (emphasis in original). But the "special solicitude" courts provide to *pro se* litigants, *id.* at 475 (citation omitted), has its limits – to state a claim, *pro se* pleadings still must comply with Rule 8 of the Federal Rules of Civil Procedure, which requires a complaint to make a short and plain statement showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2).

A claim is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 324-25 (1989), *abrogated on other grounds by Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007); *see also Denton v. Hernandez,* 504 U.S. 25, 32-33 (1992) (holding that "finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible"); *Livingston,* 141 F.3d at 437 ("[A]n action is 'frivolous' when either: (1) the factual contentions are clearly baseless ...; or (2) the claim is based on an indisputably meritless legal theory." (internal quotation marks and citation omitted)).

**BACKGROUND**

Plaintiff brings his claims using the court's general complaint form. He invokes the Court's diversity of citizenship jurisdiction, alleging that he is a citizen of the "Moorish Nation America/Morocco" and providing New York employment addresses for the Defendants. (ECF 1, at 2, 4.) Plaintiff states that the events giving rise to his claims occurred on December 27, 2024. (*Id.* at 5.) The following allegations are drawn from the complaint. [2] While traveling on West 60th Street, Plaintiff was allegedly detained by Defendants Bautista and Carrillo. (*Id.*) Plaintiff alleges that the officers accused Plaintiff of being in violation of "Statute 401(1)A, & 509(1)," [3] statutes which Plaintiff maintains are a "private policy," rather than laws that can be enforced. (*Id.*)

2   The Court quotes from the complaint verbatim. All spelling, grammar, and punctuation are as in the original unless noted otherwise.

3   Section 401(1)(a) of the New York Vehicle and Traffic Laws requires drivers to register vehicles that are driven on public highways, and Section 509(1) requires drivers in New York to be licensed. *See* N.Y. Veh. & Traf. Law §§ 401(1)(a), 509(1).

**\*2** Plaintiff alleges,

The Department of Motor Vehicles Traffic Division is an unconstitutional, private corporation, not delegated by Congress, under Article III, Section 2 of the Constitution; and that the officers does not, and did not provide 'Due Process' protected and secured for the People, by the Amendments IV, V, VI, VII, VIII, IX, and X of the United States Constitution to which judges and officers in every state is bound (by official oath) to support & to uphold. Any statutory regulation, ordinances, or law of any State, to the contrary, notwithstanding.

(*Id.* at 6.)

Plaintiff alleges that Defendants,

commanded that [Plaintiff] pay fines & costs imposed under T.D.C. with a 'man-of-straw'/misnomer word, misrepresented as implying my name, & types upon the order/instrument, & was improperly spelled. That misnomer & corporate-name, is clearly (an artificial person/entity). It is not me, the Natural Person, is a deliberate grammatical error intended for injury to me; and is clearly not of consanguine relationship to me or to my nationality.

(*Id.*)

Plaintiff accuses Defendants of committing fraud, a felony, and "treason." (*Id.*)

Although Plaintiff filed his claims as a civil action, he attaches to the complaint, as Exhibit A, a document labeled

"Legal Notice of Removal from Municipal Court to Federal Court Pursuant to Title 28 § 1441-§ 1446 Proper Article III Jurisdiction." (*Id.* at 8.) That document includes references to "The Treaty of Peace and Friendship of 1836 A.D. Between Morocco and the United States" and various pseudo-legal and pseudo-historical arguments. The document reiterates the facts alleged in the complaint, including Plaintiff's allegation that, by capitalizing his name on a traffic ticket or court documents, Defendants were referring to "an artificial person/ entity" and not to Plaintiff. (*Id.* at 10.)

Plaintiff requests that,

this United States Supreme Court view this Affiant (in my Proper Person) as a Moorish American National (Natural Born Citizen of the Land) and not as a (brand) NEGRO, BLACKMAN (person), COLORED, AFRICAN-AMERICAN, or any other SLAVE TITLE or 'nom de guerre' imposed upon me for misrepresentation 'Actions' or other acts of 'Misprision' that a misdirected society may 'believe' to be true.

(*Id.* at 18.)

Plaintiff further states in that document that he is seeking money damages.

## DISCUSSION

### A. Plaintiff's claims are frivolous

In his submission, Plaintiff alleges that he cannot be held liable for the traffic violations for which he was arrested because traffic laws are a "private policy," the Department of Motor Vehicles is an "unconstitutional, private corporation," and that, by capitalizing his name on the charging instrument, Defendants were referring to a "man-of-straw" and an "an artificial person/entity," rather than to Plaintiff. (*Id.* at 5.) Plaintiff's claims relate to a common sovereign citizen or "redemptionist" argument that a name in all capital letters refers to a separate legal entity. Proponents of these theories believe that "when a person's name is spelled ... with initial capital letters and small letters, [it] represents the 'real

person' ... [and w]henever a person's name is written in total capitals, ... only [a] 'strawman' is referenced, and the flesh and blood person is not involved." *Santana v. United States,* Nos. 16-CV-5750 (PKC), 13-CR-0536 (PKC), 2017 WL 2470834, at *2 (S.D.N.Y. June 6, 2017) (quotation marks and citation omitted). Courts have explained the underpinning of these ideas:

> **\*3** "Redemptionist" theory ... propounds that a person has a split personality: a real person and a fictional person called the "strawman." The "strawman" purportedly came into being when the United States went off the gold standard in 19[3]3, and, instead, pledged the strawman of its citizens as collateral for the country's national debt. Redemptionists claim that government has power only over the strawman and not over the live person, who remains free. Individuals can free themselves by filing UCC financing statements, thereby acquiring an interest in their strawman.

*Monroe v. Beard,* 536 F.3d 198, 203 n.4 (3d Cir. 2008) (citation omitted). Advocates of such claims tend to "believe that the state and federal governments lack constitutional legitimacy and therefore have no authority to regulate their behavior." *United States v. Ulloa,* 511 F. App'x 105, 107 n.1 (2d Cir. Feb. 14, 2013).

The arguments Plaintiff asserts in the complaint have been consistently rejected by federal courts as without merit and as frivolous. *See, e.g., Bendeck v. U.S. Bank Nat'l Ass'n,* No. 17-CV-0180, 2017 WL 2726692, at *6 (D. Haw. June 23, 2017) (collecting cases that have rejected as meritless or frivolous the argument that "differences in capitalization of a person's name create separate legal entities"); *Harris v. Colombo,* No. 17-CR-0202, 2017 WL 1206262, at *2 (W.D. Mich. Apr. 3, 2017) (dismissing as "patently frivolous" plaintiff's claims that capitalizing his name created a "fictitious legal entity"); *Muhammad v. Smith,* No. 3:13-CV-760, 2014 WL 3670609, at *2 (N.D.N.Y. July 23, 2014) ("Theories presented by redemptionist and sovereign citizen adherents have not only been rejected by the courts, but also recognized as

frivolous and a waste of court resources."). Because Plaintiff's claims are "based on an indisputably meritless legal theory," *Livingston,* 141 F.3d at 437, the Court dismisses this action as frivolous. *See* 28 U.S.C. § 1915(e)(2)(B)(i).

District courts generally grant a *pro se* plaintiff an opportunity to amend a complaint to cure its defects, but leave to amend is not required where it would be futile. *See Hill v. Curcione,* 657 F.3d 116, 123–24 (2d Cir. 2011); *Lucente v. Int'l Bus. Machines Corp.,* 310 F.3d 243, 258 (2d Cir. 2002). Because the defects in Plaintiff's complaint cannot be cured with an amendment, the Court declines to grant Plaintiff leave to amend his complaint.

**B. Removal of Plaintiff's criminal proceedings**
To the extent that, by attaching a notice of removal to his complaint, Plaintiff seeks to remove to this court his state court criminal proceedings arising from the traffic violations, his request is denied. To remove a state-court criminal action to a federal district court:

> [a] defendant ... shall file in the district court of the United States for the district and division within which such prosecution is pending a notice of removal signed pursuant to Rule 11 of the Federal Rules of Civil Procedure and containing a short and plain statement of the grounds for removal, together with a copy of all process, pleadings, and orders served upon such defendant or defendants in such action.

28 U.S.C. § 1455(a). If it appears on the face of a notice of removal that removal of a criminal case is impermissible, the district court must summarily remand the action to state court. 28 U.S.C. § 1455(4).

This notice of removal is improper. Criminal cases that may be removed to federal court include criminal prosecutions commenced in state court against a federal officer or member of the armed forces for actions taken under the color of office. 28 U.S.C. §§ 1442(a), 1442a. Criminal cases commenced in state court also may be removed if the defendant "is denied or cannot enforce in the courts of such State a right under any law

providing for the equal civil rights of citizens of the United States." 28 U.S.C. § 1443(1).

**\*4**  Plaintiff does not allege that he is a federal officer or member of the armed forces being prosecuted for actions taken under color of office. He also does not assert any facts showing that he cannot enforce his federal equal rights in his state court criminal proceeding. *See Johnson v. Mississippi, 421 U.S. 213, 219 (1975)* (setting forth two-prong test for removal of criminal prosecution where defendant is denied equal civil rights). "That a [defendant] will be denied due process of law because the criminal law under which he is being prosecuted is allegedly vague or that the prosecution is assertedly a sham, corrupt, or without evidentiary basis does not, standing alone, satisfy the requirements of [section] 1443(1)." *Id.*

The Court therefore concludes that removal is not proper, and remands the action to state court. [4]  *See* 28 U.S.C. § 1455(b)(4).

[4]  Nowhere in the complaint or the attached notice of removal does Plaintiff specify the state court in which his criminal proceedings are pending.

**CONCLUSION**

The Court dismisses the complaint, filed IFP under 28 U.S.C. § 1915(a)(1), as frivolous. *See* 28 U.S.C. § 1915(e)(2)(B)(i).

To the extent Plaintiff seeks to remove his state court criminal proceedings to this court, his request is denied as improper, and the case is remanded to the state court.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore IFP status is denied for the purpose of an appeal. *See Coppedge v. United States, 369 U.S. 438, 444-45 (1962)*.

The Court directs the Clerk of Court to enter judgment in this action.

SO ORDERED.

**All Citations**

Slip Copy, 2025 WL 1644044

---

**End of Document** © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Lamothe v. Brown, Not Reported in Fed. Supp. (2023)

2023 WL 316013

2023 WL 316013
Only the Westlaw citation is currently available.
United States District Court, D. Vermont.

Jeffrey LAMOTHE, Plaintiff,
v.
Colleen BROWN, Defendant.
Jeffrey Lamothe, Plaintiff,
v.
Bankruptcy Court, et al., Defendants.
Jeffrey Lamothe, Plaintiff,
v.
Bankruptcy Court, et al., Defendants.
Jeffrey Lamothe, Plaintiff,
v.
Heather Cooper, et al., Defendants.

5:22-CV-161 (TJM/CFH), 5:22-CV-162 (TJM/CFH),
5:22-CV-163 (TJM/CFH), 5:22-CV-164 (TJM/CFH)
|
Signed January 19, 2023

## Attorneys and Law Firms

Jeffrey Lamothe, 17 Potter Ave., Apt. B, Granville, New York
12832, Plaintiff pro se

## REPORT-RECOMMENDATION & ORDER

Christian F. Hummel, United States Magistrate Judge

**\*1** Plaintiff pro se Jeffrey Lamothe commenced 5:22-CV-161, LaMothe v. Brown, on August 31, 2022, with the filing of an application for leave to proceed in forma pauperis ("IFP") (Dkt. No. 1-1), complaint (Dkt. No. 1-2) ("Complaint"), and a "Motion for Settlement" (Dkt. No. 3).[1] On September 4, 2022, the U.S. District Court for the District of Vermont disqualified itself pursuant to 28 U.S.C. § 445(a) and directed the case be reassigned to a U.S. District Judge in the Northern District of New York. On September 16, 2022, the case was reassigned to Senior U.S. District Judge McAvoy and the undersigned. On September 27, 2022, plaintiff filed a document titled, "Alterations Lost's [sic], Cost's [sic], Damage's [sic] Foregoing Motion." Dkt. No. 6. On October 4, 2022, plaintiff filed document titled, "Motion for Summary Judgment." Dkt. No. 7. Presently before the

Court for review is plaintiff's in forma pauperis application and review of his complaint pursuant to 28 U.S.C. § 1915.

[1]    Plaintiff commenced three other actions on the same day. These are discussed, infra, in section II A.

## I. In Forma Pauperis

After reviewing plaintiff's IFP application,[2] Dkt. Nos. 1, 1-1, the Court concludes that plaintiff financially qualifies to proceed IFP for purposes of filing.[3]

[2]    Although plaintiff commenced four actions, which the undersigned recommends be consolidated, the undersigned is explicitly addressing the IFP application submitted in the first-filed action as the information submitted with each case's IFP application is essentially identical.

[3]    Plaintiff is advised that in forma pauperis status does not cover any costs and fees that may be associated with this matter, including, but not limited to, any copying fees that may be incurred.

## II. Initial Review[4]

[4]    Plaintiff has also filed four other cases. At least three of the four cases appear to be related to the instant case. Those cases, all filed in the U.S. District Court for the District of Vermont and reassigned to this Court, are 5:22-CV-162, Lamothe v. Bankruptcy Court, et al. (filed Aug. 31, 2022); 5:22-CV-163, Lamothe v. Bankruptcy Court, et al. (filed Aug. 31, 2022); 22-CV-164, Lamothe v. Cooper, et al. (filed Aug. 31, 2022); and 2:22-CV-220, LaMothe v. Federal Court Clerk (filed Dec. 7, 2022).

### A. Consolidation

"Rule 42(a) of the Federal Rules of Civil Procedure provides for the consolidation of actions pending before the court which involve "a common question of law or fact." FED. R. CIV. P. 42(a)(2). As the Second Circuit has recognized, "[t]he trial court has broad discretion to

Case 1:25-cv-00848-AMN-TWD    Document 15    Filed 10/29/25    Page 24 of 77

Lamothe v. Brown, Not Reported in Fed. Supp. (2023)

2023 WL 316013

determine whether consolidation is appropriate," Johnson v. Celotex Corp., 899 F.2d 1281, 1284-85 (2d Cir. 1990), and may consolidate actions sua sponte. Devlin v. Transportation Comme'ns Intern. Union, 175 F.3d 121, 130 (2d Cir. 1999).

Boyde v. Uzunoff, No. 9:21-CV-0741 (TJM/ATB), 2021 WL 3185472, at *1 (N.D.N.Y. July 28, 2021).

Here, in addition to the instant case, 5:22-CV-161, Lamothe v. Brown, plaintiff commenced three other actions on the same day: 5:22-CV-162 (TJM/CFH), Lamothe v. Bankruptcy Court, et al. (filed Aug. 31, 2022); 5:22-CV-163 (TJM/CFH); Lamothe v. Bankruptcy Court, et al. (filed Aug. 31, 2022); 5:22-CV-164 (TJM/CFH), Lamothe v. Cooper, et al. (filed Aug. 31, 2022).[5] The Court has reviewed the complaints in each of these actions and determines that "common questions of law and fact exist in these cases." Boyde, 2021 WL 3185472, at *1. Although commenced separately, these cases are essentially identical. Plaintiff appears to name the same defendants, and to the extent it can be determined, the cases arise out of the same facts and circumstances and raise the same claims in each of these four actions. Indeed, an identical photocopy of the complaint has been filed in each separate action. See 5:22-CV-161, Dkt. No. 1-2 at 8-20; 5:22-CV-162 Dkt. No. 1-1 at 2-13; 5:22-CV-163 (TJM/CFH), Dkt. No. 1-1 at 6-17; 5:22-CV-164 (TJM/CFH), Dkt. No. 1-1 at 9-20. Further, with the exception of one extra document filed in 5:22-CV-164, plaintiff includes the same documents to each of the complaints in the different actions. See id.[6]

[5]     On December 7, 2022, plaintiff commenced a fourth action in the District of Vermont, Lamothe v. Federal Court Clerk, 2:22-CV-220 (TJM/CFH), which was also reassigned to Judge McAvoy and the undersigned. Review of this filing, although very sparse, leads the Court to determine at this time that this action appears distinct enough to proceed with a separate review. Thus, the § 1915 review of Lamothe v. Federal Court Clerk, 2:22-CV-220 (TJM/CFH) (filed Dec. 7, 2022), will occur in a separate, future order.

[6]     The complaint in each action is identical, including identical copies of service-related documents and invoices, and a "motion" that appears to set forth plaintiff's monetary demands. The only real difference between these actions is that some of the documents are filed in a different order. One exception to the identical nature of these four

actions is that, unlike in the other three actions, in 5:22-CV-164, Dkt. No. 1-1 at 5, there is a document that is not included in the other actions. This an Order, dated May 25, 2022, from the U.S. Bankruptcy Court, District of Vermont, signed by U.S. Bankruptcy Judge Heather Z. Cooper, denying a "sixth post-closing motion" and advising plaintiff that "[a]ny further post-closing filings which fail to demonstrate cause or meet the requirements to reopen this case or support any other relief that is available will be considered an abuse of process and the Court will consider the imposition of sanctions." Id.

*2    Accordingly, it is recommended that these four actions be consolidated, with 5:22-CV-161, Lamothe v. Brown as the lead case and 5:22-CV-162, 5:22-CV-163, and 5:22-CV-164 as member cases.

## B. Complaint [7]

[7]     This Court's citation to the pages of plaintiff's complaint is to the pagination generated by CM/ECF, the Court's electronic filing system, located at the header of each page, and not to plaintiff's individual pagination of the document.

At the top of each page of form complaint,[8] plaintiff writes "Civil-Criminal." See generally Dkt. No. 1-2. In the portion of the form complaint asking plaintiff to demonstrate the basis for this Court's jurisdiction and whether he seeks to proceed before the Court on federal question jurisdiction or diversity of citizenship, plaintiff writes, "Don't Know Yet!!" Dkt. No. 1-2 at 2. Following the form complaint is a handwritten document, the top of which states, "Civil, Criminal." Dkt. No. 1-2 at 5. The heading of the page further states, "Lawsuites [sic] (Contempt of Court) (Breech [sic] of Contracts)", "Alteration Four, Lawsuites [sic] Docket # 098-10014" Dkt. No. 1-2 at 5. Plaintiff further states "Federal Court 11 Elmwood Ave, Burlington VT 05641 Filed January 09, 2009 Re; Malpractice (Contempt of Court) (Breech [sic] of Court.")." Id. Following this information, written as a title, is the word "Motion." Id.

[8]     As the complaints in each action are essentially identical, for ease of reference and judicial efficiency, the Court will cite only to the complaint filed in 5:22-CV-161, Dkt. No. 1-2.

Lamothe v. Brown, Not Reported in Fed. Supp. (2023)
Case 1:25-cv-00848-AMN-TWD    Document 15    Filed 10/29/25    Page 25 of 77
2023 WL 316013

On the second page of the handwritten portion of the complaint, plaintiff lists the defendants as "(1) Bankruptcy Court 151 West Street Rutland, VT 05701[;] (2) Bankruptcy Court 59-67 Merchant Row Rutland, VT 05701[;] (3) Bankruptcy Court 11 Elmwood Ave Burlington, VT[;] (4) United States Trustee?; (6) Vermont Attorney General 109 State Street Montpelier, VT 05609-100. Dkt. No. 1-2 at 6. Page three of the complaint contains a "certificate of service" wherein plaintiff "certifies" having "delivered the attached to all other parties to this case." Id. at 7. Page four of the lists the names of the defendants again. Id. at 8. Page five has a heading that states "Bankruptcy Lawsuite [sic] file 01-09-09 Docket 09-10014 United States Bankruptcy Court of Vermont Malpractice." Id. at 9. Under this heading, it reads "Alteration One presented years ago!! Alteration two presented years ago!! Alteration three as fallows [sic]!!" Id. It thereafter lists plaintiff's name, address, and "pro se"; "defendants; 4 of 6"; the "Cohen & Rice Law Firm at 161 West Rutland, VT 05701 and 26 West Street, Rutland, VT 05701." Id. The sixth page again contains a heading that states "Bankruptcy Lawsuite [sic] Filed 01-09-2009, Docket 09-10014," "Alterations," "Malpractice", "Bankruptcy Court Washington County Federal Division Bankruptcy 09-1001." Id. It also appears to list a caption of "Plaintiff Jeffrey P. Lamothe Pro-se V. Defendant's [sic] Cohen & Rice Law Firm Rebecca Rice 4 of 6." Id. Under this "caption" states "Complaint Re: Malpractice." Id. This "complaint" states the following:

> (1) Not only what they didn't do wright [sic] is what they did wrong!! (2) What happened to my (A) Land, (B) Buildings? (3) What happened to my monthly rental incomes? (4) What happened to my four hundred thousand equity? (5) What happened to my Tax Wright [sic] Off's [sic] & Credits? (6) Why have I been denied multiple attempts of credit since two thousand an [sic] nine as well as the most recent of September Two Thousand an [sic] Twenty-One? (7) Why I'am [sic] I getting bribed, blackmailed an [sic] provoked.

**\*3** Id. at 10.

The same "caption" tops the seventh page with a heading that states, "Addition to the Complaint":

> (9) More ways to pay for Mortgages, do [sic] to signs of malpractice then anyone in the country (10) Placing docket 707-0-10 as a foreclosure during the process of Bankruptcy aswell [sic] as fallowing [sic] through as a wrongfull [sic] eviction in December of Two Thousand and Thirteen (11) placing Docket 496-6-10 after a bankruptcy had been filed, on January Nineth of Two Thousand an [sic] nine (1) Adding more debt to credit report after bankruptcy had been filed

Id. at 11. The same "caption" tops the eighth page with a heading that states, "Addition to the Complaint":

> (14) No escrow account for accounts receivable or debt from my rental properties (15) allowing outsiders to invade, approach aswell [sic] as falsify information, (16) (Timely Manner), (Timely Manner), (Timely Manner) (17) Having [sic] a lawfirm [sic] without a cerifide [sic] accountant (18) Releaseing [sic] assets, to other than myself (19) haveing [sic] two, three possibly four differant [sic] female bankruptcy judges throughout the seven years; (20) clerks avoiding all attempts of due process, (21) changeing [sic] chapters as well as false findings in the process of bankruptcy throughout the seven

Id. at 12.

On the eighth page also states, "Addition to the Complaint":

Case 1:25-cv-00848-AMN-TWD    Document 15    Filed 10/29/25    Page 26 of 77

Lamothe v. Brown, Not Reported in Fed. Supp. (2023)

2023 WL 316013

(23)[9] Timely manner, timely manner, timely manner. (24) Loss of monies up to one hundred thousand in renovations alone, of my own monies. (25) after wrongfull [sic] eviction in December two thousand and thirteen of thee [sic] Rutland Sheriffs Department Aswer [sic] as Vermont State Police Department, thee [sic] house in Procter Vermont had been ransacked aswell [sic] as everthing [sic] taken from thee [sic] inside aswell [sic] as garage (26) possibly forgery, most times when malpractice accures [sic] (27) possibly cover up, when malpractice accures [sic]

Id. at 13.

[9]    There is no number 22 on this page or the prior page.

On the ninth page of the hand-written complaint, the same "caption" tops the page with a heading that states, "Addition to the Complaint":

(30)[10] Didn't fallow [sic] protocol of an accountant of bankruptcy to file yearly taxes since 2009 (31) Refused all services of protocol aswell [sic] as my many attempts to address many wrongdoings (32) numerous attempts from myself to lawyers, courts, court clerks, attorney generals, cities, supreme court of appeals, Supreme Court aswell [sic] as three Superior Courts (33) No mortgage or combined mortgage has been placed or enforced between thee [sic] first an [sic] seventh year.

Id. at 14.

[10]    There is no number 28 or 29 on this page or the prior page.

On the tenth page of the hand-written complaint, the same "caption" tops the page with a heading that states, "Addition to Complaints":

(35) Protocol, Protocol, Protocol, (36) Hasn't anybody listened to thee [sic] Court recording's [sic] (37) Read paper trail already presented (handwritten) myself (38) Listen to Court recording, in my presents [sic] as David Edwards, lawyer for GMAC Mortgage, what had been stated as false information (39) Contempt of Court aswell [sic] as breech [sic] of contract has been practice in all matters of court proceeds [sic] (40) Loss of personel [sic] items, aswell [sic] as tools needed for multyple [sic] industries for myself to make money

**\*4**  Id. at 15.

On the eleventh page of the hand-written complaint, the same "caption" tops the page with a heading that states, "Addition to Complaints":

(43)[11] Do you know what courtroom this is? (44) Do you know what I can do with four hundred thousand dallars [sic] just in equity? (45) Do you know what I can do with four thousand dallars [sic] a month rental income? (46) Actions prove I've been fileing [sic] lawsuites [sic] to a deaf, dumb, and blind bar association, judicial bureau licensing board, police departments, clerks, judges (47) Withholding evidence in all thirteen courtrooms, will force myself no option to place lawsuites [sic] at state

2023 WL 316013

Id. at 16.

[11]    There are no numbers 41 or 42 on this page or the prior page.

On the twelfth page of the hand-written complaint, the same "caption" tops the page with a heading that states, "Addition to Complaints":

> (49 [12] )  Wrongfull  [sic]  eviction multiple times in the mid winter months of places I've owned aswell [sic] as places I've rented! (50) Probate Court of my mother Mary Elizabeth Lamothe House Docket #312-5-19, on Nineteen Jasmin Lane had been mishandled! (51) Loss of Drivers license for five years as of not a moveing [sic] violation, as I use my vehicle for floor installations (51) Contempt of court aswell [sic] as breech of contracts.

Id. at 17.

[12]    There is no number 48 on this page or the prior page.

On the thirteenth page of the hand-written complaint, the same "caption" tops the page with a heading that states, "Addition to Complaints":

> (54) [13]  withholding evidence, stolen identity, birth certificate had been stolen, do [sic] to wrongfull [sic] evictions aswell [sic] as most of personal information an [sic] court documents (55) waisted [sic] many hours of travel time as well as time spent an [sic] preparations of dozen of court handwritten documents of a plaintiff in lawsuites [sic] (56) houses ransacked, broken into, stolen paper trail (57) lost living expenses, loss of

wages, loss rental income, taxes not being filed, damages contents of

Id. at 18.

[13]    There are no numbers 51, 52, or 53 on this page or the prior page.

On the fourteenth page of the hand-written complaint, the same "caption" tops the page with a heading that states, "Addition to Complaints":

> (58)  Racketeering,  corruption, conspiracy,  human  traffick  [sic], money loitering [sic], forgery, false paper trail, incorrect headings, debtors, dates, tapeing [sic] recordings, video (59) Certified letters with return signature, up to sixty of them, with no response besides of just a signed green receipts. (60) Had twice as much monies invested in my houses then the finace [sic] company had (61) federal accounts of my crimal [sic] record (wrongfully) (62) wrongfull arrest warants [sic] asfore [sic] public defender doings

Id. at 19.

The fifteenth page [14] of the handwritten complaint list the same "caption" but state "Motion" and "Malpractice"

> Alteration one, which has presented years ago Five Million[;] Alteration two, which was presented years ago Six Million[;] Alteration Three, which is presented at this date of Seven Million. The total which is eighteen million to be granted to myself Jeffrey Peter Lamothe, no later than twenty days of this motion of presented date,

Case 1:25-cv-00848-AMN-TWD    Document 15    Filed 10/29/25    Page 28 of 77

Lamothe v. Brown, Not Reported in Fed. Supp. (2023)

2023 WL 316013

as losts [sic] and costs an [sic] damages
all at foregoing!!

**\*5** Id. at 20.

14    The fifteenth and sixteenth pages of the hand-
written complaint are identical. See Dkt. No. 1-2 at
20-21.

Plaintiff's complaint, on a page that contains the same
"caption" with a title that states, "Motion," appears to set forth
his demand for relief:

> Alteration four of eight million dollars,
> which brings the total of twenty-six
> million dollars, to be granted to myself
> Jeffrey Peter Lamothe [omitted] no
> later than twenty day's [sic], asfore
> [sic] this case #09-10014 has been in
> process since two thousand an [sic]
> nine, all at lost, costs, damages, all
> foregoing. Settlement of thee [sic]
> above will stop all foregoing lost,
> cost's [sic], damages aswell [sic] as
> further alterations, an [sic] criminal
> charges!!"

Id. at 21. In a "conclusion," plaintiff states that he "will settle
for four million dollars aswell [sic] as paying off Bershire [sic]
Bank Credit Card Account [Omitted], no later than ten day's
[sic] of this fourth alteration (after this date motion stands
[illegible])." Id.

Attached to the complaint are copies of invoices from the
Rutland County Sheriff's Department that appear to show that
plaintiff used the Sheriff's Department for service of plaintiff's
complaint on defendants. See Dkt. No. 1-2 at 26-33.

### C. **Section 1915** Review

#### 1. **Legal Standards**

Section 1915(e) 15 of Title 28 of the United States Code
directs that, when a plaintiff seeks to proceed IFP, "the court

shall dismiss the case at any time if the court determines
that ... the action or appeal (i) is frivolous or malicious; (ii)
fails to state a claim on which relief may be granted; or (iii)
seeks monetary relief against a defendant who is immune
from such relief." 28 U.S.C. § 1915(e)(2)(B). It is a court's
responsibility to determine that a plaintiff may properly
maintain his complaint before permitting him to proceed with
his action. Where the plaintiff is proceeding pro se, the court
must consider the claims "liberally" and "interpret them 'to
raise the strongest arguments that they suggest.' " Cold Stone
Creamery, Inc. v. Gorman, 361 F. App'x 282, 286 (2d Cir.
2010) (summary order) (quoting Brownell v. Krom, 446 F.3d
305, 310 (2d Cir. 2006)). It is well-established that "[p]ro se
submissions are reviewed with special solicitude, and 'must
be construed liberally and interpreted to raise the strongest
arguments that they suggest.' " Matheson v. Deutsche Bank
Nat'l Tr. Co., 706 F.Appx. 24, 26 (2d Cir. 2017) (summary
order) (quoting Triestman v. Fed. Bureau of Prisons, 470
F.3d 471, 474 (2d Cir. 2006) (per curiam); Sealed Plaintiff v.
Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008) (Where
the plaintiff proceeds pro se, a court is "obliged to construe
his pleadings liberally.") (quoting McEachin v. McGuinnis,
357 F.3d 197, 200 (2d Cir. 2004)). However, this approach
"does not exempt a [pro se litigant] from compliance with
relevant rules of procedural and substantive law." Traguth
v. Zuck, 710 F.2d 90, 95 (2d Cir. 1983). "[T]he tenet that a
court must accept as true all of the allegations contained in
a complaint is inapplicable to legal conclusions." Iqbal, 556
U.S. at 678. "Threadbare recitals of the elements of a cause
of action, supported by mere conclusory statements, do not
suffice." Hernandez v. Coughlin, 18 F.3d 133, 136 (2d Cir.
1994). The Court may not "invent factual allegations that [the
plaintiff] has not pled." Chavis v. Chappius, 618 F.3d 162, 170
(2d Cir. 2010).

15    The language of section 1915 suggests an intent to
limit availability of IFP status to prison inmates.
See 28 U.S.C. § 1915(a)(1) (authorizing the
commencement of an action without prepayment
of fees "by a person who submits an affidavit that
includes a statement of all assets such prisoner
possesses"). However, courts have construed
that section as making IFP status available
to any litigant who can meet the governing
financial criteria. See, e.g., Fridman v. City of
N.Y., 195 F. Supp. 2d 534, 536 n.1 (S.D.N.Y.
2002). Accordingly, a financial assessment and, if
determined to be financially qualified, an initial
review of the complaint pursuant to section 1915 is

**Lamothe v. Brown, Not Reported in Fed. Supp. (2023)**

2023 WL 316013

required of all plaintiffs who seek to proceed IFP, regardless of their incarceration status.

**\*6** "The [Second Circuit]'s 'special solicitude' for pro se pleadings, Ruotolo v. IRS, 28 F.3d 6, 8 (2d Cir. 1994), has its limits, because pro se pleadings still must comply with Rule 8(a) of the Federal Rules of Civil Procedure." Kastner v. Tri State Eye, No. 19-CV-10668 (CM), 2019 WL 6841952, at \*2 (S.D.N.Y. Dec. 13, 2019). [16] Pleading guidelines are set forth in the Federal Rules of Civil Procedure. Specifically, Rule 8 provides that a pleading which sets forth a claim for relief shall contain, inter alia, "a short and plain statement of the claim showing that the pleader is entitled to relief." See FED. R. CIV. P. 8(a)(2). "The purpose ... is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." Flores v. Graphtex, 189 F.R.D. 54, 54 (N.D.N.Y. 1999) (internal quotation marks and citations omitted). Rule 8 also requires the pleading to include:

(1) a short and plain statement of the grounds for the court's jurisdiction ...;

(2) a short and plain statement of the claim showing that the pleader is entitled to relief; and

(3) a demand for the relief sought ....

FED. R. CIV. P. 8(a). Although "[n]o technical form is required," the Federal Rules make clear that each allegation contained in the pleading "must be simple, concise, and direct." Id. at 8(d).

16    Unless otherwise noted, copies of all unpublished cases cited within this Report-Recommendation & Order have been provided to plaintiff.

Further, Rule 10 of the Federal Rules provides:

[a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. A later pleading may refer by number to a paragraph in an earlier pleading. If doing so would promote clarity, each claim founded on a separate transaction or occurrence – and each

defense other than a denial – must be stated in a separate count or defense.

FED. R. CIV. P. 10(b). This serves the purpose of "provid[ing] an easy mode of identification for referring to a particular paragraph in a prior pleading[.]" Flores, 189 F.R.D. at 54 (internal quotation marks and citations omitted).

"In reviewing a complaint ... the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." Hernandez v. Coughlin, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."

Ashcroft v. Iqbal, 556 U.S. 622, 678 (2009). A court should not dismiss a complaint if the plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citation omitted).

Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555). Thus, a pleading that only "tenders naked assertions devoid of further factual enhancement" does not suffice. Id. (internal quotation marks and alterations omitted). Allegations that "are so vague as to fail to give the defendants adequate notice of the claims against them" are subject to dismissal. Sheehy v. Brown, 335 F. App'x 102, 104 (2d Cir. 2009) (summary order). Indeed, a complaint that fails to comply with these pleading requirements "presents far too a heavy burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of their claims." Gonzales v. Wing, 167 F.R.D. 352, 355 (N.D.N.Y. 1996). As the Second Circuit has held, "[w]hen a complaint does not comply with the requirement that it be short and plain, the court has the power, on its own initiative ... to dismiss the complaint." Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988) (citations omitted). However, "[d]ismissal ... is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise

2023 WL 316013

unintelligible that its true substance, if any, is well disguised."
Id. (citations omitted).

### 2. **Analysis**

#### a. **Jurisdiction**

**\*7**  Plaintiff fails to demonstrate this Court's jurisdiction. He does not state which constitutional rights, federal laws, or state laws he believes defendants to have violated. Plaintiff does not explain how all of the named defendants were personally involved in the alleged violations of laws or rights. There is almost no factual support or context for his complaint, which is presented as a disjointed stream of consciousness. Further, it is not fully clear who he intends to name as defendants in this action as he names Judge Colleen Brown in the case caption, and Colleen Brown and "Bankruptcy Court" as defendants in the form complaint, but later lists bankruptcy courts at four different addresses in Vermont, the "United States Trustee," Cohen & Rice Law Firm, and the "Vermont Attorney General." Dkt. No. 1-2 at 6.

Federal jurisdiction is only available when (1) a "federal question" is presented, or (2) the plaintiff and all of the defendants are of diverse citizenship and the amount in controversy exceeds $ 75,000. See 28 U.S.C. §§ 1331, 1332. To invoke federal question jurisdiction, the plaintiff's claims must arise "under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. "Federal question jurisdiction may properly be invoked only if the plaintiff's complaint necessarily draws into question the interpretation or application of federal law." New York v. White, 528 F.2d 336, 338 (2d Cir. 1975). When a court lacks subject matter jurisdiction, dismissal is mandatory. See Arbaugh v. Y & H Corp., 546 U.S. 500, 514 (2006). Therefore, although courts "construe a pro se litigant's complaint liberally, a plaintiff attempting to bring a case in federal court must still comply with the relevant rules of procedural and substantive law, including establishing that the court has subject matter jurisdiction over the action." Ally v. Sukkar, 128 F. App'x 194, 195 (2d Cir. 2005) (summary order) (internal citation omitted).

As it appears all named defendants reside in Vermont, plaintiff is a resident of New York State, and plaintiff alleges that the amount in controversy is greater than $75,000, he would be able to proceed under this Court's diversity jurisdiction. The only claims plaintiff explicitly identifies is legal malpractice

and breach of contract, which would be assessed under state law. As will be discussed below, the application of special solicitude reveals to the undersigned that plaintiff may also be attempting to raise constitutional claims for violation of his due process rights in connection with an eviction. Such claims, if properly pleaded in a future complaint and demonstrated to be timely, could also demonstrate the existence of this Court's federal question jurisdiction.

#### b. **Federal Rules of Civil Procedure 8, 10, and 20**

Plaintiff's complaint is violative of Rules 8 and 10 of the Federal Rules of Civil Procedure. Plaintiff's amended complaint is clearly "a case[ ] in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988) (citations omitted). First, plaintiff does not provide any facts to provide context for his complaint. Plaintiff's complaint does not explain the background and bases of his complaint; the laws he alleges the defendants violated beyond unexplained and largely isolated references to "malpractice," "breech [sic] of contract," "racketeering, "corruption," "conspiracy," "human traffick[ing]," and "money loitering." [17] Dkt. No. 1-2 at 18. Further, beyond making these references to common law and criminal laws, plaintiff does not set forth how defendants violated any laws or rights or factual support or context to when the alleged incidents occurred. Although plaintiff names several defendants but does not explain their involvement in the violation of any laws or constitutional rights, with many defendants never mentioned anywhere in the body of the complaint. See, e.g., Dkt. No. 1-2 at 6, 14 (naming "attorney generals" and "Vermont Attorney General" in the "caption" or heading, but failing to provide any factual support or explanation of personal involvement).

[17]  It is likely that this is a malapropism and that plaintiff intended to state money laundering.

**\*8**  The lack of factual support, context, or clear statements of the claims and explanations as to how each defendant is personally involved in the alleged violation of each area of law or right asserted renders plaintiff's complaint plainly violative of Rule 8 as the complaint does not "give the defendants adequate notice of the claims against them[.]" Sheehy, 335 F. App'x at 104.

Case 1:25-cv-00848-AMN-TWD   Document 15   Filed 10/29/25   Page 31 of 77

Lamothe v. Brown, Not Reported in Fed. Supp. (2023)

2023 WL 316013

To the extent plaintiff's complaint implores the Court to perform independent research to ascertain the facts or background of his complaint or of his 2009 bankruptcy case – "Hasn't anybody listened to thee [sic] Court recording's [sic][,]" "Read paper trail already presented (handwritten) myself[,]" "Listen to Court recording[,]") – this neither a feasible demand nor a proper one. Dkt. No. 1-2 at 15. Plaintiff has not provided copies of any recordings or "paper trail," nor an explanation of how they apply to any claims he seeks to bring before this Court. If plaintiff wishes this Court to consider any facts, claims, or documents, such information must be included within the complaint or attached thereto and their relevance sufficiently explained.

Plaintiff's complaint, to the extent discernable, also violates Rule 20 of the Fed. R. Civ. P. Rule 20 provides that a plaintiff may not pursue unrelated claims against multiple defendants." Kastner, 2019 WL 6841952, at *2 (citing FED. R. CIV. P. 20(a)(2) ("Persons ... may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action.") and Peterson v. Regina, 935 F. Supp. 2d 628, 638 (S.D.N.Y. 2013) ("Case law makes clear that [i]n the absence of a connection between Defendants' alleged misconduct, the mere allegation that Plaintiff was injured by all Defendants is not sufficient [by itself] to join unrelated parties as defendants in the same lawsuit pursuant to Rule 20(a).")) (additional citation and quotation marks omitted). Plaintiff makes passing references to legal malpractice, several criminal claims, an arrest involving the Sheriff's Office, an eviction, bankruptcy proceedings, and breach of contract, among other things. Although the complaint is currently too vague and confused for the Court to assess whether there is a sufficient connection between any or all of these potential claims, the Court notes that, to the extent plaintiff seeks to bring multiple, unconnected claims against various unrelated defendants, such an approach is prohibited by Rule 20.

c. **Legal Malpractice Claims**

To the extent this Court can surmise, it appears that plaintiff may be seeking to bring legal malpractice claims against the lawyers and/or law firm who represented him in a 2009 bankruptcy proceeding, Cohen & Rice Law Firm and/or Rebecca Rice, and against the bankruptcy judge who oversaw

that proceeding, Colleen Brown. See generally Dkt. No. 1-2. Under Vermont law, the statute of limitations depends on a "determination of the appropriate limitations period depends upon the nature of the harm for which recovery is sought and not upon the nature of the action brought." Bentley v. Northshore Dev., Inc., 935 F. Supp. 500, 503 (D. Vt. 1996) (citing Kinney v. Goodyear Tire & Rubber Co., 134 Vt. 571, 575 (1976). For claims for legal malpractice, where only economic damages are alleged, the appropriate statute of limitations is six years. See, e.g., Bentley, 935 F. Supp at 503-504. If plaintiff's representation occurred in 2009, the statute of limitations would have expired for any legal malpractice claim arising out of that representation six years later, in 2015. See 12 V.S.A. § 511. As plaintiff commenced this action in 2022, it is untimely. Although equitable tolling can, in rare instances, toll a statute of limitations, plaintiff provides no support or argument such that the Court may assess whether equitable tolling could potentially apply. Accordingly, it is recommended that, to the extent plaintiff's complaint may be raising a claim for legal malpractice against his former lawyer/law firm, such claim be dismissed without prejudice and with opportunity to amend should plaintiff seek to demonstrate the applicability of equitable tolling such that a claim for legal malpractice would not be time-barred.

**\*9** Plaintiff also seems to be seeking to bring a claim for legal malpractice against Judge Colleen Brown, the bankruptcy judge presiding over plaintiff's bankruptcy proceedings. However, as Judge Brown presided over the bankruptcy proceedings as a judicial officer, but did not represent plaintiff as his attorney, he cannot bring a claim against her for legal malpractice. As will be discussed and assessed below, it is possible that plaintiff intended to raise a claim for judicial misconduct.

d. **Judicial Immunity**

To the extent plaintiff's complaint can be interpreted as attempting to bring a claim for judicial misconduct against Judge Colleen Brown, as is endemic to this entire complaint, plaintiff fails to provide factual context to support or context for such a claim. Despite the complete dearth of facts or context, to the extent plaintiff seeks to allege claims of misconduct against Judge Brown in connection with her role in overseeing, managing, or administration of his bankruptcy case, judicial misconduct claims do not lie for actions that occurred in the judge's role as judge. Judges have absolute immunity from suits for damages arising out of judicial acts

Case 1:25-cv-00848-AMN-TWD    Document 15    Filed 10/29/25    Page 32 of 77
Lamothe v. Brown, Not Reported in Fed. Supp. (2023)
2023 WL 316013

performed in their judicial capacities. See Mireles v. Waco, 502 U.S. 9, 11 (1991). Absolute judicial immunity "is not overcome by allegations of bad faith or malice," nor can a judge "be deprived of immunity because the action he took was in error ... or was in excess of his [or her] authority." Id. at 11, 13 (quotations and citations omitted). Judicial immunity may only be overcome where the court is alleged to have taken non-judicial actions or if the judicial actions taken were "in the complete absence of all jurisdiction." Id. at 11-12. It is not clear whether plaintiff is also seeking to raise a misconduct claim against other employees of the bankruptcy court. See Dkt. No. 1-2 at 12. However, absolute judicial immunity also extends to court clerks/employees who are performing tasks "which are judicial in nature and an integral part of the judicial process." Rodriguez v. Weprin, 116 F.3d 62, 66 (2d Cir. 1997).

As the Court can discern no such allegation, the judicial immunity applies to bar all claims against Judge Brown in connection with her handling of plaintiff's bankruptcy case as week as to all court clerks who performed judicial tasks. Although exceptions to judicial immunity exist only in the narrow circumstance noted above, because plaintiff's complaint is so factually sparse such that the Court cannot say with certainty whether plaintiff is contending that any of Judge Brown's alleged actions were "non-judicial" or done "in the complete absence of all jurisdiction," it is recommended that, to the extent plaintiff's complaint can be read as raising a claim for judicial misconduct against Judge Colleen Brown or unidentified court clerks, such claims be dismissed without prejudice.

### e. Outcome of Bankruptcy Proceedings

To the extent plaintiff disagrees with the outcome of his 2009 bankruptcy case or seeks this Court to review the outcome of any of his bankruptcy proceedings, such an attempt is untimely. Although U.S. District Courts have jurisdiction to hear appeals from, "final judgments, orders, and decrees" and certain interlocutory orders and decrees from the bankruptcy court, 28 U.S.C. § 158(a), "a notice of appeal must be filed with the bankruptcy clerk within 14 days after entry of the judgment, order, or decree being appealed." FED. R. BANKR. 8002; see In re NXXI Inc., 216 F. Supp. 3d 381, 388 (S.D.N.Y. 2016). Thus, plaintiff's seeking review of a 2009 [18] bankruptcy case by filing new actions in 2022, thirteen years later, is plainly untimely. [19]

[18]  Although plaintiff's bankruptcy proceeding was commenced in 2009, it is not entirely clear the date of the entry of judgment. However, as the Court has an Order from the Bankruptcy Court indicating that plaintiff had submitted a sixth post-closing motion, and that order is dated May 23, 2022, and plaintiff commenced these federal actions in August 31, 2022, even in the highly unlikely (as plaintiff commenced his bankruptcy action in 2009, it would appear unlikely to still be pending in 2022) circumstance that plaintiff's final judgment in his bankruptcy proceeding occurred in May 2022,s because a plaintiff has fourteen days to appeal a judgment, order, or decree of a bankruptcy court, this action would still be untimely. FED. R. BANKR. 8002.

[19]  The Court observes that 28 U.S.C. § 158(a)(1), grants a district court jurisdiction over appeals of "final judgments, orders, and decrees[,]" "from interlocutory orders and decrees issued under section 1121(d) of title 11 increasing or reducing the time periods referred to in section 1121 of such title[,]" or "with leave o the court, from other interlocutory orders and decrees[.]" Plaintiff does not state whether he is purporting to seek "appellate" review over a final judgment, order, or decree from the bankruptcy court

**\*10** To the extent plaintiff is attempting another chance at review of the outcome of his bankruptcy proceeding by commencing a separate civil action, such an approach is not permissible. See, e.g., Zarour v. U.S. Bank, N.A. as a trustee for Truman 2016 SC6 Title Tr., No. 21-CV-2928 ((LTS), 2021 WL 3500921, at *2 (S.D.N.Y. Aug. 9, 2021) ("[T]he proper vehicle for Plaintiff to challenge the Bankruptcy Court's decision to dismiss the petition is Plaintiff's appeal of that decision, not this new civil action.").

In one of the four actions plaintiff filed, plaintiff includes a copy of an Order dated May 24, 2022, from the United States Bankruptcy Court, District of Vermont, signed by U.S. Bankruptcy Judge Heather Z. Cooper. Therein, the Judge notes that plaintiff commenced a Chamber 13 bankruptcy petition on January 9, 2009, which was converted to a chamber 7 bankruptcy proceeding effective September 21, 2010. See 5:22-CV-164 ("Lamothe IV"), Dkt. No. 1-1 at 5. In the motion, the Judge Cooper denies plaintiff's "sixth post-closing motion in this case," holding that plaintiff's motion "fails to demonstrate cause or meet the requirements to re-

2023 WL 316013

open the Debtor's case under 11 U.S.C. § 350(b) or support any other relief that is available or warranted based upon the record of this closed case" and advised plaintiff that "[an]y further post-closing filings which fail to demonstrate cause or meet the requirements to reopen this case or support any other relief that is available will be considered an abuse of process and the Court will consider the imposition of sanctions." Id.

In sum, to the extent plaintiff is attempting to appeal the outcome of his bankruptcy proceeding or otherwise seek review of the decision, because this Court does not have jurisdiction over that claim, it is recommended that such claim be dismissed without prejudice, but without opportunity to amend. See Katz v. Donna Karan Co., L.L.C., 872 F.3d 114, 116 (2d Cir. 2017) ("[A] complaint must be dismissed without prejudice where the dismissal is due to the court's lack of subject matter jurisdiction[.]"); see also Amore Love, No. 1:21-CV-64 (DNH/ATB), 2021 WL 256945, at *6, n.15 (N.D.N.Y. Jan. 26, 2021) (citations omitted) ("Because this court is recommending dismissal for lack of subject matter jurisdiction, the court is constrained to recommend dismissal 'without prejudice,' although it is unlikely that this petitioner will be able to bring such an action in any court in the world, state or federal. However, the court is recommending that petitioner be denied the opportunity to amend because it is clear that any amendment would be futile.").

Plaintiff also makes several references to "contempt of court" but does not explain. To the extent that plaintiff is seeking that this Court hold any defendant in contempt of court, as no defendant has been properly served nor has appeared in this action, it is not possible for any defendant to have been in contempt of this Court's orders. Further, this Court does not have the authority to hold a defendant in contempt of any other court's orders. Accordingly, this claim is dismissed with prejudice.

## f. **Due Process**

Plaintiff, without providing any contextual support, makes a passing reference to due process. See Dkt. No. 1-2 at 12 ("clerks avoiding all attempts of due process"). This bare statement is insufficient to raise a due process violation. First, his statement of "clerks" does not identify the persons against whom he seeks to bring them claim and he provides no facts or support for how his due process rights were violated.

*11 Even if plaintiff seeks to bring a claim for violation of his due process rights under section 1983, in addition to failing to provide any factual context for this claim, to the extent plaintiff's potential due process claim arises out of his 2009 bankruptcy proceeding, he fails to demonstrate why such a claim would not be barred by the statute of limitations. In § 1983 actions, the applicable statute of limitations is a state's "general or residual statute for personal injury actions." Pearl v. City of Long Beach, 296 F.3d 76, 79 (2d Cir. 2002). The statute of limitations for claims brought pursuant to § 1983 is determined by state law, and in the State of Vermont, the statute of limitations for actions brought pursuant to § 1983 is three years. See Tester v. Pallito, No. 2:19-CV-146-CR-JMC, 2020 WL 2813607, at *3 (D. Vt. Mar. 9, 2020), report and recommendation adopted, No. 2:19-CV-146, 2020 WL 2793164 (D. Vt. May 29, 2020); Owens v. Okure, 488 U.S. 235, 249-51 (1989) (holding that the most appropriate statute of limitations in a § 1983 action is found in the "general or residual [state] statute [of limitations] for personal injury actions"); Wallace v. Kato, 549 U.S. 384, 387 (2007). "'While state law supplies the statute of limitations for claims under § 1983, federal law determines when a federal claim accrues. The claim accrues when the plaintiff knows or has reason to know of the harm." Connolly v. McCall, 254 F.3d 36, 41 (2d Cir. 2001) (quoting Eagleston v. Guido, 41 F.3d 865, 871 (2d Cir.1994)). On rare occasions, the principle of equitable tolling may prolong the allowable time for filing a complaint under § 1983. See Walker v. Jastremski, 430 F.3d 560, 564 (2d Cir. 2005) (citing Doe v. Menefee, 391 F.3d 147, 159 (2d Cir. 2004)). To obtain the benefit of equitable tolling, a plaintiff must demonstrate that "extraordinary circumstances prevented [him] from timely performing a required act" and that he "acted with reasonable diligence throughout the period he [sought] to toll." Id. Alternatively, the statute of limitations may be tolled if "the person entitled to commence an action is under disability because of infancy or insanity at the time the cause of action accrues." N.Y. C.P.L.R. § 208.

## g. **Eviction**

### i. **Wrongful Eviction**

Plaintiff makes references to a wrongful eviction and an unlawful warrant in December 2013. Dkt. No. 1-2 at 13, 18, 20 ("wrongful [sic] arrest waraants [sic]."). As indicated, there is not any factual context for these statements. Although it is not clear whether the "warrant" to which he refers is a warrant of eviction or an arrest warrant, contextual clues in

Case 1:25-cv-00848-AMN-TWD    Document 15    Filed 10/29/25    Page 34 of 77

Lamothe v. Brown, Not Reported in Fed. Supp. (2023)

2023 WL 316013

the complaint appear to suggest that plaintiff is referring to an unlawful warrant of eviction, rather than a criminal arrest warrant. It is not clear whether plaintiff is contending he was evicted from a home he owned, home he rented, or whether he was evicted from public housing. If he were evicted from public housing, he may be "entitled to certain due process of law before he can be deprived of continued tenancy." Oliver v. City of New York, No. 11-CV-1075 (ARR), 2011 WL 157844, at *3 (citing Escalera v. New York City Housing Authority, 425 F.2d 853, 861 (2d Cir.1970) ("The government cannot deprive a private citizen of his continued tenancy, without affording him adequate procedural safeguards even if public housing could be deemed to be a privilege."); Board of Regents v. Roth, 408 U.S. 564, 577 (1972) (procedural due process protects property rights created by state law).

It cannot be determined from the complaint whether plaintiff is attempting to argue that the warrant of eviction was somehow defective or if he is arguing that the execution of the eviction was somehow unlawful. It is further unclear whether the issue of eviction was addressed as part of his bankruptcy proceedings and against whom he is attempting to levy any potential wrongful eviction claim. Moreover, it is not exactly clear when the eviction occurred such that the Court may consider whether it is timely pursuant to the statute of limitations. As the Court does not have sufficient factual information or contextual support to properly assess whether plaintiff is claiming that an eviction violated his constitutional rights, it is recommended that any wrongful eviction claim brought under Vermont law be dismissed without prejudice such that plaintiff has an opportunity to amend to cure these defects.

### ii. Property Damage/Loss

Plaintiff states that a house was "ransacked" and "everthing [sic] taken from thee [sic] inside aswell [sic] as garage" by the Rutland Sherriff's Department and Vermont State Police Department in connection with an eviction. Dkt. No. 1-2 at 13. It is arguable that plaintiff is seeking to raise a claim for excessive or unreasonable property damage in violation of the Fourth Amendment. Plaintiff may also be suggesting that some of his property was taken in association with the eviction. See id. at 13, 18-19. The Supreme Court of the United States has held that the Fourth Amendment protects possessory interests in property, even where there has not been a "search" within the meaning of the Fourth Amendment. See Soldal v. Cook Cnty., Ill., 506 U.S. 56

(1992). However, such property damage or loss must be excessive and/or unreasonable to rise to the level of a constitutional claim. Courts have generally held that any property destruction that is not reasonably necessary for the performance of a law enforcement officer's duties constitutes an unreasonable seizure under the Fourth Amendment. See, e.g., 98 A.L.R. 5thh 305, Destruction of Property as Violation of Fourth Amendment (2002).

*12 As a threshold issue, any Fourth Amendment claim plaintiff may have in connection with a 2013 eviction is likely barred by the statute of this limitation. If this incident occurred in 2013, the statute of limitation would have expired three years later, in 2016. See Tester, 2020 WL 2813607, at *3. Thus, plaintiff may only be able to proceed on such a claim if he demonstrates that tolling applies. In addition to the statute of limitations concern, this claim must fail as it currently stands because there simply is not any factual support or context such that the Court would be able to assess against which defendants the claims were made, the property plaintiff alleges to have been damaged or destroyed by the Sheriff's Department in connection with the eviction and why such damage is excessive or unnecessary. Similarly, to the extent plaintiff claims the Sheriff's Department unnecessarily seized his property in connection with the execution of an eviction warrant, plaintiff must provide sufficient detail in connection with such a claim.

Finally, if plaintiff can overcome the defects noted above, plaintiff would only be able to proceed against a municipal defendant, such as the Sheriff's Office, under a Monell claim. See Monell v. Dep't of Soc. Servs. of the City of New York, 436 U.S. 658, 665-83, 691 (1978) Although plaintiff does not name the Sheriff's Office as a defendant either in the caption of the complaint or in any of the lists of defendants within the complaint, applying special solicitude, should plaintiff wish to proceed against the Rutland County Sheriff's Office, because such an entity is a municipality, to proceed for violation of any constitutional rights in association with an eviction, plaintiff would need to plead that there existed a specific policy or custom that lead to the violation of his constitutional rights. See Monell, 436 U.S. at 665-83, 69; see also Rudavsky v. City of S. Burlington, No. 2:18-CV-25, 2018 WL 4639096, at *2 (D. Vt. Sept. 27, 2018) ("Plaintiffs who seek to impose liability on local governments under Section 1983 must prove that the individuals who violated their federal rights took "action pursuant to official municipal policy. Official municipal policy includes not only the decisions of a government's lawmakers, but also the acts

Case 1:25-cv-00848-AMN-TWD    Document 15    Filed 10/29/25    Page 35 of 77
Lamothe v. Brown, Not Reported in Fed. Supp. (2023)
2023 WL 316013

of its policymaking officials, and practices so persistent and widespread as to practically have the force of law .... These are action[s] for which the municipality is actually responsible.") (internal citations and quotation marks omitted).

Accordingly, in light of special solicitude, it is recommended that any potential Fourth Amendment claim for excessive property damage or destruction be dismissed without prejudice and with opportunity to amend to permit plaintiff a chance to demonstrate (1) why such a claim is not barred by the three-year statute of limitations for § 1983 claims, and (2) provide sufficient factual support, (3) identify the specific defendants against whom he wishes to bring the claim, and (4) set forth whether he believes defendants were acting pursuant to an official municipal policy and identify such policy.

As this Court must provide special solicitude to pro se plaintiffs, Triestman, 470 F.3d at 475, and in light of the directive that caution should be exercised in ordering sua sponte dismissal of a pro se complaint before the adverse party has been served and the parties have had an opportunity to address the sufficiency of plaintiff's allegations, Anderson v. Coughlin, 700 F.2d 37, 41 (2d Cir. 1983), it is recommended that plaintiff be provided one opportunity to amend his complaint.

### h. Criminal Claims

Plaintiff's complaint makes unexplained references to racketeering, corruption, conspiracy, human trafficking,[20] money laundering, forgery, and houses ransacked, broken into, stolen paper trail." Dkt. No. 1-2 at 13, 18-19. To the extent plaintiff seeks to proceed with criminal claims against any defendants, such claims must fail. Plaintiff lacks standing to initiate a criminal proceeding against any party. See Linda R.S. v. Richard D., 410 U.S. 614, 619 (1973) ("[A] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another."). This Court "does not have the authority or jurisdiction to ... seek the criminal prosecution of individuals at the request of a plaintiff," Walker, 2021 WL 3518439, or "impose civil penalties for alleged criminal acts of which a defendant has not been convicted, commence a criminal prosecution, compel a law enforcement agency to investigate suspected criminal activity, nor compel a prosecutor to prosecute." Eggsware v. Doe, 1:22-CV-54 (BKS/CFH), 2022 WL 827640, at *5 (N.D.N.Y. Feb. 7, 2022) report recommendation adopted by Eggsware v. Doe, 2022 WL 823646 (N.D.N.Y. Mar. 18, 2022). Thus, to the

extent plaintiff wishes to proceed on criminal claims, it is recommended that such claims be dismissed with prejudice and without opportunity to amend for failure to state a claim upon which relief can be granted. See 28 U.S.C. § 1915(e)(2) (B)(i).

[20]    Plaintiff states "human traffick[,]" but the Court believes that plaintiff means human trafficking. Dkt. No. 1-2 at 19.

### i. Breach of Contract

**\*13**    Plaintiff also includes in his complaint the phrases "contempt of court" and "breech [sic] of contract" but fails to explain (1) how "contempt of court" – which only a judge can impose – applies, who he seeks to hold in contempt of court, and why; and (2) the defendants involved in the alleged breach of contract, the terms of the alleged contract, and how and when defendants allegedly breached the alleged contract. As plaintiff has provided no factual or contextual support for his breach of contract claim, it must be dismissed with prejudice. Further, plaintiff must also demonstrate how a breach of contract claim arises from the same facts and circumstances such that it should be considered as part of the same lawsuit. See FED. R. CIV. P. 20.

### j. Official Capacity Claims

Plaintiff does not specify whether he intends to bring his claims against Judge Colleen Brown, United States Trustee, and Vermont Attorney General in their personal capacities or official capacities. Section 1983 does not authorize suits against state officials in their official capacities. he Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. Regardless of the nature of the relief sought, in the absence of the State's consent or waiver of immunity, a suit against the State or one of its agencies or departments is proscribed by the Eleventh Amendment. Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100 (1984). "New York State has not consented to suit in federal court." Abrahams v. Appellate Div. of Supreme Court, 473 F.Supp.2d 550, 556 (S.D.N.Y. 2007) (citing Trotman v. Palisades Interstate Park Comm'n, 557 F.2d 35, 38-40 (2d. Cir. 1977). Section 1983 claims do

Case 1:25-cv-00848-AMN-TWD    Document 15    Filed 10/29/25    Page 36 of 77

**Lamothe v. Brown, Not Reported in Fed. Supp. (2023)**

2023 WL 316013

not abrogate the Eleventh Amendment immunity of the states. See Quern v. Jordan, 440 U.S. 332, 340-41 (1979). "[C]laims against a government employee in his official capacity are treated as claims against the municipality," and, thus, cannot stand under the Eleventh Amendment. Hines v. City of Albany, 542 F.Supp. 2d 218 (N.D.N.Y.2008). Accordingly, it is recommended that, to the extent it can be interpreted that any claims are sought for monetary damages against the individual defendants in their official capacities, such claims be dismissed with prejudice, and that any future claims may be brought against such defendants only in their personal capacities.

### k. **Opportunity to Amend**

Plaintiff is advised that, should the District Judge permit him to file an amended complaint, the amended complaint must set forth a short and plain statement of the claim and the facts he relies on in support of his claims. He must specify how each individual named as a defendant in that pleading engaged in acts of misconduct or wrongdoing which violated laws or constitutional rights. An amended complaint may only replead claims that were dismissed by this Court without prejudice. Any amended complaint will replace and supersede the complaint in its entirety and, thus, must be a complete pleading containing all of the facts, allegations, parties, and legal claims that plaintiff wishes to include, except for any that have been dismissed by this Court with prejudice. See Arce v. Walker, 139 F.3d 329, 332 n.4 (2d Cir. 1998) ("It is well established that an amended complaint ordinarily supersedes the original and renders it of no legal effect.").

### III. **Conclusion**

**WHEREFORE**, for the reasons set forth herein, it is hereby

**ORDERED**, that plaintiff's application for leave to proceed in forma pauperis, Dkt. No. 1-1 (5:22-CV-161), is **GRANTED** for purposes of filing; and it is

**\*14** (1) **RECOMMENDED**, that plaintiff's complaint, Dkt. No. 1-2 (5:22-CV-161), be **DISMISSED** as follows:

(a) plaintiff's claims, insofar as they attempt to proceed on any criminal claims be **DISMISSED WITH PREJUDICE**; and it is

(b) any potential section 1983 claims against defendants Judge Colleen Brown, United States Trustee, and Vermont Attorney General in their official capacities which seek monetary damages be **DISMISSED WITH PREJUDICE**;

(c) plaintiff's "contempt of court" claims be **DISMISSED WITH PREJUDICE**;

(d) plaintiff's claim for legal malpractice against Judge Collen Brown be **DISMISSED WITH PREJUDICE**;

(e) plaintiff's attempt to appeal or otherwise seek review of the outcome of his 2009 bankruptcy proceeding be **DISMISSED WITHOUT PREJUDICE and WITHOUT OPPORTUNITY TO AMEND**;

(f) that the remainder of plaintiff's complaint be **DISMISSED WITHOUT PREJUDICE** and **WITH OPPORTUNITY TO AMEND**; and it is further

(4) **RECOMMENDED**, that if the District Judge adopt this Report-Recommendation & Order, plaintiff be given thirty (30) days from the filing date of the Order adopting the Report-Recommendation & Order to file an amended complaint, and if plaintiff does not file an amended complaint within that time frame, the case be closed without further order of the Court; and it is further

(5) **RECOMMENDED**, that: (a) this matter (5:22-CV-161 "Lamothe I") be **CONSOLIDATED** with 5:22-CV-162 ("Lamothe II"), 5:22-CV-163 ("Lamothe III"), and 5:22-CV-164 ("Lamothe IV"), with the lead case being 5:22-CV-161, and the member cases being 22-CV-162, 22-CV-163, and 5:22-CV-164, and, (b) if consolidation is granted, that this Report-Recommendation & Order be docketed and served in all cases, with future filings to be docketed in only the lead case; and it is

**ORDERED**, that the Clerk of the Court serve this Report-Recommendation & Order on plaintiff in accordance with Local Rules.

**\*15** Pursuant to 28 U.S.C. § 636(b)(1), plaintiff has **FOURTEEN (14) days** within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW. See Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Sec'y of Health

2023 WL 316013

and Human Servs., 892 F.2d 15 (2d Cir. 1989)); see also 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a). [21]

[21]   If you are proceeding pro se and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order was mailed to you to serve and file objections. See FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. See id. § 6(a)(1)(C).

**Lamothe v. Brown, Not Reported in Fed. Supp. (2023)**
Case 1:25-cv-00848-AMN-TWD   Document 15   Filed 10/29/25   Page 38 of 77
2023 WL 316013

**All Citations**

Not Reported in Fed. Supp., 2023 WL 316013

---

**End of Document**                                         © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Case 1:25-cv-00848-AMN-TWD    Document 15    Filed 10/29/25    Page 39 of 77
Joseph v. JRF Income Tax Business Services, Not Reported in Fed. Supp. (2021)
2021 WL 3516421

2021 WL 3516421
Only the Westlaw citation is currently available.
United States District Court, E.D. New York.

Anderson JOSEPH, Plaintiff,

v.

JRF INCOME TAX BUSINESS SERVICES, Defendant.

Anderson Joseph, Plaintiff,

v.

McDonald's Restaurant, Defendant.

Anderson Joseph, Plaintiff,

v.

North Shore University Hospital, Defendant.

Anderson Joseph, Plaintiff,

v.

Social Security Office, Defendant.

Anderson Joseph, Plaintiff,

v.

T-Mobile, Defendant.

Anderson Joseph, Plaintiff,

v.

Department of the Treasury Internal
Revenue Service, Defendant.

Anderson Joseph, Plaintiff,

v.

Great Neck Plaza Village of, Defendant.

Anderson Joseph, Plaintiff,

v.

Help to Adjust Counseling,
Anger Management, Defendant.

Anderson Joseph, Plaintiff,

v.

New York State Insurance Fund, Defendant.

Anderson Joseph, Plaintiff,

v.

Capital One Bank, Defendant.

Anderson Joseph, Plaintiff,

v.

Charra Nalini, Defendant.

Anderson Joseph, Plaintiff,

v.

Ctown Supermarket, Defendant.

Anderson Joseph, Plaintiff,

v.

Lantern Diner, Defendant.

21-CV-3869 (PKC) (PK), 21-CV-3870 (PKC)
(PK), 21-CV-3872 (PKC) (PK), 21-CV-3873
(PKC) (PK), 21-CV-3874 (PKC) (PK), 21-

2021 WL 3516421

CV-3876 (PKC) (PK), 21-CV-3877 (PKC) (PK), 21-
CV-3878 (PKC) (PK), 21-CV-3879 (PKC) (PK), 21-
CV-3880 (PKC) (PK), 21-CV-3881 (PKC) (PK),
21-CV-3882 (PKC) (PK), 21-CV-3883 (PKC) (PK)

|

Signed 08/10/2021

**Attorneys and Law Firms**

Anderson Joseph, Queens Village, NY, Pro Se.

**MEMORANDUM & ORDER**

PAMELA K. CHEN, United States District Judge:

**\*1** Plaintiff Anderson Joseph filed these 13 *pro se* actions on
June 8, 2021 under 42 U.S.C. § 1983 ("Section 1983"). [1] The
actions are consolidated solely for the purpose of this Order.
Plaintiff's requests to proceed *in forma pauperis* ("IFP")
pursuant to 28 U.S.C. § 1915 are granted. For the reasons
discussed below, all 13 Complaints are dismissed.

[1]     The Court notes that in recent months, Plaintiff
has filed more than 20 other cases against various
individuals, organizations, and entities, all but
one of which was dismissed for failure to state
a claim pursuant to 28 U.S.C. § 1915(e)(2)(B).
*See Joseph v. Supreme Ct. of the State of N.Y.*,
No. 21-CV-1685 (PKC) (PK); *Joseph v. Legal
Aid Soc'y*, No. 21-CV-1686 (PKC) (PK); *Joseph
v. N.Y.C. Police Dep't*, No. 21-CV-1687 (PKC)
(PK); *Joseph v. Kirby Forensic Psychiatric Ctr.*,
No. 21-CV-1688 (PKC) (PK); *Joseph v. Dep't of
Probation*, No. 21-CV-1689 (PKC) (PK); *Joseph v.
Nassau Cnty. Probation*, No. 21-CV-1690 (PKC)
(PK); *Joseph v. Row Hotel*, No. 21-CV-1691 (PKC)
(PK); *Joseph v. Children's Rescue Fund*, No. 21-
CV-1692 (PKC) (PK); *Joseph v. Landing Fam.
Shelter*, No. 21-CV-1693 (PKC) (PK); *Joseph v.
Spring Fam. Residence*, No. 21-CV-1694 (PKC)
(PK); *Joseph v. Hollis Fam. Residence*, No. 21-
CV-1695 (PKC) (PK); *Joseph v. MTA NYC Transit*,
No. 21-CV-1696 (PKC) (PK); *Joseph v. Stark*, No.
21-CV-2136 (PKC) (PK); *Joseph v. Jamaica Hosp.
Med. Ctr.*, No. 21-CV-2137 (PKC) (PK); *Joseph
v. Mount Sinai Queens*, No. 21-CV-2139 (PKC)
(PK); *Joseph v. NYU Langone Med. Bus. Off.*,
No. 21-CV-2140 (PKC) (PK); *Joseph v. Queens
Hosp. Ctr.*, No. 21-CV-2141 (PKC) (PK); *Joseph v.*

*Wells Fargo Bank*, No. 21-CV-2810 (PKC) (PK);
*Joseph v. TD Bank*, No. 21-CV-2811 (PKC) (PK);
*Joseph v. Ridgewood Sav. Bank*, No. 21-CV-2812
(PKC) (PK); *Joseph v. CMJ Mgmt. Inc.*, No. 21-
CV-2813 (PKC) (PK); *Joseph v. Chase Bank*, No.
21-CV-2814 (PKC) (PK); *Joseph v. Bank of Am.*,
No. 21-CV-2816 (PKC) (PK).

**LEGAL STANDARD**

A complaint must plead facts sufficient to "state a claim
to relief that is plausible on its face." *Bell Atl. Corp. v.
Twombly*, 550 U.S. 544, 570 (2007). Although all allegations
contained in the compliant are assumed to be true, this
tenet is "inapplicable to legal conclusions." *Ashcroft v. Iqbal*,
556 U.S. 662, 678 (2009). A document filed *pro se* is to
be liberally construed, and "a *pro se* complaint, however
inartfully pleaded, must be held to less stringent standards
than formal pleadings drafted by lawyers." *Ceara v. Deacon*,
916 F.3d 208, 213 (2d Cir. 2019) (quoting *Erickson v. Pardus*,
551 U.S. 89, 94 (2007)); *see McEachin v. McGuinnis*, 357
F.3d 197, 200 (2d Cir. 2004) ("[A] court is obliged to construe
[*pro se*] pleadings liberally, particularly when they allege civil
rights violations."). "If [a] liberal reading of the complaint
'gives any indication that a valid claim might be stated,' the
Court must give the plaintiff an opportunity to amend the
complaint." *Nelson-Charles v. U.S. Dep't of Educ.*, No. 19-
CV-1616 (PKC) (PK), 2019 WL 1675999, at \*2 (E.D.N.Y.
Apr. 16, 2019) (quoting *Cuoco v. Moritsugu*, 222 F.3d 99, 112
(2d Cir. 2000)).

**\*2** Nevertheless, under 28 U.S.C. § 1915(e)(2)(B), a district
court shall dismiss an IFP action where it is satisfied that
the action "(i) is frivolous or malicious; (ii) fails to state a
claim on which relief may be granted; or (iii) seeks monetary
relief against a defendant who is immune from such relief." 28
U.S.C. § 1915(e)(2)(B). "An action is frivolous when either:
(1) the factual contentions are clearly baseless, such as when
allegations are the product of delusion or fantasy; or (2) the
claim is based on an indisputably meritless legal theory."
*Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d
Cir. 1998) (internal quotation marks and citation omitted).

**BACKGROUND**

In his Complaint against **JRF Income Tax Business Services
("JRF")**, Plaintiff alleges that on February 21, 2020, he called
JRF to inquire about his income taxes and spoke with Mr.

2021 WL 3516421

Joseph Francois, who "d[id]n't have any information about either [Plaintiff] or [his] wife," prompting Plaintiff to ask Mr. Francois if he "has a license to do taxes[.]" (No. 21-CV-3869, Dkt. 1, at 3–4.) Plaintiff alleges that Mr. Francois became "mad" and cursed at him. (*Id.* at 4.) As a result, Plaintiff "felt disrespect and discrimination at the same time" and noted that Mr. Francois's "office is too small for business." (*Id.*) Plaintiff claims that he felt stressed and sad, and he seeks $3 million in monetary damages for pain and suffering. (*Id.* at 4–5.)

In his Complaint against **McDonald's Restaurant**, Plaintiff alleges that on May 19, 2016, he went to a McDonald's location in West Hempstead, New York and discovered that "the McDonalds [was] using [his] ideas from [a previous] complaint, things like breakfast all day and a better customer service because before the customer service was very bad." (No. 21-CV-3870, Dkt. 1, at 3–4.) Plaintiff alleges that he was verbally abused and "discriminated for no reason." (*Id.* at 4.) Plaintiff alleges that he felt depressed and sad, and he seeks unspecified monetary damages for discrimination and pain and suffering. (*Id.* at 4–5.)

In his Complaint against **North Shore University Hospital ("North Shore")**, located in Manhasset, New York, Plaintiff alleges that while in police custody on December 6, 2013, he was taken to the North Shore emergency department for treatment to a cut on his right hand. (No. 21-CV-3872, Dkt. 1, at 3–4.) Plaintiff alleges that his injury required surgery, but that the doctor did not give him anesthesia, so he "felt the sensation of the pain very badly" and "after the surgery [he] kept on giving blood until [he] arrive[d] to Rikers Island." (*Id.* at 4.) Plaintiff alleges that he suffered from "injuries, stressful depression[,] and sleep disorder," and he seeks $500 million in damages for pain and suffering. (*Id.* at 4–5.)

In his Complaint against the **"Social Security Office,"** Plaintiff alleges that on May 23, 2016, March 19, 2021, and other occasions, the Social Security Office discriminated against and disrespected him. (No. 21-CV-3873, Dkt. 1, at 3–4.) Plaintiff alleges that he experienced bad customer service, including waiting "1 to 2 hours over the phone" before being informed that he did not qualify for benefits and waiting "for 8 hours" at the office without anyone serving him. (*Id.* at 3–4.) Plaintiff alleges that he experienced depression and pain, and he seeks unspecified money damages. (*Id.* at 4–5.)

In his Complaint against **T-Mobile**, Plaintiff alleges that during a phone call on May 19, 2016, T-Mobile customer service "treat[ed] [him] as [he] sa[id] in [his previous]

complaint and us[ed] [his] idea for a better service and [he] need[s] to get paid for that." (No. 21-CV-3874, Dkt. 1, at 3–4.) Plaintiff alleges that he experienced depression, stress, and emotional pain, and he seeks unspecified money damages for discrimination and pain and suffering. (*Id.* at 4–5.)

 **\*3** In his Complaint against the **Department of Treasury Internal Revenue Service ("IRS")**, Plaintiff alleges that since 2012, a Florida-based company did his taxes, so he is not responsible for them, and "any time [he] called IRS over the phone the agents disrespected [him] because they d[idn]'t have any answers for [him]." (No. 21-CV-3876, Dkt. 1, at 4.) Plaintiff alleges that the IRS charged him $5,000 to "pay back," made him wait "1 to 2 hours" on the phone, and "abuse[d] [him] verbally [and he] felt discriminated and [dis]respected." (*Id.*) Plaintiff alleges that felt depression and stress, and he seeks $100 million in damages for pain and suffering. (*Id.* at 4–5.)

In his Complaint against **"Great Neck Plaza Village Of"** [2] **("Great Neck")**, Plaintiff alleges that on August 10, 2016, he was verbally abused and "discriminated at work as a community organizer" because a driving instructor for the "city government office in Great Neck hung up the phone in [his] face several times" when he was "telling them ... that [Great Neck] was not safe to drive." (No. 21-CV-3877, Dkt. 1, at 3–4.) Plaintiff alleges that he felt depressed and verbally abused, and he seeks unspecified money damages for discrimination and pain and suffering. (*Id.* at 4–5.)

[2]  The Village of Great Neck is located in Nassau County, New York. *See* https://www.greatneckvillage.org/ (last visited July 27, 2021).

In his Complaint against **Help to Adjust, Anger Management ("Help to Adjust")**, a private counseling center, [3] Plaintiff alleges that his probation officer sent him for weekly counseling sessions, including on June 29, 2017, where the counselor asked questions about his life and December 6, 2013 arrest, and he was required to get drug tested. (No. 21-CV-3878, Dkt. 1, at 3–4.) Plaintiff states that he "felt discriminated [against] because [the counselor] was using [him] to better her job position and [he] didn't get paid for it[,] and after her interview with [him], [he] always felt dizziness and emotional stress." (*Id.* at 4.) Plaintiff alleges that he felt stress, and he seeks $3 million in damages for pain and suffering. (*Id.* at 5.)

Case 1:25-cv-00848-AMN-TWD    Document 15    Filed 10/29/25    Page 42 of 77

Joseph v. JRF Income Tax Business Services, Not Reported in Fed. Supp. (2021)

2021 WL 3516421

3
Help to Adjust is a counseling center that offers general therapy, marriage and relationship counseling, and anger management counseling. *See* Help to Adjust Counseling & Anger Management, http://www.valleystreamtherapist.com/ (last visited on July 27, 2021).

In his Complaint against **New York State Insurance Fund ("NYSIF")**, Plaintiff alleges that on June 6, 2016 and April 28, 2021, he was discriminated against and verbally abused over the phone by an NYSIF employee, who denied him information. (No. 21-CV-3879, Dkt. 1, at 3–4.) Plaintiff alleges that he felt depression, stress, and emotional pain, and he seeks unspecified money damages for discrimination and pain and suffering. (*Id.* at 4–5.)

In his Complaint against **Capital One Bank ("Capital One")**, Plaintiff alleges that from 2015 until April 9, 2021, including on November 5, 2020, "Capital One Bank [was] always changing [his] balance and took [his] money illegally." (No. 21-CV-3880, Dkt. 1, at 3–4.) Plaintiff alleges that he called customer service to "let them know" and they made him wait "a good 1 to 2 [hours]" and "discriminate[d] [against him] over the phone." (*Id.* at 4.) Plaintiff alleges that he felt depression and stress, and he seeks $500 million in money damages for discrimination and pain and suffering. (*Id.* at 4–5.)

In his Complaint against **Charra Nalini**, Plaintiff alleges that he was injured in a car accident while he was a driving instructor at Nalini's driving school, and that on May 26, 2016, Nalini, "refused to give [him] information about [ ] car insurance." (No. 21-CV-3881, Dkt. 1, at 3–4.) Plaintiff also alleges that he called Nalini to ask for his last paycheck, but she hung up on him. (*Id.* at 4.) Plaintiff seeks unspecified money damages for pain and suffering. (*Id.* at 5.)

**\*4** In his Complaint against **CTown Supermarket ("CTown")**, Plaintiff alleges that on June 9, 2021, [4] employees at a CTown located in Jamaica, New York, verbally abused, threatened, and treated him badly, prompting Plaintiff to call the police "for discrimination." (No. 21-CV-3882, Dkt. 1, at 3–4.) Plaintiff alleges that he felt stress and "emotional injury" and that CTown "need[s] to stop experiments on [him]." (*Id.*) Plaintiff seeks $500 million in money damages for discrimination. (*Id.* at 5.)

4
The Court notes that this action was filed on June 8, 2021, the day *before* this alleged event.

Finally, in his Complaint against **Lantern Diner**, located in West Hempstead, New York, Plaintiff alleges that on June 6, 2016, he "went to Lantern Diner and [ ] saw the Diner servers treat [him] as [he said] in [his] complaint, but the Diner us[ed] [his] idea and [he] need monetary [sic] for it." (No. 21-CV-3883, Dkt. 1, at 3–4.) Plaintiff attaches materials related to a state court action in which he alleges Lantern Diner discriminated against him. (Dkt. 1-2.) Plaintiff alleges that he felt depression and stress, and he seeks unspecified money damages for discrimination and pain and suffering. (No. 21-CV-3883, Dkt. 1, at 4–5.)

## DISCUSSION

### I. 42 U.S.C. § 1983

Section 1983 provides that

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured[.]

42 U.S.C. § 1983. Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979); *Thomas v. Roach*, 165 F.3d 137, 142 (2d Cir. 1999). To state a claim under Section 1983, a plaintiff must allege that the conduct at issue was "committed by a person acting under color of state law" and that the conduct deprived the plaintiff "of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010) (quoting *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994)).

"[T]he under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful." *Am. Mfrs. Mut. Ins. Co. v.*

Case 1:25-cv-00848-AMN-TWD    Document 15    Filed 10/29/25    Page 43 of 77

Joseph v. JRF Income Tax Business Services, Not Reported in Fed. Supp. (2021)

2021 WL 3516421

*Sullivan*, 526 U.S. 40, 50 (1999) (internal quotation marks and citation omitted). However, the Second Circuit has identified three main tests for determining when the actions of a "nominally private entity are attributable to the state" for purposes of Section 1983 liability:

> (1) [when] the entity acts pursuant to the coercive power of the state or is controlled by the state ("the compulsion test"); (2) when the state provides significant encouragement to the entity, the entity is a willful participant in joint activity with the state, or the entity's functions are entwined with state policies ("the joint action test" or "close nexus test"); or (3) when the entity has been delegated a public function by the state ("the public function test").

*Fabrikant v. French*, 691 F.3d 193, 207 (2d Cir. 2012) (alteration in original) (quoting *Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 257 (2d Cir. 2008)). "The fundamental question under each test is whether the private entity's challenged actions are 'fairly attributable' to the state." *Id.* (citations omitted).

**\*5** Here, Plaintiff's claims against JRF, McDonald's, North Shore, T-Mobile, Help to Adjust, Capital One, Charra Nalini, CTown and Lantern Diner fail because they are all private entities beyond the reach of Section 1983 liability. Plaintiff does not allege that any of these entities acted under color of state law, and there are no facts in the Complaints that demonstrate, even on a liberal reading, that the actions of these Defendants may be "fairly attributable" to the state. Therefore, the Complaints must be dismissed. *See Boothe v. Rossrock Funds II LP*, No. 16-CV-900 (PKC), 2017 WL 2271360, at *8 (E.D.N.Y. May 23, 2017) (dismissing Section 1983 claims against private corporations, including a bank, because none were "State actors for purposes of 42 U.S.C. § 1983" and the amended complaint "utterly fail[ed] to allege that [the] [d]efendants' actions are attributable to the State" (citation omitted)); *Anthony v. Med. Staff at Inst.*, 409 F. Supp. 3d 102, 105 (E.D.N.Y. 2016) ("A private hospital is generally not considered a state ... actor.") (collecting cases); *Schneiderman v. N. Shore Univ. Hosp.*, No. 13-CV-5939, 2013 WL 6564184, at *2 (E.D.N.Y. Dec.

11, 2013) ("North Shore University Hospital is a private hospital facility.")[5]; *Brown v. Chase Bank*, No. 13-CV-5309 (WFK) (LB), 2013 WL 5537302, at *2 (E.D.N.Y. Oct. 7, 2013) (dismissing complaint against private corporations, including banks, and private individuals who "do not act under color of state law within the meaning of 42 U.S.C. § 1983"); *White v. St. Joseph's Hosp.*, 369 F. App'x 225, 226 (2d Cir. 2010) (summary order) ("[P]rivate actors and institutions, such as the hospitals, ... named as defendants in [the plaintiff]'s original complaint, are generally not proper § 1983 defendants because they do not act under color of state law." (citing *Sullivan*, 526 U.S. at 49–50)).

[5]    North Shore is part of the Northwell Health system and is the teaching hospital for the Donald and Barbara Zucker School of Medicine at Hofstra/Northwell. *See* About Us, https://nsuh.northwell.edu/about (last visited July 27, 2021).

Furthermore, Plaintiff does not provide any facts to support his conclusory allegations of discrimination by these Defendants. A complaint that offers nothing more than "an unadorned, the-defendant-unlawfully-harmed-me accusation" or that "tenders naked assertions devoid of further factual enhancement" is insufficient. *Iqbal*, 556 U.S. at 678 (alteration, internal quotation marks, and citations omitted). Accordingly, even on a liberal reading, these 13 Complaints must also be dismissed for failing to state a claim.

In addition, Plaintiff's medical malpractice claim against North Shore fails because the Court does not have jurisdiction over this state law claim. "A claim sounds in medical malpractice when the challenged conduct 'constitutes medical treatment or bears a substantial relationship to the rendition of medical treatment by a licensed physician.' " *Sha v. Mem'l Sloan-Kettering Cancer Ctr.*, No. 99-CV-3233 (AKH), 2000 WL 1760883, at *1 (S.D.N.Y. Nov. 30, 2000) (quoting *Weiner v. Lenox Hill Hospital,* 673 N.E.2d 914 (1996)), *aff'd sub nom. Sha (Engelhardt) v. Mem'l Sloan Kettering Cancer Ctr.*, 29 F. App'x 788 (2d Cir. 2002). Plaintiff's Complaint against North Shore relates to medical treatment provided to him and therefore can be read as a claim for medical malpractice. Medical malpractice claims "arise under state law, and a federal court generally will not have original jurisdiction over the[se] claims unless complete diversity exists," meaning "no plaintiff and no defendant are citizens of the same state." *Urena v. Wolfson*, No. 09-CV-1107 (KAM) (LB), 2010 WL 5057208, at *13 (E.D.N.Y. Dec. 6, 2010). Here, Plaintiff and

2021 WL 3516421

North Shore are both citizens of New York; thus complete diversity and diversity jurisdiction do not exist. *See* 28 U.S.C. § 1332.

Finally, Plaintiff's actions against the Social Security Office, IRS, Great Neck, and NYSIF must be dismissed because allegations that Plaintiff was treated poorly, disrespected, or received bad customer service simply do not rise to the level of federal constitutional or statutory violations. Furthermore, Plaintiff does not provide any facts to support his conclusory allegations of discrimination by these Defendants. As previously stated, a complaint that offers nothing more than "an unadorned, the-defendant-unlawfully-harmed-me accusation" or that "tenders naked assertions devoid of further factual enhancement" is insufficient. *Iqbal*, 556 U.S. at 678 (alteration, internal quotation marks, and citations omitted). Accordingly, even on a liberal reading, these Complaints must be dismissed for failing to state a claim upon which relief can be granted.

## II. Denial of Leave to Amend

 *6  The Court has a duty to give a *pro se* plaintiff the opportunity to amend his complaint if a "liberal reading of the complaint 'gives any indication that a valid claim might be stated[.]' " *Nelson-Charles*, 2019 WL 1675999, at *2 (quoting *Cuoco*, 222 F.3d at 112). However, where it would be futile to do so because the claims are fundamentally invalid, the Court may deny the plaintiff this opportunity. *See Cuoco*, 222 F.3d at 112 ("The problem with [the plaintiff]'s causes of action is substantive; better pleading will not cure it. Repleading would thus be futile."); *accord Kraft v. City of New York*, 823 F. App'x 62, 64 (2d Cir. 2020) (summary order). The Court finds that it would be futile to allow Plaintiff to re-plead the claims asserted in these 13 actions, and therefore declines to grant him the opportunity to file amended complaints in any of these actions.

## III. Filing Injunction

The federal courts have limited resources. Frequent frivolous filings diminish the ability of the federal courts to manage their dockets for the efficient administration of justice. "The district courts have the power and the obligation to protect the public and the efficient administration of justice from individuals who have a history of litigation entailing vexation, harassment and needless expense to other parties and an unnecessary burden on the courts and their supporting personnel." *Lau v. Meddaugh*, 229 F.3d 121, 123 (2d Cir. 2000) (internal quotation marks and citations omitted).

In light of Plaintiff's litigation history, which includes, to date, the filing of over 33 complaints, all but one of which have been dismissed *sua sponte*, he is ORDERED TO SHOW CAUSE by written Affirmation, **within 14 days** of the entry of this Order, why he should not be barred from filing any future IFP actions in the United States District Court for the Eastern District of New York without first obtaining permission from the Court to do so.

If Plaintiff fails to show cause **within 14 days** of the entry of this Order, or should Plaintiff's affirmation fail to set forth good cause why an injunction should not be entered, Plaintiff will be barred from filing any further IFP actions in this Court without first obtaining permission from the Court. *See Hong Mai Sa v. Doe*, 406 F.3d 155, 158 (2d Cir. 2005) ("If a litigant has a history of filing 'vexatious, harassing or duplicative lawsuits,' courts may impose sanctions, including restrictions on future access to the judicial system." (citation omitted)); *In re Sassower*, 20 F.3d 42, 44 (2d Cir. 1994) ("With respect to civil litigation, courts have recognized that the normal opportunity to initiate lawsuits may be limited once a litigant has demonstrated a clear pattern of abusing the litigation process by filing vexatious and frivolous complaints.").

## CONCLUSION

The Complaints filed in the above-captioned 13 cases are dismissed. *See* 28 U.S.C. § 1915(e)(2)(B)(ii). Plaintiff is ORDERED TO SHOW CAUSE by written Affirmation, **within 14 days** of the entry of this Order, why he should not be barred from filing any further *in forma pauperis* actions in this Court without first obtaining permission from the Court to do so. Plaintiff is directed to file only one Affirmation in response to the Court's order to show cause and should reference the following case number on the face of the Affirmation: 21-CV-3869.

All further proceedings shall be stayed until Plaintiff's time to file his written Affirmation has expired.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith, and therefore IFP status is denied for purpose of an appeal. *Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

SO ORDERED.

2021 WL 3516421

**All Citations**

Not Reported in Fed. Supp., 2021 WL 3516421

---

**End of Document**                                            © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2024 WL 1641587
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Howard GRIFFITH, Plaintiff,

v.

NEW YORK STATE, Attorney General, Defendant.

5:23-CV-1266 (DNH/ML)
|
Signed March 20, 2024

**Attorneys and Law Firms**

HOWARD GRIFFITH, Plaintiff, Pro Se, 2903 James Street, #1R, Syracuse, New York 13206.

## ORDER and REPORT-RECOMMENDATION

MIROSLAV LOVRIC, United States Magistrate Judge

### I. INTRODUCTION

**\*1** The Clerk has sent this *pro se* complaint (Dkt. No. 1) together with an application to proceed *in forma pauperis* (Dkt. No. 2) filed by Howard Griffith ("Plaintiff") to the Court for review. For the reasons discussed below, I grant Plaintiff's *in forma pauperis* application (Dkt. No. 2) and recommend that Plaintiff's Complaint (Dkt. No. 1) be dismissed in its entirety without leave to amend.

### II. BACKGROUND

The Complaint is forty-four pages long and includes a series of allegations that are difficult to follow and appear to have little in common. (*See generally* Dkt. No. 1.)

More specifically, Plaintiff appears to allege that between October 2019 and July 2020 he had issues with various individuals on real property that he rented from non-party Jan Nastri in the City of Syracuse. (Dkt. No. 1 at 4-5.) Plaintiff alleges that he drafted a N.Y. C.P.L.R. Article 78 petition against Onondaga County and provided a copy of the draft petition to Jan Nastri. (*Id.* at 5-6.)

Plaintiff alleges that on September 14, 2020, he attempted to comply with his obligation to update his address with the sex offender registry but that the Syracuse Police Department would not include an apartment number with his address. (*Id.*

at 7.) Plaintiff alleges that he filed the Article 78 petition he previously drafted with the addition of three points. (*Id.*) Plaintiff alleges that on October 30, 2020, New York State Judge McClusky rejected Plaintiff's request for poor person status. (Dkt. No. 1 at 9.)

The Complaint refers to an action that Plaintiff previously commenced in this Court, *Griffith v. New York*, 5:20-CV-1312 (GLS/ML) ("*Griffith I*"), which was dismissed. (Dkt. No. 1 at 11.)

The Complaint alleges that on November 3, 2020, Plaintiff contacted then-Congressman Katko to lodge a complaint about his "false address demonstrated with his sex offender registry which provided the remedy to obtain mail-in ballots." (*Id.* at 12.) Plaintiff alleges that in response to his correspondence, then-Congressman Katko sued the Onondaga County Board of Elections. (*Id.*)

The Complaint alleges that on January 10, 2002, Plaintiff was convicted of Rape in the first degree pursuant to N.Y. Penal Law § 130.35(1). (Dkt. No. 1 at 13.) The Complaint alleges that as a result of that conviction, Plaintiff was deemed a Level III sex offender pursuant to N.Y. Correct. Law § 168. (*Id.*) Plaintiff alleges that he sought (1) to vacate his judgment of conviction, (2) modification of his sex offender registry obligations, and (3) habeas corpus relief. (*Id.* at 13-19.)

Plaintiff alleges that on March 9, 2021, he responded to a reward notification posted by the Federal Bureau of Investigation with information about individuals producing pipe bombs and explosive devices used on January 6, 2021, in Washington DC. (Dkt. No. 1 at 19.) The Complaint alleges that Plaintiff discovered evidence in the dumpster where he disposes of trash and referred the evidence to the Onondaga County District Attorney's office. (*Id.* at 19-20.)

The Complaint alleges that on June 8, 2021, Plaintiff was incarcerated for failure to register as a sex offender pursuant to N.Y. Correct. Law § 168-f(3). (Dkt. No. 1 at 22.) The Complaint alleges that Plaintiff was incarcerated "because the police needed a reason to place [Plaintiff] in jail for a psychiatric evaluation ... after he had recovered from a grand-mal seizure." (*Id.*)

**\*2** The Complaint alleges that Plaintiff sought a modification to his SORA level, which apparently was denied because, the Complaint alleges that had the modification been granted, he would have only been required to register once

2024 WL 1641587

per year. (Dkt. No. 1 at 23.) Plaintiff alleges that he was denied access to the law library while incarcerated at the Onondaga County Justice Center because he was not given the inmate handbook. (*Id.*) Plaintiff alleges that he was placed in segregated housing because he struck a deputy who refused to authorize him use of the law library. (*Id.*) Plaintiff alleges that he was unable to exhaust his administrative remedies with respect to the associated disciplinary hearing because he was transferred to the Central New York Psychiatric Center ("CNYPC"). (*Id.*)

The Complaint alleges that Plaintiff was released from custody on bail on October 18, 2021. (Dkt. No. 1 at 27.) The Complaint alleges that after Plaintiff was released, "he obtained a medicare voucher at his mailbox for the person identified on the flier that he filed with 'Howard Griffith v. Onondaga County, [ ]'. The medicare voucher was addressed to the fake address he attempted to demonstrate with his sex offender registry.... Plaintiff demonstrated how New York citizens had just voted against proposals that would ease restrictions on voting laws with regards to redistricting, mail-in ballots and same day voter registration." (*Id.*)

The Complaint alleges that on February 18, 2022, Plaintiff was convicted of failing to fulfill his duty to register as a sex offender pursuant to N.Y. Corr. Law § 168-f(3). (Dkt. No. 1 at 30.) The Complaint alleges that on March 7, 2022, Plaintiff was arrested and charged with harassment in the second degree for striking his roommate, Rebecca Sklaney. (*Id.* at 31.)

The Complaint does not appear to assert any causes of action, but states that it is "brought pursuant to 42 USC § 1983, to remedy the deprivation, under color of state law, of the rights guaranteed under the Fifth and Fourteenth Amendments of the United States Constitution." (Dkt. No. 1 at 2.) As relief, the Complaint seeks, *inter alia*, (1) reconsideration of *Griffith I*, (2) a declaration that mail-in voting ballots be eliminated from elections, and (3) an investigation "into whether any person or entity has engaged in ... fraudulent, illegal or deceptive conduct in the ownership, operation or management of the residential properties owned, operated and/or managed by Jan Nastri." (Dkt. No. 1 at 43-44.)

## III. PLAINTIFF'S APPLICATION TO PROCEED *IN FORMA PAUPERIS*

When a civil action is commenced in a federal district court, the statutory filing fee, currently set at $405, must ordinarily be paid. 28 U.S.C. § 1914(a). A court is authorized, however,

to permit a litigant to proceed *in forma pauperis* status if a party "is unable to pay" the standard fee for commencing an action. 28 U.S.C. § 1915(a)(1). [1] After reviewing Plaintiff's *in forma pauperis* application (Dkt. No. 2), the Court finds that Plaintiff meets this standard. Therefore, Plaintiff's application to proceed *in forma pauperis* is granted. [2]

[1]    The language of that section is ambiguous because it suggests an intent to limit availability of IFP status to prison inmates. *See* 28 U.S.C. § 1915(a)(1) (authorizing the commencement of an action without prepayment of fees "by a person who submits an affidavit that includes a statement of all assets such prisoner possesses"). The courts have construed that section, however, as making IFP status available to any litigant who can meet the governing financial criteria. *Hayes v. United States*, 71 Fed. Cl. 366, 367 (Fed. Cl. 2006); *Fridman v. City of N.Y.*, 195 F. Supp. 2d 534, 536 n.1 (S.D.N.Y. 2002).

[2]    Plaintiff is reminded that, although the application to proceed *in forma pauperis* has been granted, he will still be required to pay fees that he may incur in this action, including copying and/or witness fees.

## IV. LEGAL STANDARD FOR INITIAL REVIEW OF COMPLAINT

 **\*3**  "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that ... the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2).

In determining whether an action is frivolous, the court must consider whether the complaint lacks an arguable basis in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Dismissal of frivolous actions is appropriate to prevent abuses of court process as well as to discourage the waste of judicial resources. *Neitzke*, 490 U.S. at 327; *Harkins v. Eldridge*, 505 F.2d 802, 804 (8th Cir. 1974); *see Fitzgerald v. First East Seventh Street Tenants Corp.*, 221 F.3d 362, 364 (2d Cir. 2000) (a district court "may dismiss a frivolous complaint *sua sponte* even when the plaintiff has paid the required filing fee[.]"); *see also Pflaum v. Town of Stuyvesant, Columbia Cnty., N.Y.*, 11-CV-0335, 2016 WL 865296, at *1, n.2 (N.D.N.Y. Mar. 2, 2016) (Suddaby, C.J.) (finding that the Court had the power to address and dismiss additional

Case 1:25-cv-00848-AMN-TWD    Document 15    Filed 10/29/25    Page 48 of 77

Griffith v. New York State, Not Reported in Fed. Supp. (2024)

2024 WL 1641587

theories of the plaintiff's retaliation claim *sua sponte* because those theories were so lacking in arguable merit as to be frivolous).

In order to state a claim upon which relief can be granted, a complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The requirement that a plaintiff "show" that he or she is entitled to relief means that a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasis added) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 [2007]). "Determining whether a complaint states a plausible claim for relief ... requires the ... court to draw on its judicial experience and common sense.... [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not shown–that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal citation and punctuation omitted).

"In reviewing a complaint ... the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

Courts are "obligated to construe a pro se complaint liberally." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009); *see also Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam) (reading the plaintiff's *pro se* complaint "broadly, as we must" and holding that the complaint sufficiently raised a cognizable claim). "[E]xtreme caution should be exercised in ordering sua sponte dismissal of a pro se complaint before the adverse party has been served and [the] parties ... have had an opportunity to respond." *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983).

## V. ANALYSIS

**\*4** In addressing the sufficiency of a plaintiff's complaint, the court must construe his pleadings liberally. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008). Having reviewed Plaintiff's Complaint with this principle in mind, I recommend that all causes of action be dismissed.

Plaintiff brings this action pursuant to Section 1983, which establishes a cause of action for " 'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *German v. Fed. Home Loan Mortg. Corp.*, 885 F. Supp. 537, 573 (S.D.N.Y. 1995) (citing *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983)) (footnote omitted). "Section 1983 itself creates no substantive rights, [but] ... only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citation omitted). To establish liability under the statute, a plaintiff must plead that each government official defendant violated the Constitution through that official's own individual actions. *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020).

Plaintiff's Complaint is largely incomprehensible and must be dismissed for two reasons.

### A. Frivolous

First, Rule 8 of the Fed. R. Civ. P. requires a "short and plain statement" of a claim, showing that "the pleader is entitled to relief." *Whitfield v. Johnson*, 763 F. App'x 106, 107 (2d Cir. 2019) (quoting Fed. R. Civ. P. 8(a)). Each statement must be "simple, concise, and direct,' and must give 'fair notice of the claims asserted." *Whitfield*, 763 F. App'x at 107 (quoting *Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995)). A pleading must also contain "a demand for the relief sought[.]" *Id.* "A complaint may be dismissed under Rule 8 if it is 'so confused, ambiguous, or otherwise unintelligible that its true substance, if any, is well disguised.' " *Id.* Moreover, Rule 10 of the Fed. R. Civ. P. provides that "[a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances[.]" Fed. R. Civ. P. 10(b). Rule 10's purpose is to "provide an easy mode of identification for referring to a particular paragraph in a prior pleading[.]" *Clervrain v. Robbins*, 22-CV-1248, 2022 WL 17517312, at *2 (N.D.N.Y. Dec. 8, 2022) (Stewart, M.J.) (citation omitted), *report and recommendation adopted*, 2023 WL 3170384 (N.D.N.Y. May 1, 2023) (D'Agostino, J.). A complaint that does not comply with these Rules "presents far too heavy a burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of [the plaintiff's] claims," and may properly be dismissed by the court. *Gonzales v. Wing*, 167 F.R.D. 352, 355 (N.D.N.Y. 1996) (McAvoy, C.J.).

Case 1:25-cv-00848-AMN-TWD    Document 15    Filed 10/29/25    Page 49 of 77

Griffith v. New York State, Not Reported in Fed. Supp. (2024)
2024 WL 1641587

As it currently stands, Plaintiff's Complaint wholly fails to provide fair notice of the claims he attempts to assert. Although the Complaint begins using numbered paragraphs on pages 1 and 2, the remaining forty-two pages of the Complaint are unnumbered paragraphs. (*See generally* Dkt. No. 1.) Moreover, the Complaint is extremely difficult to follow and, as mentioned above, alleges a series of grievances that appear to have little to do with one another. As best as the undersigned can decipher, Plaintiff appears to believe that his arrest—and ultimate conviction—for failing to comply with his duty to register as a sex offender is somehow related to voting regulations in New York State. (*Id.*) Given its lack of clarity, the undersigned recommends dismissal of the Complaint because it is not acceptable under Rules 8 and 10 of the Fed. R. Civ. P. and because Plaintiff's Section 1983 claim or claims against Defendant are entirely unclear.

### B. Immunity

**\*5** Second, and in the alternative, I recommend that Plaintiff's Complaint be dismissed because it seeks relief from New York State, which is immune from suit.

The Eleventh Amendment bars individuals from suing states in federal court, unless Congress abrogates states' immunity or a state consents to suit. *See* U.S. Const. Amend. XI; *Gollomp v. Spitzer*, 568 F.3d 355, 365-66 (2d Cir. 2009). Eleventh Amendment immunity in this case extends to arms of New York State, including the New York State Attorney General. *See Smith v. United States*, 554 F. App'x 30, 31 (2d Cir. 2013) (affirming dismissal of claims against the New York State Attorney General on sovereign immunity grounds). Accordingly, I recommend that Plaintiff's claims asserted against the New York State Attorney General be dismissed pursuant to Section 1915(e)(2)(B)(i).

### VI. OPPORTUNITY TO AMEND

Generally, a court should not dismiss claims contained in a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."). An opportunity to amend is not required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a

plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice."). Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, ... it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993); *accord, Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at \*1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.). [3]

[3]  *See also Carris v. First Student, Inc.*, 132 F. Supp. 3d 321, 340-41 n.1 (N.D.N.Y. 2015) (Suddaby, C.J.) (explaining that the standard set forth in *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 796 (2d Cir. 1999)—that the Court should grant leave to amend "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would be successful in stating a claim"—is likely not an accurate recitation of the governing law after *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)), *rev'd on other grounds*, 682 F. App'x 30.

Here, better pleading could not cure the Court's lack of subject matter jurisdiction based on the immunities described above. [4] *See Roark v. New York*, 23-CV-1237, 2023 WL 8827185, at \*6 (N.D.N.Y. Dec. 21, 2023) (Lovric, M.J.) (recommending dismissal without leave to amend the plaintiff's claims against the People of the State of New York and the Watertown District Attorney's Office because those governmental entities were immune from suit), *report and recommendation adopted*, 2024 WL 125512 (N.D.N.Y. Jan. 11, 2024) (Hurd, J.).

[4]  The undersigned notes that a dismissal based on the doctrine of sovereign immunity, is consequently a dismissal for lack of subject matter jurisdiction. *Crumble v. United States*, 23-CV-4427, 2023 WL 5102907, at \*7 (S.D.N.Y. Aug. 7, 2023); *Nguyen v. Kijakazi*, 20-CV-0607, 2022 WL 542265, at \*8 (E.D.N.Y. Feb. 23, 2022). Moreover, the Second Circuit has directed that dismissals for lack of subject matter jurisdiction are to be made without prejudice. *Abadi v. City of New York*, 22-CV-1560, 2023 WL 3295949, at \*3 n.3 (2d Cir. May 8, 2023) (summary order) (citing *Katz v. Donna Karan Co.*, 872 F.3d 114, 116 (2d Cir. 2017) ("[A] complaint must be dismissed without prejudice where the dismissal is due to the court's lack of subject matter jurisdiction.")) ("Because the Court

Case 1:25-cv-00848-AMN-TWD    Document 15    Filed 10/29/25    Page 50 of 77
**Griffith v. New York State, Not Reported in Fed. Supp. (2024)**
2024 WL 1641587

lacks subject matter jurisdiction ... the amended complaint should be dismissed *without* prejudice.") (emphasis in original).

**\*6  ACCORDINGLY**, it is

**ORDERED** that Plaintiff's IFP application (Dkt. No. 2) is **GRANTED**; and it is further respectfully

**RECOMMENDED** that the Court **DISMISS WITHOUT PREJUDICE BUT WITHOUT LEAVE TO REPLEAD** Plaintiff's Complaint (Dkt. No. 1) for frivolousness and because Defendant is immune from suit, pursuant to 28 U.S.C. § 1915(e)(2)(B); and it is further

**ORDERED** that the Clerk of the Court shall file a copy of this Order and Report-Recommendation on Plaintiff, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

**NOTICE:** Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. [5]  Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. 28 U.S.C. § 636(b) (1) (Supp. 2013); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)).

[5]     If you are proceeding *pro se* and served with this report, recommendation, and order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date that the report, recommendation, and order was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

**All Citations**

Not Reported in Fed. Supp., 2024 WL 1641587

---

**End of Document**                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Case 1:25-cv-00848-AMN-TWD    Document 15    Filed 10/29/25    Page 51 of 77

2024 WL 1639856

2024 WL 1639856
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Howard GRIFFITH, Plaintiff,
v.
NEW YORK STATE ATTORNEY
GENERAL, Defendant.

5:23-CV-1266
|
Signed April 16, 2024

**Attorneys and Law Firms**

HOWARD GRIFFITH, Plaintiff, Pro Se, 2903 James Street, #1R, Syracuse, NY 13206.

## ORDER ON REPORT & RECOMMENDATION

DAVID N. HURD, United States District Judge

**\*1** On October 10, 2023, *pro se* plaintiff Howard Griffith ("plaintiff") filed this civil action alleging that defendant somehow violated his rights in connection with a real property rental dispute with non-parties. Dkt. No. 1. Along with his complaint, plaintiff moved for leave to proceed *in forma pauperis* ("IFP Application"). Dkt. No. 2.

On March 20, 2024, U.S. Magistrate Judge Miroslav Lovric granted plaintiff's IFP Application, conducted an initial review of the pleading, and advised by Report & Recommendation ("R&R") that plaintiff's complaint be dismissed without prejudice but without leave to amend. Dkt. No. 7. As Judge Lovric explained, plaintiff's pleading was frivolous. *Id.*

Plaintiff has lodged objections. Dkt. No. 8. Upon *de novo* review, the R&R is accepted and will be adopted. 28 U.S.C. § 636(b)(1)(C).

Therefore, it is

ORDERED that

1. The Report & Recommendation (Dkt. No. 7) is ACCEPTED;

2. Plaintiff's complaint is DISMISSED without prejudice but without leave to amend.

IT IS SO ORDERED.

**All Citations**

Not Reported in Fed. Supp., 2024 WL 1639856

---

2024 WL 4849844
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Michael Brandon STORY, Plaintiff,

v.

CENTRAL INTELLIGENCE AGENCY, Defendant.

1:24-CV-00631 (MAD/CFH)
|
Signed November 21, 2024

**Attorneys and Law Firms**

MICHAEL BRANDON STORY, 56 Shelterwood Rd, Apt. A,
East Greenbush, New York 12061, Plaintiff Pro Se.

### ORDER

Mae A. D'Agostino, United States District Judge:

**\*1** On May 7, 2024, *pro se* Plaintiff Michael Brandon
Story ("Plaintiff") filed a complaint alleging wrongdoing
by Defendant Central Intelligence Agency ("CIA" or
"Defendant"), *see* Dkt. No. 1, and a motion for leave to
proceed *in forma pauperis* ("IFP"), Dkt. No. 2. [1] Specifically,
Plaintiff states that Defendant "[e]ncroached from civilians
reading data from global satellite system." Dkt. No. 1 at 4.
Plaintiff indicates that the basis for this Court's jurisdiction is
a Federal Question and, in reference to "the specific federal
statutes, federal treaties, and/or provisions of the United
States Constitution that are at issue in this case," Plaintiff
states, "[e]ntrapment under privacy law article 3." *Id.* at 3.

[1]
The following cases, filed by Plaintiff, have been
deemed related by the Court: 1:24-CV-00623,
1:24-CV-00625, 1:24-CV-00626, 1:24-CV-00627,
1:24-CV-00632, and 1:24-CV-01346. *See* Dkt. No.
5; *Story v. United States*, 1:24-CV-01346, at Dkt.
No. 5.

On October 10, 2024, Magistrate Judge Hummel issued a
Report-Recommendation & Order granting Plaintiff leave to
proceed IFP and recommending that Plaintiff's complaint be
dismissed without prejudice and without leave to amend,
pursuant to 28 U.S.C. § 1915(e)(2)(B). *See* Dkt. No. 6.

Plaintiff has not filed any objections to the Report-
Recommendation & Order. When a party declines to file
an objection, the Court reviews a recommendation for clear
error. *See O'Diah v. Mawhir*, No. 9:08-CV-322, 2011 WL
933846, \*1 (N.D.N.Y. Mar. 16, 2011) (citations and footnote
omitted); *see also McAllan v. Von Essen*, 517 F. Supp. 2d
672, 679 (S.D.N.Y. 2007). After the appropriate review, "the
court may accept, reject or modify, in whole or in part, the
findings or recommendations made by the magistrate judge."
28 U.S.C. § 636(b)(1). Because Plaintiff has not filed an
objection, the Court will review the recommendation for clear
error.

"[I]n a *pro se* case, the court must view the submissions
by a more lenient standard than that accorded to 'formal
pleadings drafted by lawyers.' " *Govan v. Campbell*, 289
F. Supp. 2d 289, 295 (N.D.N.Y. 2007) (quoting *Haines v.
Kerner*, 404 U.S. 519, 520 (1972)) (other citations omitted).
The Second Circuit has stated that the court is obligated to
"make reasonable allowances to protect *pro se* litigants" from
inadvertently forfeiting legal rights merely "because of their
lack of legal training." *Id.* (quoting *Traguth v. Zuck*, 710 F. 2d
90, 95 (2d Cir. 1983)).

The Court finds no clear error in Magistrate Judge Hummel's
Report-Recommendation & Order. Dismissal is appropriate
because, even given special solicitude, Plaintiff's claims are
frivolous and the complaint does not comply with Rules 8
and 10 of the Federal Rules of Civil Procedure. Magistrate
Judge Hummel correctly determined that Plaintiff's complaint
fails to meet the requirements of Rules 8 and 10 because "[i]t
does not set forth claims in numbered paragraphs and, more
significantly, does not set forth claims with sufficient detail to
give defendant notice of the claim against it." *See* Dkt. No. 6
at 6 (citations omitted). Indeed, "[t]he complaint provides no
detail, context, or time frame for the alleged surveillance." *Id.*
Neither has Plaintiff provided a " 'short and plaint statement
of the grounds for the court's jurisdiction.' " *Id.* (quotations
omitted).

**\*2** The Court finds no clear error in the recommendation that
Plaintiffs claims be dismissed because they are "frivolous or
malicious." *Id.* at 11. Plaintiff's allegations of encroachment
due to the " 'reading [of] data' from a 'global satellite system'
by the CIA or the Federal Bureau of Investigation [(FBI)]
or 'civilians' 'rise[s] to the level of irrational or the wholly
incredible.' " *Id.* at 11 (quoting *Quarles v. Murphy*, No. 17-
CV-76, 2017 WL 5558644 (E.D.N.Y. Mar. 6, 2017) (holding
that the plaintiff's claims of FBI surveillance, including

allegations of audio and video surveillance, "rise to the level of the irrational or the wholly incredible")).

Magistrate Judge Hummel is also correct that Plaintiff does not articulate how Defendant was personally involved in any alleged violation of law, how the alleged conduct was committed, how he was harmed, or how such alleged conduct relates to any claim for legal relief. *See* Dkt. No. 6 at 6-7. Even construing the complaint to state a claim for unreasonable searches pursuant to the Fourth Amendment—despite lack of citation or reference thereto—such a claim would fail because Plaintiff does not contend that he is being surveilled in his home, and "[t]here is no reasonable expectation of privacy in public areas and '[a] person travelling [sic] in an automobile on public thoroughfares has no reasonable expectation of privacy in his movements from one place to another.' " *Id.* at 7 (quoting *United States v. Knotts*, 460 U.S. 276, 281 (1983)). Additionally, the Court finds no clear error on Magistrate Judge Hummel's conclusion that, to the extent Plaintiff alleges that the CIA "entrapped" him, entrapment is an affirmative defense under New York State penal law and " 'cannot be a basis for a section 1983 claim.' " *Id.* at 7-8 (quoting *Almonte v. Florio*, No. 02 CIV. 6722, 2004 WL 60306, at *3 (S.D.N.Y. Jan. 13, 2004)). And, to the extent Plaintiff alleges that civilian conduct violated his constitutional rights, such claims cannot amount to a violation of Plaintiff's constitutional rights because private individuals are not state actors. *See id.* at 8. Neither does the Court find clear error in the conclusion that Plaintiff could not state a claim under the United Nations Declaration of Human Rights or the General Data Protection Regulations, for the reasons articulated by Magistrate Judge Hummel. *See id.* at 9.

Moreover, even if the Court could ascertain the basis of Plaintiff's claims, the Court finds no clear error in Magistrate Judge Hummel's recommendation that the complaint be dismissed because claims against the CIA, which is an agency of the United States government, are subject to sovereign immunity absent a waiver. *See id.* at 9-11. Plaintiff has the burden of demonstrating that sovereign immunity has been waived, *see Cox v. New York State*, No. 1:23-CV-0060, 2023 WL 2770368, *5 (N.D.N.Y. Apr. 4, 2023), *report and recommendation adopted*, No. 1:23-CV-0060, 2023 WL 6862505 (N.D.N.Y. Oct. 18, 2023), and the complaint is devoid of any allegations indicating such waiver, *see* Dkt. No. 1.

Finally, the Court finds no clear error in Magistrate Judge Hummel's conclusion that, although leave to amend would

normally be appropriate, leave to amend should not be granted here because amendment would be futile. Dkt. No. 6 at 11-14. Indeed, because the problems that plague the complaint are "substantive rather than the result of an inadequately or inartfully pleaded complaint, an opportunity to re-plead would be futile and should be denied." *Id.* at 12 (quoting *Edwards v. Penix*, 388 F. Supp. 3d 135, 144-45 (N.D.N.Y. 2019)) (internal quotation marks omitted). "When the basis for dismissal is a defendant's entitlement to immunity, for example, the pleading defects are 'substantive rather than formal and [ ] leave to amend would be futile.' " *Mahmood v. United States Gov't*, No. 1:20-CV-207, 2020 WL 3965125, *2 (N.D.N.Y. Mar. 17, 2020), *report and recommendation adopted sub nom. Mahmood v. United States*, No. 1:20-CV-207, 2020 WL 1808206 (N.D.N.Y. Apr. 9, 2020) (quoting *Jackson v. Pfau*, 523 Fed. Appx. 736, 737 (2d Cir. 2013) (summary order)). Accordingly, finding no clear error, the Court adopts the recommendation that this matter be dismissed without prejudice [2] and without opportunity to amend.

[2]     "A dismissal for lack of subject matter jurisdiction must be without prejudice, because 'without jurisdiction, the district court lacks the power to adjudicate the merits of the case.' " *McKie v. Kornegay*, No. 21-1943, 2022 WL 4241355, *2 (2d Cir. Sept. 15, 2022) (summary order) (quoting *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 54-55 (2d Cir. 2016)).

**\*3**  After carefully reviewing the Report-Recommendation & Order, the entire record in this matter, and the applicable law, the Court hereby

**ORDERS** that Magistrate Judge Hummel's Report-Recommendation & Order (Dkt. No. 6) is **ADOPTED** in its entirety for the reasons set forth herein; and the Court further

**ORDERS** that Plaintiff's complaint (Dkt. No. 1) is **DISMISSED WITHOUT PREJUDICE and WITHOUT LEAVE TO AMEND**; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Order on the parties in accordance with the Local Rules; and the Court further

**ORDERS** that the Clerk of Court shall enter judgment in Defendant's favor and close this case.

2024 WL 4849844

**IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2024 WL 4849844

---

**End of Document**                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2025 WL 2972645

2025 WL 2972645
Only the Westlaw citation is currently available.
United States District Court, E.D. New York.

VLADIMIR JEANTY, Plaintiff,

v.

NASSAU COUNTY, et al., Defendants.

24-CV-5062
|
Filed 10/22/2025

Merchant, J.

**REPORT AND RECOMMENDATION**

JOSEPH A. MARUTOLLO United States Magistrate Judge

**\*1** *Pro se* plaintiff Vladimir Jeanty brings this civil rights action pursuant to 42 U.S.C. §§ 1983 and 1988 against Defendants Nassau County; Nassau County Police Department ("NCPD") Sergeant Michael S. Maguire; NCPD Police Officer Raymond Pescatore; NCPD Officers John/ Jane Doe One through Five, in their individual and official capacities; Northwell Health Systems Inc. ("Northwell Health"); Nurse Practitioner Karen Capusan, [1] individually and in her official capacity for Northwell Health; Office Manager Karen Doe, individually and in her official capacity for Northwell Health; Security Guard John Doe, individually and in his official capacity for Northwell Health; [2] and Una Sanders (collectively, "Defendants"). *See generally* Dkt. No. 25.

[1]     The docket lists "Karen Capuse" as a defendant, which appears to be a typographical error. The Clerk of the Court is respectfully directed to update the docket to correctly spell Capusan's name. Additionally, counsel for Northwell Health and Capusan appears to have filed two identical memoranda of law in support of the instant motion to dismiss. *See* Dkt. Nos. 28, 29. The Clerk of the Court is respectfully directed to remove Dkt. No. 28, which appears to have been mistakenly filed on behalf of, *inter alia*, Nassau County (a defendant that has not moved to dismiss Plaintiff's amended complaint).

Currently pending before this Court, on a referral from the Honorable Orelia E. Merchant, United States District Judge, is Northwell Health and Capusan's (together, "the Hospital Defendants") motion to dismiss Plaintiff's amended complaint (the "Motion"). *See* Dkt. No. 26; June 26, 2025 Dkt. Order. For the reasons set forth below, the undersigned respectfully recommends that the Hospital Defendants' motion to dismiss be granted in part and denied in part.

**I. Background**

**A. Relevant Factual Allegations**
The following facts are taken from Plaintiff's amended complaint. *See* Dkt. No. 25. All facts alleged by Plaintiff are assumed to be true for purposes of deciding the motion to dismiss and are construed in the light most favorable to Plaintiff as the non-moving party. *Gomez v. Nat'l Fin. Network, Inc.*, No. 20-CV-1968 (GRB) (AKT), 2021 WL 8084337 (E.D.N.Y. Aug. 2, 2021) (citing *Tanvir v. Tanzin*, 894 F.3d 449, 458 (2d Cir. 2018)).

According to the amended complaint, Plaintiff was a resident of New York State at all relevant times in this action. *See* Dkt. No. 25 ¶ 2. Plaintiff asserts that he and Defendant Una Sanders have "a child in common, NAJ," who was seven years old at the time of the allegations referenced in the amended complaint. *Id.* ¶¶ 8, 17.

Plaintiff alleges that on July 26, 2023, he arrived at the Pediatric Pulmonary Clinic at Northwell Health Labs in New Hyde Park, New York, between 8:30 a.m. and 9:00 a.m. to participate in NAJ's scheduled medical appointment. Dkt. No. 25 ¶¶ 2, 8, 16-17. According to Plaintiff, Sanders arrived at the clinic with NAJ and another of her children, who is unrelated to Plaintiff, at approximately 10:30 a.m. *Id.* ¶¶ 18-19.

**\*2** Plaintiff contends that, at that time, "[t]here was an active full temporary order of protection requiring [ ] Sanders to 'stay away from' and '[ ]not communicate with' [him]." *Id.* ¶ 20. Plaintiff further states that this order (hereinafter, "Order") expired on October 16, 2023. *Id.* Plaintiff attaches the Order to his amended complaint. *Id.* at 22 [3] (directing Sanders to "[stay away from: [ ] [Plaintiff] [ ] SUBJECT TO INCIDENTAL CONTACT BETWEEN THE PARTIES AT PICK UP AND DROP OFF OF THE SUBJECT CHILD[,]" as well as Plaintiff's home, business, place of employment, among other restrictions regarding communication and unlawful conduct directed at

WESTLAW   © 2025 Thomson Reuters. No claim to original U.S. Government Works.     1

Plaintiff) (capitalization in the original). [4] The Order further states that Plaintiff and Sanders are "PERMITTED TO SPEAK IF THERE IS AN EMERGENCY INVOLVING THE SUBJECT CHILD.... DEFIN[ ]ED AS A MEDICAL ISSUE NECESSITATING THE INTERVENTION OF A HEALTH CARE PROFESSIONAL ON AN EXPEDITED BASIS." *Id.* (capitalization in the original).

[3] Page citations are to ECF-stamped pages, unless otherwise stated.

[4] Plaintiff also attaches to his amended complaint another "Temporary Order of Protection[,]" issued on June 28, 2023, but in favor of Sanders, directing *Plaintiff* to refrain unlawful conduct directed at Sanders, including but not limited to "assault, stalking, harassment, menacing, reckless endangerment[.]" *Id.* at 24.

Plaintiff contends that Sanders falsely reported to Karen Doe, an alleged office manager for Northwell Health, that the Order required Plaintiff "to 'stay away from' Defendant Sanders." *Id.* ¶¶ 21-22. Plaintiff alleges that Sanders provided the Order to Karen Doe, who he then alleges misinterpreted the Order and informed Plaintiff that he "needed to leave" because of it. *Id.* ¶¶ 21, 23.

Plaintiff allegedly informed Karen Doe that "she needed to re-read the order of protection for herself." *Id.* ¶ 24. According to Plaintiff, Karen Doe then did so, "and realized that it required [ ] Sanders to 'stay away from' and '[ ] not communicate' with [Plaintiff]." *Id.* ¶ 25.

Plaintiff alleges, however, that Karen Doe returned to Sanders, and together, "they came to an agreement to call the security and the police to enforce the order of protection against [Plaintiff] and have [Plaintiff] leave [and] not participate in NAJ's examination." *Id.* ¶ 26.

Karen Doe allegedly informed Plaintiff that Northwell Health Security had been called and were coming to "provide assistance." *Id.* ¶ 27. Plaintiff claims that within minutes, Defendant Security Guard John Doe and two NCPD police officers entered the medical office. *Id.* ¶ 28.

Plaintiff alleges that Security Guard John Doe told Sergeant Maguire and Officer Pescatore, as well as John/Jane Doe Officers One through Five that Plaintiff "was violating an order of protection was not allowed in the office." *Id.* ¶ 29. One of the John Doe officers then asked to speak to Plaintiff.

*Id.* ¶ 30. Plaintiff allegedly told the John Doe officer that he did not want to speak and attempted to leave the area. *Id.* ¶ 31. Plaintiff claims, however, that officers "John Doe One and Two insisted and surrounded [Plaintiff,] impeding his path." *Id.* ¶ 32. Officer John Doe Two allegedly "informed [Plaintiff] that he needed to frisk search [*sic*] [Plaintiff]." *Id.* ¶ 33.

Plaintiff claims that he "objected and refused" the search but Officer "John Doe Two already had gloves on and pat frisked [Plaintiff] despite [his] protestation." *Id.* ¶¶ 34-35.

Plaintiff alleges that Officer John Doe One then searched Plaintiff's bag, without justification, after which Plaintiff sat down. *Id.* ¶¶ 36-38.

Plaintiff claims that he informed "[Sergeant] Maguire, [Officer] Pescatore and [ ] PO[ ]s John/Jane Doe One through Five that [Plaintiff] did not call the police"; that Plaintiff was at the medical office before Sanders; that Plaintiff was there "strictly to participate in NAJ's medical appointment"; and that Plaintiff had committed no crimes or disturbances. *Id.* ¶¶ 39-43.

**\*3** Plaintiff alleges, then, that "[Sergeant] Maguire, [Officer] Pescatore and [ ] PO[ ]s John/Jane Doe One through Five demanded [his] ID." *Id.* ¶ 44. Plaintiff claims that he refused "numerous times" to provide his ID, and stated that he wanted to leave the premises. *Id.* ¶ 45. Sergeant Maguire, Officer Pescatore, and Officers John/Jane Does One through Five allegedly "insisted" that Plaintiff provide his ID. *Id.* ¶ 46. Plaintiff complied, but states that he did so to prevent the Defendants from "forcibly tak[ing] it." *Id.* ¶ 47. Thereafter, Plaintiff alleges Officers John Doe One and Four were "standing guard" in front of and beside him. *Id.* ¶ 48.

Plaintiff claims that he was then denied the ability to go into the examination room with NAJ "for approximately 2 hours." *Id.* ¶ 49. Subsequently, Plaintiff alleges that Sergeant Maguire "came back into the office," after which he and Officer Pescatore told Plaintiff that he could not go into the exam room with NAJ "because of Sanders's order of protection" and that he "was not needed for NAJ's doctor's appointment." *Id.* ¶¶ 50-52. Segeant Maguire and Officer Pescatore then allegedly informed Plaintiff that if he "went into the examination room[,] he would be arrested for harassing [ ] Sanders." *Id.* ¶ 53.

Plaintiff then alleges that Sergeant Maguire, Officer Pescatore, and Officers John/Jane Doe One through Five

all read the Order and "verified" that it was in Plaintiff's favor against Sanders; were aware that Sanders had violated the same; and that Sanders had also "violated the order of protection by communicating with [Plaintiff] on July 25, 2023 via email and text." *Id.* ¶¶ 54-56.

Plaintiff claims that Sergeant Maguire, Karen Doe, Officer Jane Doe, Capusan, and Sanders "came to [an] agreement" that Capusan would examine NAJ while Officers Pescatore and Officers John/Jane Doe One through Four would "detain [Plaintiff] in the waiting area so that [h]e could not participate in NAJ's examination." *Id.* ¶¶ 57-58. Plaintiff alleges, however, that he had informed Capusan and Karen Doe, prior to the arrival of the Police, "that [h]e was there for NAJ's appointment and that NAJ should not be examined without [him] present." *Id.* ¶ 59.

Plaintiff alleges that, outside of his presence, Capusan performed an examination and multiple tests on NAJ, including a pulmonary function test, after which Plaintiff was permitted to see NAJ. *Id.* ¶¶ 60-61. Plaintiff states that he was then "allowed to go into the examination room with NAJ and [ ] Capusan," whereupon "Capusan pretended that [s]he had not already examined NAJ and subjected NAJ to another examination with [Plaintiff] present," besides the pulmonary function test. *Id.* ¶¶ 62-63. Plaintiff claims that after NAJ's "second unnecessary exam," he was given his identification back and permitted to leave the medical office. *Id.* ¶ 64.

Plaintiff claims that all the Defendants acted "in concert" with one another; that he was "arrested for no reason"; "detained against his will for approximately 2 hours"; "excluded from NAJ's examination and test for no reason"; and "pat frisked against his will and for no reason." *Id.* ¶¶ 65-69. Plaintiff notes that he was "not handcuffed and not charged with any crimes." *Id.* ¶ 73.

### B. Relevant Procedural History

Plaintiff filed his complaint on July 22, 2024. *See* Dkt. No. 1.

On August 7, 2024, the Hospital Defendants requested a pre-motion conference for their anticipated motion to dismiss. *See* Dkt. No. 13. On August 8, 2024, the Court denied the request for a pre-motion conference and instead set a briefing schedule. *See* Text Order dated August 8, 2024.

On September 5, 2024, the Hospital Defendants filed a joint letter requesting clarity from the Court regarding whether, in light of the Hospital Defendants' forthcoming motion to dismiss, the Court would stay discovery. *See* Dkt. No. 19. The Court then stayed all discovery, pending adjudication of the Hospital Defendants' motion. *See* Text Order dated September 5, 2024.

**\*4** On October 7, 2024, Plaintiff filed a motion requesting a two-week extension of time to serve his opposition to the Hospital Defendants' motion to dismiss, to which the Hospital Defendants consented, and the Court granted. *See* Dkt. No. 20; Text Order dated October 7, 2024.

On October 24, 2024, the Hospital Defendants filed a letter noting that Plaintiff did not intend to file an opposition to the Hospital Defendants' motion. *See* Dkt. No. 21. Indeed, in a letter attached therewith, Plaintiff stated that he was "not filing a written a written response to Defendants Capusan and Northwell Health's Motion to Dismiss." *Id.* at 3. Plaintiff added that he was "not consenting to [the Hospital Defendants'] motion"; instead, Plaintiff stated that his position is that "the operative Complaint plausibly alleges violations of [his] rights under Federal and State laws." *Id.*

On October 24, 2024, the Hospital Defendants filed their motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). Dkt. No. 22.

That motion was referred to the undersigned on October 25, 2024. *See* October 25, 2024 Referral Order.

The Court subsequently determined that Plaintiff's original complaint lacked its fifth page, which possibly resulted in omission of factual allegations relevant to his claims, and ordered Plaintiff to file an amended complaint. *See* Text Order dated June 19, 2025. The following day, Plaintiff filed a motion to amend his complaint, which the Court granted. *See* Dkt. No. 23; Text Order dated June 20, 2025.

Plaintiff's amended complaint, filed on June 23, 2025, asserts five causes of action. *See* Dkt. No. 25 ¶¶ 77-109. Liberally construed, Plaintiff first claims false arrest and prolonged detention in violation of state law and the Fourth and Fourteenth Amendments, against Defendants Sergeant Maguire, Officer Pescatore, Officers John Does One through Four, Officer Jane Doe, Karen Doe, Security Guard John Doe, Capusan, and Sanders. *Id.* ¶¶ 77-85. Second, Plaintiff asserts a claim for unlawful search and seizure under the Fourth and Fourteenth Amendments law against Officers John Doe One and Two. *Id.* ¶¶ 86-91. Third, Plaintiff asserts claims of assault and battery, trespass, violation of his privacy

rights, and violation of rights otherwise arising under the New York State Constitution, against all Defendants. *Id.* ¶¶ 92-94. Fourth, Plaintiff alleges claims for interference with familial rights, interference with intimate association, and intentional interference with custodial and parental rights against Defendants Sergeant Maguire, Officers Pescatore, John Does One through Four, and Jane Doe, Karen Doe, and Capusan. *Id.* ¶¶ 95-102. Fifth, Plaintiff asserts a claim for *respondeat superior* liability against the County of Nassau and Northwell Health under New York common law. *Id.* ¶¶ 103-109. Plaintiff seeks compensatory and punitive damages, as well as costs. *Id.* at 16-17.

The Hospital Defendants renewed their motion to dismiss on June 24, 2025. *See* Dkt. No. 26; *see also* Dkt. No. 29 at 8 (noting that "[t]here are no new factual allegations," [ ] "the arguments as initially argued remain valid."). The Hospital Defendants move to dismiss the amended complaint on the grounds that (1) a Section 1983 claim cannot be brought against a private health institution or a physician's assistant, as they are not acting under color of law; (2) Plaintiff fails to state a claim against the Hospital Defendants; and (3) Plaintiff's claimed damages are not recoverable from the Hospital Defendants. *See* Dkt. No. 29.[5]

[5]    The Hospital Defendants did not file a Local Civil Rule 12.1 statement. No such statement is needed here, as the Hospital Defendants did not refer "in support of the motion to matters outside the pleadings as described in Fed. R. Civ. P. 12(b) or 12(c)." Local Civil Rule 12.1.

 **\*5**  On June 26, 2025, Judge Merchant referred the June 24, 2025 motion to dismiss to the undersigned. *See* June 26, 2025 Referral Order.

On October 12, 2025, the Court ordered Plaintiff to confirm, in writing, whether he re-asserts his letter dated October 23, 2024, *see* Dkt. No. 21 at 3, as the only response to the Hospital Defendants' motion. *See* Text Order dated October 12, 2025.

On October 16, 2025, Plaintiff "reasserted [his] October 23, 2025 letter as [his] response to Defendants Capusan and Northwell Health's Motion to Dismiss," reiterating that he is "not consenting" to the Motion, and believes that "the operative Complaint plausibly alleges violations of [his] rights under Federal and State laws." *See* Dkt. No. 36.

## II. **Standard of Review**

"To survive dismissal for failure to state a claim pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter ... to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). While "detailed factual allegations" are not required, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' " *Id.* (quoting *Twombly*, 550 U.S. at 555). Plaintiff's factual allegations must also be sufficient to give the defendant "fair notice of what the ... claim is and the grounds upon which it rests," *Twombly*, 550 U.S. at 555 (internal quotations and citations omitted), and must show that the court has subject matter jurisdiction. *See Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999); Fed. R. Civ. P. 12(h)(3).

"[T]he court's task is to assess the legal feasibility of the complaint; it is not to assess the weight of the evidence that might be offered on either side." *Lynch v. City of New York*, 952 F.3d 67, 75 (2d Cir. 2020). Determining whether a complaint states a claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. The Court must accept the well-pleaded factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff but need not "credit conclusory allegations or legal conclusions couched as factual allegations." *Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir. 2013).

"A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation and internal quotations omitted); *see, e.g. Coffey v. United States*, 939 F. Supp. 185, 189-90 (E.D.N.Y. 1996) ("the Court is mindful that the plaintiff is proceeding *pro se* and that the complaint must be 'liberally construed' in favor of the plaintiff" ); *Maynard v. Comm'r*, No. 15-CV-586 (CBA) (LB), 2015 WL 4069356, at \*1 (E.D.N.Y. July 1, 2015) ("pleadings submitted *pro se* ... are held to a less stringent standard and must be liberally construed."). "District courts must interpret a *pro se* complaint to raise

the strongest claims that it suggests." *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011) (citation modified); *see also Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (articulating same). Moreover, at the pleadings stage of the proceeding, the Court must assume the truth of "all well-pleaded, nonconclusory factual allegations" in complaint. *Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 123 (2d Cir. 2010) (citation omitted), *aff'd* 569 U.S. 108 (2013). While the Court must "draw the most favorable inferences that [a plaintiff's] complaint supports, [it] cannot invent factual allegations that [a plaintiff] has not pled." *Chavis*, 618 F.3d at 170.

### III. Discussion

#### A. Plaintiff's Opposition to the Hospital Defendants' Motion

**\*6** As noted above, Plaintiff asserts that he is "not filing a written response to Defendants Capusan and Northwell Health's Motion to Dismiss"; rather, he is simply "not consenting to the [m]otion" and his position is "that the operative Complaint plausibly alleges violations of [his] rights under Federal and State laws." Dkt. Nos. 21 at 3; 36 at 1. The Court later offered Plaintiff another opportunity to provide any response to the Hospital Defendant's motion, but he declined. *See* Text Order dated October 12, 2025; Dkt. No. 36.

A court "may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed." *Lipton v. County of Orange*, 315 F. Supp. 2d 434, 446 (S.D.N.Y. 2004); *see also Robinson v. Fischer*, No. 09-CV-8882, 2010 WL 5376204, at *10 (S.D.N.Y. Dec. 29, 2010). A plaintiff's "*pro se* status does not shield him from such a result." *Thomas v. City of New York*, No. 24-CV-2534 (VEC) (HJR), 2025 WL 1603429, at *8 (S.D.N.Y. June 6, 2025), *report and recommendation adopted*, 2025 WL 2434641 (S.D.N.Y. Aug. 22, 2025) (citing *McNair v. Ponte*, No. 16-CV-1722 (LAP), 2019 WL 1428349, at *6, *21 (S.D.N.Y. Mar. 29, 2019) ("This Court has deemed claims abandoned even in cases where the plaintiff was proceeding *pro se*.")).

Here, by failing to address any of the Hospital Defendants' arguments in his opposition Plaintiff is largely relying only on a conclusory reference to the plausibility of his amended complaint. *See Applewhite v. N.Y.C. Dep't of Educ.*, No. 21-CV-2928 (AMD), 2024 WL 3718675, at *12 (E.D.N.Y. Aug. 8, 2024), *aff'd*, No. 24-2131-CV, 2025 WL 783650 (2d Cir.

Mar. 12, 2025) (noting that even in cases in which a plaintiff proceeds *pro se*, "[a] court may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed") (citations omitted); *Coker v. Goldberg & Assocs. P.C.*, No. 21-CV-01803 (JLR), 2024 WL 869412, at *7 (S.D.N.Y. Feb. 29, 2024) ("Defendants are deemed to have conceded these arguments by failing to address them in their opposition brief."); *Curry Mgmt. Corp. v. JPMorgan Chase Bank, N.A.*, 643 F. Supp. 3d 421, 426 (S.D.N.Y. 2022) ("A party may be deemed to concede an argument by failing to address it in an opposition brief.").

In any event, the Court evaluates each of the Hospital Defendants' arguments in turn, below. The undersigned notes, however, that the Hospital Defendants have not moved to dismiss any claims against any Karen Doe or Security Guard John Doe, despite Plaintiff alleging that these individuals worked for Northwell Health. *See* Dkt. No. 25 ¶¶ 11-12, 77-109. While the Hospital Defendants acknowledge the existence of allegations against currently unnamed "John Doe" defendants, their briefing does not raise any arguments with respect to these individuals. *See* Dkt. No. 29 at 10 ("[A]ny allegation [of search and seizure] relates solely to the defendant police officers or John Does.").

Accordingly, as Plaintiff has not identified or served these individuals, *see* Dkt. Nos. 9, 17, and as the Hospital Defendants have not affirmatively asked the Court to dismiss any claims as they relate to Karen Doe or Security Guard John Doe, *see generally*, Dkt. No. 29, the undersigned does not, *sua sponte*, issue any ruling with respect to claims against Karen Doe or Security Guard John Doe. Nor is a ruling with respect to Karen Doe or Security Guard John Doe ripe for the Court's review at this stage in the litigation.

#### B. The Plaintiff's Claims against the Hospital Defendants as State Actors or Acting under Color of State Law

**\*7** As Plaintiff asserts in the introduction of the amended complaint, "[t]his is a civil rights action for money *damages brought pursuant to 42 U.S.C. §§ 1983* and 1988 against the individual police officers identified herein and their employer, the County of Nassau." Dkt. No. 25 ¶ 1 (emphasis added). [6] Plaintiff's assertion that this is a civil rights action brought pursuant to Section 1983 gives credence to the Hospital Defendants' argument that Plaintiff's causes of action have a "basis of [Section 1983]." Dkt. No. 29 at 5.

6          Plaintiff neglects to even mention the Hospital Defendants in the introductory section of the amended complaint. *See* Dkt. No. 25 at 1.

Plaintiff's claims are brought pursuant to Section 1983, which is "the proper procedural mechanism for alleging a civil rights claim arising from the violation of an individual's constitutional rights[.]" *Randolph v. Goodman*, No. 25-CV-04833 (JLR), 2025 WL 2410503, at *2 (S.D.N.Y. Aug. 20, 2025). Significantly, "[c]laims brought alleging violations of an individual's constitutional rights, whether under 42 U.S.C. § 1983 or the Constitution itself, may only be brought against state actors." *Smith v. New Neighborhoods, Inc.*, No. 24-CV-00327 (KAD), 2025 WL 2615052, at *9 (D. Conn. Sept. 10, 2025) (citing *Flagg v. Yonkers Sav. & Loan Ass'n*, 396 F.3d 178, 186 (2d Cir. 2005) ("Because the United States Constitution regulates only the Government, not private parties, a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes state action." (internal quotation marks omitted)); *see also* 42 U.S.C. § 1983 (imposing civil liability on anyone "who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects ... any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws").

"To state a claim under § 1983, a plaintiff must allege that (1) the challenged conduct was attributable at least in part to a person who was acting under color of state law and (2) the conduct deprived the plaintiff of a right guaranteed under the Constitution of the United States." *D.C. v. Eldred Central School District*, No. 24-CV-9714 (CS), 2025 WL 2855583, at *2 (S.D.N.Y. Oct. 8, 2025) (quoting *Snider v. Dylag*, 188 F.3d 51, 53 (2d Cir. 1999)). "Section 1983 does not create a substantive right; rather, to recover, a plaintiff must establish the deprivation of a separate, federal right." *Cofield v. Armor Corr. Health, Inc.*, No. 12-CV-1394 (SJF) (ETB), 2012 WL 1222326, at *2 (E.D.N.Y. Apr. 11, 2012) (citing *Thomas v. Roach*, 165 F.3d 137, 142 (2d Cir. 1999)).

"A private actor may not be held liable under § 1983 unless it was acting as an instrument of the state." *Smith*, 2025 WL 2615052, at *9 (citing *Tancredi v. Metro. Life Ins. Co.*, 316 F.3d 308, 312 (2d Cir. 2003) (citations omitted). "For the purposes of section 1983, the actions of a nominally private entity are attributable to the state when: (1) the entity acts pursuant to the 'coercive power' of the state or is 'controlled' by the state ('the compulsion test'); (2) when

the state provides 'significant encouragement' to the entity, the entity is a 'willful participant in joint activity with the [s]tate,' or the entity's functions are 'entwined' with state policies ('the joint action test' or 'close nexus test'); or (3) when the entity has been delegated a public function by the [s]tate, ('the public function test')." *Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 257 (2d Cir. 2008) (citing *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 296 (2001)). Private conduct, no matter how purportedly wrongful, does not give rise to liability under Section 1983 unless it can be 'fairly attributable' to the state. *McGugan v. Aldana-Bernier*, 752 F.3d 224, 229 (2d Cir. 2014) ("The fundamental question ... is whether the private entity's challenged actions are 'fairly attributable' to the state."); *see Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 324 (2d Cir. 2002) ("[T]he United States Constitution regulates only the Government, not private parties.") (citations omitted). Furthermore, "[p]rivate employers are not liable under § 1983 for the constitutional torts of their employees, unless the plaintiff proves that 'action pursuant to official ... *policy* of some nature caused a constitutional tort.' " *Rojas v. Alexander's Dept. Store, Inc.*, 924 F.2d 406, 408 (2d Cir. 1990) (quoting *Monell v. Dep't of Social Serv. of the City of N.Y.*, 436 U.S. 658, 691 (1978) (emphasis in original)) (internal citations omitted).

**\*8** Here, Plaintiff fails to plausibly allege that the Hospital Defendants are state actors for purposes of Section 1983 liability. As a preliminary matter, Plaintiff concedes that Northwell Health is a "domestic business corporation," and that Capusan is employed in a medical role by Northwell Health. Dkt. No. 25 ¶¶ 9-10. "As a general rule, private hospitals do not act under color of state law for § 1983 purposes." *Morse v. City of New York*, No. 00-CV-2528 (TPG), 2001 WL 968996, at *7 (S.D.N.Y. Aug. 24, 2001) (citing *Blum v. Yaretsky*, 457 U.S. 991 (1982); *Schlein v. Milford Hosp.*, 561 F.2d 427 (2d Cir. 1977); *Thomas v. Beth Israel Hosp. Inc.*, 710 F. Supp. 935, 940 (S.D.N.Y. 1989)); *see also White v. St. Joseph's Hosp.*, 369 Fed. App'x 225, 226 (2d Cir. 2010) ("[P]rivate actors and institutions, such as the hospitals ... are generally not proper § 1983 defendants because they do not act under color of state law.") (citing *Amer. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999)); *see also Kia P. v. McIntyre*, 235 F.3d 749, 756 (2d Cir. 2000) (finding that a hospital was not a state actor to the extent it acted in its capacity as a private provider of medical care).

Next, Plaintiff fails to demonstrate that he suffered injury at the hands of a private party acting under color of state law. Plaintiff does not allege that the conduct of the Hospital Defendants constituted state action under either the "compulsion test," the "public function test," or the "close nexus" test. See *Sybalski*, 546 F.3d at 257. Instead, Plaintiff appears to allege that the Hospital Defendants were willful participants in the deprivation of his rights, as contemplated by the "joint action" test. *Id.*; *see also Betts v. Shearman*, 751 F.3d 78, 85 (2d Cir. 2014) ("A charge of joint action amounts to alleging some agreement between private and public actors to violate plaintiff's constitutional rights.") (quoting *Cunningham v. Southlake Center for Mental Health, Inc.*, 924 F.2d 106, 107 (7th Cir. 1991)).

As noted above, Plaintiff alleges that Karen Doe and Sanders "came to an agreement to call the security and the police to enforce the order of protection against [Plaintiff] and have [Plaintiff] leave [and] not participate in NAJ's examination." Dkt. No. 25 ¶ 26. Plaintiff further alleges that Sergeant Maguire, Karen Doe, Officer Jane Doe, Capusan, and Sanders "came to [an] agreement" that Capusan would examine NAJ while Officers Pescatore and John/Jane Doe One through Four would "detain [Plaintiff] in the waiting area so that [h]e could not participate in NAJ's examination." *Id.* ¶¶ 57-58. Plaintiff asserts, lastly, that all Defendants, including the Hospital Defendants, acted "in concert with one another." *Id.* ¶ 65.

These allegations, however, are insufficient to plausibly allege that a private individual or entity was acting under color of law, and to sustain a Section 1983 claim against the same. Indeed, while Plaintiff contends that Karen Doe agreed with Sanders to call NCPD, and that Capusan agreed with the NCPD that Capusan would temporarily be kept separate from Sanders (who also had an active order of protection in her favor against Plaintiff, *see* Dkt. No. 25 at 24) and NAJ, who had arrived at the appointment together, this does not raise an inference that the Hospital Defendants and the NCPD "shared a common unlawful goal" of falsely arresting plaintiff or otherwise depriving him of his rights guaranteed by federal law. *See Lederman v. Benepe*, No. 12-CV-6028 (PGG), 2016 WL 11588628, at *3 (S.D.N.Y. Mar. 11, 2016). Nor does Plaintiff allege that the actions taken by the Hospital Defendants were "pursuant to [an] official ... policy of some nature" established by Northwell Health. *Rojas*, 924 F.2d at 408 (quoting *Monell*, 436 U.S. at 691) (emphasis removed) (internal citations omitted).

*9 Additionally, "a civilian defendant who merely furnishes information to law enforcement authorities who are then free to exercise their own independent judgment as to whether an arrest will be made and criminal charges filed will not be held liable for [a constitutional violation]." *Saunders v. Cavada*, No. 19-CV-3279 (RPK) (JAM), 2024 WL 681228, at *10 (E.D.N.Y. Feb. 20, 2024), *report and recommendation adopted*, 750 F. Supp. 3d 1 (E.D.N.Y. 2024), *reconsideration denied*, No. 19-CV-3279 (RPK) (JAM), 2025 WL 2391759 (E.D.N.Y. Aug. 18, 2025) (citing *Lupski v. County of Nassau*, 32 A.D.3d 997, 998 (2d Dep't 2006)). "The defendant must have affirmatively induced the officer to act, such as taking an active part in the arrest and procuring it to be made or showing active, officious and unusual zeal, to the point where the officer is not acting of his own volition." *Id.* And, even if, liberally construed, the amended complaint is read to suggest that the Hospital Defendants conveyed information to the NCPD, such communication would not render the Hospital Defendants' actions to have occurred under color of state law. *See, e.g., Thomas*, 710 F. Supp. at 940 ("The fact that Beth Israel was complying with the New York State Child Protective Services Act [ ] by reporting suspected child abuse does not mean it acted under color of state law."); *see also Ginsberg v. Healey Car & Truck Leasing, Inc.*, 189 F.3d 268, 272 (2d Cir. 1999) (citing *Alexis v. McDonald's Restaurants of Massachusetts, Inc.*, 67 F.3d 341, 352 (1st Cir. 1995) (granting summary judgment to private party when Plaintiff failed to demonstrate that her arrest "resulted from concerted action tantamount to substituting the judgment of a private party for that of the police or allowing the private party to exercise state power.")).

Nor do Plaintiff's assertions that the Hospital Defendants acted "in concert" with the NCPD raise an inference of state action. *See Illescas v. Annuci*, No. 21-CV-8473 (NSR), 2024 WL 4882774, at *4 (S.D.N.Y. Nov. 25, 2024) ("Courts in this circuit have held that 'mere conclusory allegation[s] that a private entity acted in concert with a state actor does not suffice to state a § 1983 claim against the private entity.' ") (citing *Ciambriello*, 292 F.3d at 324). Indeed "mere claims of discriminatory conduct on the part of a private actor are not, without more, enough to form the basis of a plausible Section 1983 claim." *See id.* at *5; *Altieri v. Tsopanides*, No. 3:21-CV-1224 (MPS), 2022 WL 1912851, at *3 (D. Conn. June 3, 2022) (dismissing § 1983 complaint against non-state actor because of conclusory allegations that defendants "acted jointly and in concert" with the state); *Cofield*, 2012 WL 1222326, at *2 (E.D.N.Y. Apr. 11, 2012) ("Plaintiff has not alleged any factors that could make Armor Correctional

Health, Inc. liable for the actions of its employees."); *Morse, 2001 WL 968996, at \*8* ("the fact that [the plaintiff] was brought to the hospital from police custody and was released from the hospital into police custody is insufficient to transform this private hospital and its staff into state actors for section 1983 purposes.").

Accordingly, the undersigned respectfully recommends that Plaintiff's Section 1983 claims against the Hospital Defendants be dismissed. [7]

[7]   The Hospital Defendants allege that "claimed damages are not recoverable from the Town Defendants." Dkt. No. 29 at 12. The Hospital Defendants appear to have made multiple typographical errors in their submission. *See, e.g.,* Dkt. No. 29 at 2 (misspellings in the table of contents), 12 (referring to the Hospital Defendants as the "Town Defendants"). Notwithstanding the seemingly slapdash nature of the Hospital Defendants' briefing, the undersigned does not address the Hospital Defendants' argument at this stage, given that "whether the plaintiff is entitled to punitive damages under the circumstances alleged in this complaint is a factual issue that cannot be determined on a motion to dismiss." *RBG Mgmt. Corp. v. Village Super Market, Inc.,* 692 F. Supp. 3d 135, 156 (S.D.N.Y. 2023).

**C. Plaintiff's State and Federal Claims against the Hospital Defendants**

**i. Plaintiff's First Cause of Action**

Plaintiff's first cause of action is for false arrest and prolonged detention under state and federal law against Sergeant Maguire, Officers Pescatore, John Does One through Four, and Jane Doe One, Karen Doe, Security Guard John Doe, Capusan, and Sanders. Dkt. No. 25 ¶¶ 77-85. The Section 1983 federal claim fails for the reasons described above. The state law claims fail for the reasons described below.

**\*10** As to the Hospital Defendants, [8] Plaintiff alleges that they "intentionally detained and arrested Plaintiff without [h]is consent," while also "restraining him and [h]is liberty" for approximately two hours. *See id.* at ¶¶ 78-79. Plaintiff does not allege that the Hospital Defendants engaged in a "prolonged detention" of Plaintiff. *See id.* at ¶ 80 (claiming that the prolonged detention was "by Defendants Maguire, Pescatore and PO's John Doe One

through Four, PO Jane Doe One.")). Plaintiff contends that the Hospital Defendants "detained and arrested" him without legal privilege, reasonable suspicion, or probable cause. *See id.* ¶¶ 81-84.

[8]   Although Plaintiff does not list Northwell Health in this cause of action, liberally construed, the reference to all Defendants in paragraph 78 of the amended complaint suggests that Plaintiff's claims also relate Northwell Health. *See* Dkt. No. 25 ¶ 78.

Upon review of Plaintiff's amended complaint and the Hospital Defendants' motion, this Court determines that Plaintiff has not pled a plausible false arrest claim against the Hospital Defendants under either New York law or Section 1983.

Claims of false arrest under Section 1983 derive from the Fourth Amendment right to be free from unreasonable seizures, including the right to be free from arrest without probable cause. *See, e.g., Jaegly v. Couch,* 439 F.3d 149, 151 (2d Cir. 2006). To state a Section 1983 claim for false arrest, a plaintiff must allege "that (1) the defendant intended to confine him, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." *Ackerson v. City of White Plains,* 702 F.3d 15, 19 (2d Cir. 2012) (*per curiam*) (internal quotation marks omitted); *see Corsini v. Bloomberg,* 26 F. Supp. 3d 230, 240 (S.D.N.Y. 2014) (same). A claim for false arrest brought under Section 1983 is "substantially the same" as a claim for false arrest under New York law. *See Jocks v. Tavernier,* 316 F.3d 128, 134 (2d Cir. 2003) ("Claims for false arrest or malicious prosecution, brought under § 1983 to vindicate the Fourth and Fourteenth Amendment right to be free from unreasonable seizures, are 'substantially the same' as claims for false arrest or malicious prosecution under state law."); *Ashley v. City of New York,* 992 F.3d 128, 136 (2d Cir. 2021).

"To hold a defendant liable as one who affirmatively instigated or procured an arrest, a plaintiff must show that the defendant or its employees did more than merely provide information to the police." *King v. Crossland Sav. Bank,* 111 F.3d 251, 257 (2d Cir. 1997). "For false imprisonment liability to attach to one who causes or directs an arrest or imprisonment in New York, 'the defendant must have affirmatively induced the officer to act, such as taking an active part in the arrest and procuring it to be made or showing active, officious and undue zeal to the point where the officer is not acting of his own volition.' " *Carmellino v. Dist. of*

*New York City Dep't of Educ.*, No. 03-CV-5942 (PKC), 2006 WL 2583019, at *61 (S.D.N.Y. Sept. 6, 2006), *aff'd in part sub nom. Mauskopf v. Dist. 20 of New York City Dep't of Ed.*, 299 F. App'x 100 (2d Cir. 2008), and *aff'd in part sub nom. Papasmiris v. Dist. 20 of New York City Dep't of Ed.*, 299 F. App'x 97 (2d. Cir. 2008) (quoting *Curley v. AMR Corp.*, 153 F.3d 5, 13-14 (2d Cir. 1998)); *see also Toure v. Air France*, No. 21-CV-1645 (GRB) (ST), 2022 WL 4079592, at *2 (E.D.N.Y. Sept. 6, 2022) (dismissing false arrest claim against private individuals who merely gave police information resulting in plaintiff's arrest).

**\*11** "Courts routinely dismiss false arrest claims, brought under § 1983 or New York law, against private citizens who 'merely [sought] police assistance or furnish[ed] information to law enforcement authorities who [were] then free to exercise their own judgment as to whether an arrest should be made.' " *Toure*, 2022 WL 4079592, at *2 (citing *Carmellino*, 2006 WL 2583019, at *61)); *see e.g., Baez v. Jetblue Airways Corp.*, No. 09-CV-596 (CPS) (SMG), 2009 WL 2447990, at *8 (E.D.N.Y. Aug. 3, 2009) ("[S]imply stat[ing] that a Jetblue security agent approached her in the terminal and escorted her to the security office, where she was detained and later arrested" by law enforcement, does not "allege[ ] [Jetblue and its employee] intended to procure her arrest.").

Here, there is no allegation in the amended complaint that the Hospital Defendants arrested or detained Plaintiff. *See generally* Dkt. No. 25. Nor does Plaintiff allege that the Hospital Defendants procured Plaintiff's detention, such that Sergeant Maguire and Officers Pescatore, John Does One through Four, and Jane Doe One were no longer " 'acting of [their] own volition.' " *Carmellino*, 2006 WL 2583019, at *61 (quoting *Curley*, 153 F.3d at 13-14). As the amended complaint does not allege sufficient facts to support an inference that arresting officers decided to arrest Plaintiff based on anything other than their own volition, Plaintiff's false arrest claim fails. *See* Dkt. No. 25.

Accordingly, the undersigned respectfully recommends that Plaintiff's false arrest claim under both New York law and Section 1983 be dismissed with respect to the Hospital Defendants.

### ii. Plaintiff's Second Cause of Action

Plaintiff's second cause of action asserts unlawful search and seizure under federal law against Defendant Police Officers John Doe One and Two. *Id.* ¶¶ 86-91. As this claim does not

implicate the Hospital Defendants, the Court need not address the second cause of action.

### iii. Plaintiff's Third Cause of Action

Plaintiff's third cause of action alleges a violation of Plaintiff's rights under state law against all named Defendants. Dkt. No. 25 ¶¶ 92-94. Specifically, Plaintiff alleges that the Hospital Defendants engaged in the following "wrongful acts," namely, "assault and battery"; "trespass"; "violation of the right to privacy"; and "violation of rights otherwise guaranteed under the Constitution and laws of the State of New York." *Id.* ¶ 93. The Court addresses each of Plaintiff's state law tort claims below.

First, under New York law, assault requires "proof of physical conduct placing the plaintiff in imminent apprehension of harmful contact." *Decter v. Second Nature Therapeutic Program, LLC*, 42 F. Supp. 3d 450, 463 (E.D.N.Y. 2014) (quoting *Marilyn S. v. Indep. Grp. Home Living Program, Inc.*, 903 N.Y.S.2d 403, 406 (2010)). Battery is an "intentional wrongful physical contact with another person without consent." *Sankar v. City of New York*, 867 F. Supp. 2d 297, 313 (E.D.N.Y. 2012) (quoting *Girden v. Sandals Intern.*, 262 F.3d 195, 203 (2d Cir. 2001)). An assault, unlike a battery, can be completed without actually touching the victim. *See United Nat'l Ins. Co. v. Waterfront N.Y. Realty Corp.*, 994 F.2d 105, 108 (2d Cir.1993).

Here, even in the light most favorable to Plaintiff, the amended complaint fails to allege that Capusan made any physical contact with Plaintiff or engaged in conduct sufficient to create an imminent apprehension of harmful conduct as discussed above. *See supra* Section III.B; *see generally*, Dkt. No. 25. Therefore, Plaintiff fails to state a claim regarding his claim for assault and battery against Capusan. Further, because Plaintiff does not appear to make any allegations regarding Northwell Health's direct liability for assault and battery, any such claim is also dismissed.

**\*12** Next, "[u]nder New York law, trespass is the intentional invasion of another's property." *Town of New Windsor v. Avery Dennison Corp.*, No. 10-CV-8611, 2012 WL 677971, at *14 (S.D.N.Y. Mar.1, 2012) (quoting *Scribner v. Summers*, 84 F.3d 554, 557 (2d Cir.1996)). Nowhere in the amended complaint does Plaintiff allege invasion of his property by the Hospital Defendants. *See generally* Dkt. No. 25. Instead, his claim is essentially for trespass upon his person, which is recognized as battery under state law. *See Dotson v. Farrugia*, No. 11-CV-1126 (PAE), 2012 WL 996997, at *7 (S.D.N.Y.

VLADIMIR JEANTY, Plaintiff, v. NASSAU COUNTY, et al., Defendants., Slip Copy (2025)

2025 WL 2972645

Mar. 26, 2012) ("Under New York law, claims for trespass upon one's person are properly classified as battery."). Thus, Plaintiff has failed to plead the essential element of property invasion required for a trespass to property claim. *See Avery Dennison Corp.*, 2012 WL 677971, at *14. Therefore, Plaintiff's claim for trespass must be dismissed as against the Hospital Defendants.

Further, there is no basis for Plaintiff's claim against the Hospital Defendants for alleged violation of his "right to privacy" because he fails to identify any specific privacy right of his that was violated, nor does he allege facts permitting such an inference. Indeed, "[i]t appears that there is no common law right of privacy under New York law and 'the only available remedy is that created by [New York State] Civil Rights Law §§ 50 and 51.' " *Curto v. Smith*, 248 F. Supp. 2d 132, 142 n.19 (N.D.N.Y. 2003), *aff'd in part, appeal dismissed in part sub nom. Doe v. Anon. Unnamed Sch. Emps. & Offs. of Cornell Univ. Coll. of Veterinary Med.*, 87 F. App'x 788 (2d Cir. 2004), and *aff'd*, 93 F. App'x 332 (2d Cir. 2004). (citing *Freihofer v. Hearst Corp.*, 65 N.Y.2d 135, 140 (1985) (citations omitted)). "However, the Civil Rights law only affords a remedy for 'commercial exploitation of an individual's name, portrait or picture, without written consent[,]' " *id.* (quoting *Freihofer*, 65 N.Y.2d at 140), which is wholly distinct from Plaintiff's claims in the amended complaint. Thus, it is clearly "doubtful on the facts of this case, as pleaded by Plaintiff, that a cause of action will lie under state law." *Id.*

Moreover, Plaintiff's generalized assertion that the Hospital Defendants violated his "rights otherwise guaranteed" under New York law lacks the necessary specificity and factual support to survive a motion to dismiss. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Plaintiff has neither identified any specific right under New York law, nor pleaded the necessary facts to establish such a violation. *See* Dkt. No. 25. ¶¶ 92-94. The Court need not credit "legal conclusions couched as factual allegations." *Dixon v. von Blanckensee*, 994 F.3d 95, 101 (2d Cir. 2021) (citing *UBS AG*, 708 F.3d at 94). The amended complaint therefore fails to state a claim for violation of privacy and other rights under New York law as against the Hospital Defendants.

Accordingly, the undersigned respectfully recommends that Plaintiff's claims for assault and battery, trespass, violation of the right to privacy, and violation of rights otherwise guaranteed under the Constitution and laws of the State of New York, be dismissed with respect to the Hospital Defendants.

### iv. Plaintiff's Fourth Cause of Action

Plaintiff's fourth cause of action alleges a claim of interference with familial rights, interference with intimate association, and intentional interference with custodial and parental rights against Sergeant Maguire, Officers Pescatore, John Doe One through Four, and Jane Doe, Karen Doe, and Capusan. *See* Dkt. No. 25 ¶¶ 95-102.

**\*13** As relevant here, the undersigned evaluates this claim solely as it relates to Capusan. Specifically, Plaintiff alleges that Capusan, along with other defendants "caused [Plaintiff] to be unlawfully detained for a prolonged period of time while [ ] Capusan examined NAJ without [Plaintiff] being allowed to participate in NAJ's examination." Dkt. No. 25 ¶ 96. Plaintiff further claims that Capusan excluded him from NAJ's examination under the false pretense of "pretend[ing] to investigat[e] a complaint[,]" while allowing Sanders to be present for it. *Id.* ¶¶ 97-98. Plaintiff contends that he was only allowed to enter the examination room with NAJ after she was already examined by Capusan, who pretended the same had not already happened. *See id.* ¶¶ 99-100.

As an initial matter, there is no viable legal cause of action raised against Capusan as part of Plaintiff's fourth cause of action. *See* Dkt. No. 29 at 11. Liberally construed, Plaintiff appears to be arguing that his right to intimate association was violated by Capusan. *Licorish-Davis v. Mitchell*, No. 12-CV-601 (ER), 2013 WL 2217491, at *6 (S.D.N.Y. May 20, 2013) ("Although not specifically alleged, the Court reads Plaintiffs' papers as raising a claim pursuant to the right to intimate association, which 'guarantees an individual the choice of entering an intimate relationship free from undue intrusion by the state.' ") (quoting *Sanitation & Recycling Indus., Inc. v. City of New York*, 107 F.3d 985, 996 (2d Cir. 1997)). Even construed liberally, however, Plaintiff fails to state a cognizable claim.

"[T]he Supreme Court [has] recognized a right to intimate association that allows individuals to 'enter into and maintain certain intimate human relationships without undue intrusion by the State.' " *United States v. Thompson*, 896 F.3d 155, 166 (2d Cir. 2018) (quoting *Roberts v. United States Jaycees*, 468 U.S. 609, 617-18 (1984)). "The Court identified 'the personal affiliations that exemplify these considerations' as including 'those that attend the creation and sustenance of a family—marriage, childbirth, the raising and education of children,

and cohabitation with one's relatives.' " *Id.* (quoting *Roberts*, 468 U.S. at 619-20). The Second Circuit "has not determined whether the right to intimate association finds its roots in the First Amendment or in the Due Process Clauses of the Fifth and Fourteenth Amendments." *Id.* at 166 n.12. Even so, it has held that a "claim for infringement of the right to familial association requires conduct so shocking, arbitrary, and egregious that the Due Process Clause would not countenance it even were it accompanied by full procedural protection." *Gorman v. Rensselaer Cty.*, 910 F.3d 40, 47 (2d Cir. 2018). Further, "a claim under the Due Process Clause for infringement of the right to familial associations requires the allegation that state action was specifically intended to interfere with the family relationship." *Id.* at 48.

Here, the amended complaint fails to state a plausible claim for interference with familial rights against Capusan on several grounds. First, as discussed above, the amended complaint fails to raise an inference that the conduct of Capusan, a private individual employed by Northwell Health, constituted state action. *See supra* Section III.B; *see also Sybalski*, 546 F.3d at 257. Second, the amended complaint fails to plausibly allege that Capusan had specific intention to disrupt Plaintiff's relationship with NAJ. *See Gorman*, 910 F.3d at 48 ("[A] claim under the Due Process Clause for infringement of the right to familial associations requires the allegation that state action was specifically intended to interfere with the family relationship."). Even assuming Capusan's conduct did measurably interfere with Plaintiff's relationship with NAJ, it was "at best the indirect and incidental result of [her] conduct[,]" and not sufficient to state a claim. *Id.* Third, Plaintiff's claim against Capusan for interference with familial rights fails because Plaintiff has not alleged any conduct of hers that was "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Licorish-Davis*, 2013 WL 2217491, at *7 (citing *Southerland v. City of NY*, 680 F.3d 127, 151 (2d Cir. 2002)). Indeed, the sum of Plaintiff's complaints about Capusan are that she rendered medical care to NAJ outside of his presence. *See generally* Dkt. No. 25.

**\*14** Accordingly, the undersigned respectfully recommends that Plaintiff's claims against Capusan for interference with familial rights, interference with intimate association, and intentional interference with custodial and parental rights be dismissed.

**v. Plaintiff's Fifth Cause of Action**

Plaintiff's fifth cause of action asserts a claim of *respondeat superior* liability against Nassau County and Northwell Health under "New York Common Law." *Id.* ¶¶ 103-109. Relevant to the Motion, Plaintiff alleges that Northwell Health should be vicariously liable for the "grossly negligent and/or intentional acts" of its employees, Karen Doe and Security Guard John Doe. *Id.* ¶ 104. [9] Plaintiff contends that such actions were committed within the scope of Karen Doe and Security Guard John Doe's employment, were "generally foreseeable," and were the "natural consequence of their employment" with Northwell Health. *See Id.* ¶ 105.

[9]     Plaintiff does allege that Northwell Health is vicariously liable for Capusan's conduct. *See* Dkt. No. In any event, "[p]rivate employers are not vicariously liable under § 1983 upon a theory of *respondeat superior* for the constitutional torts of their employees." *Fisk v. Letterman*, 401 F. Supp. 2d 362, 375 (S.D.N.Y. 2005) (citing *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1215-16 (10th Cir. 2003)).

"Under New York common law, an employer is liable for the actions of an employee if her actions were foreseeable and if she acted within the scope of her employment." *Doe v. Guthrie Clinic, Ltd.*, 710 F.3d 492, 495 (2d Cir.), *certified question accepted*, 21 N.Y.3d 895, 988 N.E.2d 519 (2013), *and certified question answered*, 22 N.Y.3d 480, 5 N.E.3d 578 (2014); *Zanfardino v. City of New York*, 230 F. Supp. 3d 325, 338 (S.D.N.Y. 2017) (noting that, under the doctrine of *respondeat superior*, "an employer can be held 'vicariously liable for torts committed by an employee acting within the scope of employment ... so long as the tortious conduct is generally foreseeable and a natural incident of the employment.' "). An employee's conduct ordinarily cannot be attributed to the employer, however, if it was motivated solely by personal reasons "unrelated to the furtherance of the employer's business." *Doe*, 710 F.3d at 495.

"It is black letter law that *respondeat superior* only holds an employer to answer for the acts of an employee performed *within the scope of the employment*." *Sgaliordich v. Lloyd's Asset Mgmt.*, No. 10-CV-03669 (ERK), 2011 WL 441705, at *3 (E.D.N.Y. Feb. 8, 2011) (quoting *Coleman & Co. Securities, Inc. v. Giaquinto Family Trust*, 236 F. Supp. 2d 288, 303 (S.D.N.Y.2002); (emphasis in original)). "In appropriate circumstances, a *respondeat superior* claim can be disposed of upon a motion to dismiss." *Aponte v. City of New York*, No. 14-CV-3989 (KMK), 2016 WL 5394754,

VLADIMIR JEANTY, Plaintiff, v. NASSAU COUNTY, et al., Defendants., Slip Copy (2025)

2025 WL 2972645

at *7 (S.D.N.Y. Sept. 26, 2016); *see also Sgaliordich*, 2011 WL 441705, at *4 (granting motion to dismiss *respondeat superior* claim because "[the] [p]laintiff [did] not plead[ ] sufficient facts concerning the employment relationship between [the defendant] and [the putative employees]").

In determining whether an employee's alleged acts fall within the scope of their employment, courts will consider the following in their *respondeat superior* analyses:

> **\*15** the connection between the time, place and occasion for the act; the history of the relationship between employer and employee as spelled out in actual practice; whether the act is one commonly done by such an employee; the extent of departure from normal methods of performance; and whether the specific act was one that the employer could reasonably have anticipated.

*Sgaliordich*, 2011 WL 441705, at *3-4 (citations omitted). "[A]n employee's actions are not within the scope of employment unless the purpose in performing such actions is to further the employer's interest, or to carry out duties incumbent upon the employee in furthering the employer's business." *Id.* (citation omitted). To state a *respondeat superior* claim, a plaintiff must plead facts that plausibly allege that the predicate torts were committed "within the scope of the employee's duties to the employer and was thus in furtherance of the employer's interests." *Doe v. Alsaud*, 12 F. Supp. 3d 674, 677 (S.D.N.Y. 2014).

Dismissal is not appropriate at this stage with respect to Plaintiff's *respondeat superior* claim against Northwell Health. As an initial matter, the fact that Plaintiff may have waived arguments in response to the Hospital Defendants' Motion is of no moment here, as the Hospital Defendants did not address the torts alleged against Karen Doe or Security Guard John Doe for which Plaintiff is seeking to hold Northwell Health vicariously liable.

Additionally, at this stage in the proceedings, the amended complaint has pled sufficient facts to permit the Court to draw a reasonable inference that both Karen Doe and Security Guard John Doe were employed by Northwell

Health and were acting in a manner consistent with their normal job duties, with the purpose of furthering Northwell Health's interests at the time of the alleged tortious conduct. Plaintiff alleges that Karen Doe, as an office manager, had communicated with Plaintiff that security had been called, ostensibly to address the situation at hand. Dkt. No. 25 ¶ 27. Further, Plaintiff alleges that Security Guard John Doe communicated with NCPD officers to address the security issues raised at the time of the alleged incident. *Id.* ¶ 28.

The amended complaint plausibly alleges that Karen Doe and Security Guard John Doe's time, place, and occasion of employment enabled them to commit the alleged torts at issue. Next, the amended complaint—liberally construed given Plaintiff's *pro se* status—plausibly alleges that an office manager and a security guard would have reason to communicate with visitors and safeguard the medical area. Further, it is plausible that Karen Doe and Security Guard John Doe were engaging in actions commonly done by an office manager and security guard, respectively. And Northwell Health could reasonably have anticipated that Karen Doe and Security Guard John Doe would communicate with patients and their guardians, and attempt to safeguard the medical area.

Indeed, both Karen Doe and Security Guard John Doe were, conceivably, furthering Northwell Health's interests by attempting to quell the potentially dangerous child-care dispute occurring in its medical office. In any event, "because the determination of whether a particular act was within the scope of the servant's employment is so heavily dependent on factual considerations, the question is ordinarily one for the jury" and certainly is not one for dismissal at this stage, given the manner in which the claims are crafted in *pro se* Plaintiff's amended complaint. *Rosenfeld v. Lenich*, 370 F. Supp. 3d 335, 351 (E.D.N.Y. 2019) (noting, however, that "where a court takes as true all the facts alleged by plaintiff and concludes that the conduct complained of cannot be considered as a matter of law within the scope of employment, then the court must dismiss the complaint for failure to state a claim.").

**\*16** Consequently, at this stage, Plaintiff has sufficiently alleged that Karen Doe and Security Guard John Doe's actions fall within the scope of their employment, where the purpose in performing such actions is "to further the employer's interest, or to carry out duties incumbent upon the employee in furthering the employer's business." *Guzman v. United States*, No. 11-CV-5834 (JPO), 2013 WL 543343, at *9 (S.D.N.Y. Feb. 14, 2013), *on reconsideration*, 2013 WL

5018553 (S.D.N.Y. Sept. 13, 2013) (citation omitted). To be clear, the undersigned is not recommending that plausible claims for Karen Doe or Security Guard John Doe exist. Instead, the undersigned is merely recognizing that, at this stage, Plaintiff's *respondeat superior* claim is plausible and survives a motion to dismiss. [10] Indeed, as discussed above, no motion to dismiss claims against Karen Doe or Security Guard John Doe have been made.

[10]    The Court notes that Defendant Nassau County has not filed a motion to dismiss in this action, including with respect to the *respondeat superior* claim sought against it.

Accordingly, the undersigned respectfully recommends that Plaintiff's claim for *respondeat superior* against Northwell Health should proceed. *See Rosenfeld*, 370 F. Supp. 3d at 351 (explaining that "the court cannot conclude at this stage that Plaintiff's unlawful acts were committed outside the scope of her employment.").

## IV. Dismissal with Prejudice with respect to the Hospital Defendants

The Hospital Defendants seek dismissal of the claims against them in the amended complaint with prejudice. *See* Dkt. No. 29 at 13. Plaintiff has not opposed that request, nor has Plaintiff sought to file a second amended complaint. "Federal district courts generally grant a *pro se* plaintiff an opportunity to amend a complaint to cure its defects, but leave to amend is not required where it would be futile." *Gangemi v. Gov't*, No. 23-CV-1027 (LTS), 2023 WL 2917310, at *3 (S.D.N.Y. Apr. 10, 2023) (citing *Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988)); *see also Hussein v. Occupant of the Office of CEO and CFO of Bank of America*, No. 24-CV-4477 (RPK) (MMH), 2025 WL 2783108, at *5 (E.D.N.Y. Sept. 30, 2025) ("[w]hile '[o]rdinarily,' a court "should not dismiss a *pro se* plaintiff's claim without granting leave to amend when a liberal reading of the complaint gives any indication that a valid claim might be stated,' dismissal with prejudice is appropriate when 'amendment would be futile' because 'there is no indication that [the plaintiff] might plead a valid claim.' ") (quoting *Hariprasad v. New York*, 722 F. App'x 102, 103 (2d Cir. 2018)).

Here, because the defects in the amended complaint cannot be cured with a further amendment, the undersigned respectfully recommends that Plaintiff's first, third, and fourth causes of action against the Hospital Defendants be dismissed

with prejudice. *See Ruff v. United States*, No. 25-CV-1676 (KMW), 2025 WL 2855354, at *3 (S.D.N.Y. Oct. 8, 2025) ("Plaintiff's complaint does not suggest that she could provide facts that would cure the identified deficiencies .... Because Plaintiff cannot cure the defects in her complaint with an amendment, the Court declines to grant Plaintiff leave to amend."). At bottom, the Court is "not bound to accept as true" conclusory allegations with respect to the first, third, and fourth causes of action as they related to the Hospital Defendants, thereby rendering any attempt to amend the complaint futile. *See Palladino v. JPMorgan Chase & Co.*, -- F. Supp. 3d --, 2025 WL 2950425, at *8 (E.D.N.Y. Oct. 20, 2025); *see also Twombly*, 550 U.S. at 555 ("[O]n a motion to dismiss, courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.' "). The undersigned therefore respectfully recommends that the Hospital Defendants' Motion be granted, with prejudice, regarding all claims against Capusan. The undersigned also respectfully recommends that the Hospital Defendants' Motion be granted, with prejudice, regarding all claims against Northwell Health—except for Plaintiff's *respondeat superior* claim against Northwell Health.

## V. Conclusion

*17   For the reasons set forth above, the undersigned respectfully recommends that the Hospital Defendants' Motion be granted in part and denied in part. Specifically, as noted above, the undersigned respectfully recommends that the Hospital Defendants' Motion be granted, dismissing all claims against Capusan, with prejudice. And, as noted above, the undersigned respectfully recommends that the Hospital Defendants' Motion be granted in part and denied in part, dismissing all claims against Northwell Health—except for Plaintiff's *respondeat superior* claim against Northwell Health, with prejudice.

Any objections to this Report and Recommendation must be filed within 14 days after service of this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(a) & (d) (addressing computation of days). Any requests for an extension of time for filing objections must be directed to Judge Merchant. Failure to file objections within this period designating the particular issues to be reviewed waives the right to appeal the district court's order. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010); *Kotlyarsky v. United States Dep't of Justice*, No.

22-2750, 2023 WL 7648618 (2d Cir. Nov. 15, 2023); *see also* *Thomas v. Arn*, 474 U.S. 140 (1985).

The Hospital Defendants shall serve a copy of this Report and Recommendation on Plaintiff and file proof of service by October 23, 2025.

**SO ORDERED.**

**All Citations**

Slip Copy, 2025 WL 2972645

---

**End of Document**                      © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Guillory v. Benedict, Not Reported in Fed. Supp. (2021)

2021 WL 707076

2021 WL 707076
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Patrick GUILLORY, Plaintiff,

v.

Brian BENEDICT and St. Joseph's Hospital, Defendants.

5:21-CV-073 (GLS/ATB)
|
Signed 02/04/2021

**Attorneys and Law Firms**

PATRICK GUILLORY, Plaintiff, pro se.

**ORDER and REPORT-RECOMMENDATION**

ANDREW T. BAXTER, United States Magistrate Judge

**\*1** The Clerk has sent to the court for review a complaint brought pursuant to 42 U.S.C. § 1983 and Title VII of the Civil Rights Act of 1964, filed by plaintiff Patrick Guillory. (Dkt. No. 1) ("Compl."). Plaintiff has also moved to proceed in forma pauperis (Dkt. No. 2), and for court appointed counsel (Dkt. No. 3).

**I. IFP Application**

Plaintiff declares in his IFP application that he is unable to pay the filing fee. (Dkt. No. 2). After reviewing his application, this court finds that plaintiff is financially eligible for IFP status.

However, in addition to determining whether plaintiff meets the financial criteria to proceed IFP, the court must also consider the sufficiency of the allegations set forth in the complaint in light of 28 U.S.C. § 1915, which provides that the court shall dismiss the case at any time if the court determines that the action is (i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915 (e)(2)(B)(i)-(iii).

In determining whether an action is frivolous, the court must consider whether the complaint lacks an arguable basis in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Dismissal of frivolous actions is appropriate to prevent abuses

of court process as well as to discourage the waste of judicial resources. *Neitzke*, 490 U.S. at 327; *Harkins v. Eldridge*, 505 F.2d 802, 804 (8th Cir. 1974). Although the court has a duty to show liberality toward *pro se* litigants, and must use extreme caution in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and has had an opportunity to respond, the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. *Fitzgerald v. First East Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (finding that a district court may dismiss a frivolous complaint *sua sponte* even when plaintiff has paid the filing fee).

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 555).

**II. Complaint**

Plaintiff alleges that on January 20, 2021 at approximately 12:15 a.m., he entered "defendant's establishment" to drop of his girlfriend's cell phone and charger. (Compl. at 2). When he attempted to exit the hospital lobby, plaintiff was "attacked by security staff ... and suffered right hand, right elbow, and back injuries." (*Id.*). Plaintiff asserts that he was attacked in retaliation for previously filing a lawsuit against defendant Brian Benedict, Chief of Security at defendant St. Joseph's Hospital ("SJH") [1]. Specifically, plaintiff alleges that three weeks before January 20, 2021 he filed a complaint against Benedict in small claims court because, on a prior occasion, "[Benedict's] officers used excessive force against [him]." (*Id.*). Plaintiff states that SJH surveillance video from January 20, 2021 shows that unidentified security personnel were "ordered by defendant Brian Benedict to beat [plaintiff] for filing a lawsuit against [him]." (*Id.*).

[1]   The entity which plaintiff refers to as "St. Joseph's Hospital," is also known as "St. Joseph's Health." *See* https://www.sjhsyr.org/.

**\*2** Plaintiff's complaint states separate causes of action for retaliation and excessive use of force under § 1983. Plaintiff has simultaneously submitted a form complaint pursuant to Title VII of the Civil Rights Act of 1964, alleging the same causes of action. (*Id.* at 8-12).

Case 1:25-cv-00848-AMN-TWD    Document 15    Filed 10/29/25    Page 70 of 77

Guillory v. Benedict, Not Reported in Fed. Supp. (2021)

2021 WL 707076

## III. Section 1983

### A. Legal Standards

A claim for relief under 42 U.S.C. § 1983 must allege facts showing that the defendant acted under the color of a state "statute, ordinance, regulation, custom or usage." 42 U.S.C. § 1983. Thus, to state a claim under § 1983, a plaintiff must allege both that: (1) a right secured by the Constitution or laws of the United States was violated, and (2) the right was violated by a person acting under the color of state law, or a "state actor." *See* *West v. Atkins*, 487 U.S. 42, 48-49 (1988). Private parties are generally not state actors, and are therefore not usually liable under § 1983. *Sykes v. Bank of Am.*, 723 F.3d 399, 406 (2d Cir. 2013) (quoting *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001)); see also *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002) ("[T]he United States Constitution regulates only the Government, not private parties....") (internal quotation marks and citation omitted).

For the purposes of section 1983, the actions of a nominally private entity are attributable to the state when: "(1) the entity acts pursuant to the 'coercive power' of the state or is 'controlled' by the state ('the compulsion test'); (2) when the state provides 'significant encouragement' to the entity, the entity is a 'willful participant in joint activity with the [s]tate,' or the entity's functions are 'entwined' with state policies ('the joint action test' or 'close nexus test'); or (3) when the entity 'has been delegated a public function by the [s]tate,' ('the public function test')." *Caballero v. Shayna*, No. 18-CV-1627, 2019 WL 2491771, at *3 (E.D.N.Y. June 14, 2019) (citing *Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 257 (2d Cir. 2008)). "The fundamental question under each test is whether the private entity's challenged actions are 'fairly attributable' to the state." *Id.* (quoting *Fabrikant v. French*, 691 F.3d 193, 207 (2d Cir. 2012)).

### B. Application

Plaintiff is suing SJH, a private medical institution.[2] He alleges no facts suggesting that the hospital is a state actor under any of the aforementioned exceptions, or describing how SJH's actions are otherwise "fairly attributable to the state." Likewise, SJH employee Benedict is also a private actor. Because plaintiff has failed to plausibly allege that either named defendant acted under color of state law, the complaint fails to state any claims for relief under § 1983.

*See* *White v. St. Joseph's Hosp.*, 369 Fed. App'x 225, 226 (2d Cir. 2010) ("[P]rivate actors and institutions, such as the hospitals ... named as defendants in [plaintiff's] complaint, are generally not proper § 1983 defendants because they do not act under color of state law."). Accordingly, the district court should dismiss plaintiff's retaliation and excessive force claims alleged pursuant to § 1983.

[2]     "St. Joseph's Health is a regional non-profit health care system based in Syracuse, New York." https://www.sjhsyr.org/about-us.

## IV. Title VII

**\*3** Plaintiff has also filed a form Title VII complaint with the court, but does not appear to allege employment discrimination.[3] Rather, plaintiff claims that he was assaulted by the security staff at SJH on January 20, 2021, in retaliation for filing a lawsuit against defendant Benedict alleging a prior incident during which plaintiff was the victim of excessive force at SJH.

[3]     Plaintiff wrote "N/A" with respect to whether his action involved "employment discrimination based on race, color, religion, sex or national origin." Title VII. (Compl. at 9, ¶ 4).

### A. Legal Standards

Title VII of the Civil Rights Act of 1964 includes an anti-retaliation provision, making it unlawful "for an employer to discriminate against any of his employees ... because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). "This anti-retaliation provision is intended to further the goals of the anti-discrimination provision 'by preventing an employer from interfering (through retaliation) with an employee's efforts to secure or advance enforcement of [Title VII's] basic guarantees.' " *Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010). In order to present a prima facie case of retaliation under Title VII, a plaintiff must adduce "evidence sufficient to permit a rational trier of fact to find (1) that [ ] he engaged in protected participation or opposition under Title VII, (2) that the employer was aware of this activity, (3) that the employer took adverse action against the plaintiff, and (4) that a causal connection exists between the protected activity and the adverse action, *i.e.*, that a retaliatory motive played a part in the adverse employment action." *Cifra v. General Electric Co.*, 252 F.3d 205, 216 (2d Cir. 2001).

Case 1:25-cv-00848-AMN-TWD    Document 15    Filed 10/29/25    Page 71 of 77
Guillory v. Benedict, Not Reported in Fed. Supp. (2021)
2021 WL 707076

### B. Application

Plaintiff fails to assert any facts even suggesting that he enjoyed an employment relationship with SJH,[4] potential or realized–an essential element of any Title VII claim. The complaint also makes clear that plaintiff's alleged "protected activity" did not involve the assertion of any right under Title VII. Plaintiff's prior lawsuit against defendant Benedict was based on allegations of excessive force while he was visiting the hospital. As plaintiff does not plausibly state a cause of action, for retaliation or any other Title VII violation, this claim should be dismissed.

[4]    As to plaintiff's claim against defendant Benedict, Title VII does not allow for individual liability. *See Berger v. New York State Office for People with Developmental Disabilities*, No. 6:16-CV-1277 (LEK/ATB), 2019 WL 4805389, at *2-3 (N.D.N.Y. Sept. 30, 2019) (dismissing Title VII claims, including retaliation claims, against individual defendants in their individual and official capacities).

### V. Subject Matter Jurisdiction - Diversity Jurisdiction

#### A. Legal Standard

Federal courts exercise limited jurisdiction pursuant to Article III of the Constitution. A court may exert subject matter jurisdiction over claims in which: (1) there is a federal question in that a colorable claim arises under the Constitution, laws or treaties of the United States, and/or if (2) there is complete diversity of citizenship between each plaintiff and all defendants and a minimum of $75,000 in controversy. 28 U.S.C. §§ 1331, 1332. In the absence of a basis for exercising jurisdiction, the case must be dismissed. See Fed. R. Civ. P. 12(h)(3).

#### B. Application

**\*4**    As previously discussed, the court recommends dismissing the federal claims raised in the complaint, namely plaintiff's alleged § 1983 and Title VII causes of action. To the extent that plaintiff's complaint attempts to allege claims outside the court's federal question jurisdiction, diversity jurisdiction would be required.[5] However, the complaint clearly articulates that the parties are not diverse: plaintiff concedes that plaintiff and both defendants "reside" in New York State. (Compl. at 1; Dkt. No. 1-1 at 1). He makes

no further allegations regarding citizenship. Accordingly, plaintiff has failed to invoke this court's diversity jurisdiction. *See Herrick Co., Inc. v. SCS Commc'n, Inc.*, 251 F.3d 315, 322-23 (2d Cir. 2001) (The party seeking to invoke the court's jurisdiction bears the burden of "demonstrating that the grounds for diversity exist and that diversity is complete.") (citations omitted). Because plaintiff has failed to state any claims for relief invoking either the court's federal question jurisdiction or diversity jurisdiction, dismissal is warranted for lack of subject matter jurisdiction.

[5]    This is assuming that plaintiff has stated some sort of legal basis for his non-federal claims. Here, plaintiff appears to have plead only federal claims and statutes in his complaint, presenting another reason for the court to dismiss for lack of subject matter jurisdiction.

### VI. Opportunity to Amend

#### A. Legal Standards

Generally, before the court dismisses a pro se complaint or any part of the complaint sua sponte, the court should afford the plaintiff the opportunity to amend at least once, however, leave to re-plead may be denied where any amendment would be futile. *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993). Futility is present when the problem with plaintiff's causes of action is substantive such that better pleading will not cure it. *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation omitted).

#### B. Application

The court is recommending dismissal of this action for, among other things, lack of subject matter jurisdiction. Thus, any dismissal must be without prejudice. *Hollander v. Garrett*, 710 F. App'x 35, 36 (2d Cir. 2018). This court has serious doubts about whether plaintiff can amend to assert any form of federal jurisdiction over the situation that plaintiff describes in his complaint. As there appears no basis for plaintiff to raise his claims against SJH and Benedict in federal court, the court should not allow plaintiff to amend, notwithstanding a dismissal without prejudice. Because lack of subject matter jurisdiction is a substantive defect, *Deul v. Dalton*, No. 1:11-CV-0637(GTS/RFT), 2012 WL 235523, at *8 n.19 (N.D.N.Y. Jan. 25, 2012), the court recommends dismissal without leave to amend.

### VII. Motion for Counsel

**A. Legal Standards**

Plaintiffs bringing civil actions have no constitutional right to the appointment of counsel. *See, e.g., United States v. Coven*, 662 F.2d 162, 176 (2d Cir. 1981). However, pursuant to 28 U.S.C. § 1915(e), the court may request an attorney to represent an indigent party. 28 U.S.C. § 1915(e)(1) (authorizing the court to "request an attorney to represent any person unable to afford counsel."). Courts cannot utilize a bright-line test in determining whether counsel should be appointed on behalf of an indigent party. *Hendricks v. Coughlin*, 114 F.3d 390, 392-93 (2d Cir. 1997). Instead, a number of factors must be carefully considered by the court in ruling upon such a motion:

> [The Court] should first determine whether the indigent's position seems likely to be of substance. If the claim meets this threshold requirement, the court should then consider the indigent's ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross examination will be the major proof presented to the fact finder, the indigent's ability to present the case, the complexity of the legal issues and any special reason in that case why appointment of counsel would be more likely to lead to a just determination.

**\*5** *Terminate Control Corp. v. Horowitz*, 28 F.3d 1335, 1341 (2d Cir. 1994) (quoting *Hodge v. Police Officers*, 802 F.2d 58, 61 (2d Cir. 1986)) (internal quotation marks omitted). This is not to say that all, or indeed any, of these factors are controlling in a particular case. Rather, each case must be decided on its own facts. *Velasquez v. O'Keefe*, 899 F. Supp. 972, 974 (N.D.N.Y. 1995) (citing *Hodge*, 802 F.2d at 621). The Court must consider the issue of appointment carefully because "every assignment of a volunteer lawyer to an undeserving client deprives society of a volunteer lawyer available for a deserving cause." *Cooper v. A. Sargenti Co., Inc.*, 877 F.2d 170, 172 (2d Cir. 1989).

**B. Application**

Given the court's recommendation that the complaint be dismissed for failure to state a viable federal claim or otherwise establish subject matter jurisdiction, plaintiff has failed to satisfy the threshold requirement of "substance" and his request for counsel should thus be denied. However, even if plaintiff's complaint survived the court's initial review, plaintiff's motion for court appointed counsel is still subject to dismissal based on its prematurity and plaintiff's failure to satisfy the *Hodge* factors in any meaningful way. For example, plaintiff states in his motion that he will "go pro se if needed," and concedes he can "do discovery by [him]self." (Dkt. No. 3 at 1). Plaintiff has otherwise presented no "special reason" why appointment of counsel would be more likely to lead to a just determination at this time. Accordingly, plaintiff's motion for appointment of counsel is alternatively denied as premature.

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that plaintiff's motion to proceed IFP (Dkt. No. 2) is **GRANTED FOR PURPOSES OF FILING ONLY**, and it is

**ORDERED,** that plaintiff's motion for court appointed counsel (Dkt. No. 3) is **DENIED**, and it is

**RECOMMENDED**, that this action be **DISMISSED WITHOUT PREJUDICE**, but without the opportunity for amendment, and it is

**ORDERED**, that the Clerk of the Court serve a copy of this Order and Report-Recommendation on plaintiff by regular mail.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993)(citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72).

**All Citations**

Not Reported in Fed. Supp., 2021 WL 707076

---

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

Guillory v. Benedict, Not Reported in Fed. Supp. (2021)

2021 WL 706644

2021 WL 706644
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Patrick GUILLORY, Plaintiff,

v.

Brian BENEDICT et al., Defendants.

5:21-cv-73 (GLS/ATB)
|
Signed 02/23/2021

**Attorneys and Law Firms**

FOR THE PLAINTIFF: PATRICK GUILLORY, Pro Se, 753 James Street, Apt. #1129, Syracuse, NY 13203.

**ORDER**

Gary L. Sharpe, Senior District Judge

**\*1** The above-captioned matter comes to this court following an Order and Report-Recommendation (R&R) by Magistrate Judge Andrew T. Baxter duly filed February 4, 2021. (Dkt. No. 6.) Following fourteen days from the service thereof, the Clerk has sent the file, including any and all objections filed by the parties herein.

No objections having been filed, and the court having reviewed the R&R for clear error, it is hereby

**ORDERED** that the Report-Recommendation and Order (Dkt. No. 6) is **ADOPTED** in its entirety; and it is further

**ORDERED** that the complaint (Dkt. No. 1) is **DISMISSED** without prejudice; and it is further

**ORDERED** that the Clerk is directed to close this case; and it is further

**ORDERED** that the Clerk provide a copy of this Order to plaintiff in accordance with the Local Rules of Practice.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2021 WL 706644

---

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

2014 WL 3858398
Only the Westlaw citation is currently available.
United States District Court,
W.D. New York.

Shariff ABBAS, Plaintiff,

v.

UNITED STATES of America, Defendant.

No. 10–CV–0141S.
|
Signed Aug. 1, 2014.

**Attorneys and Law Firms**

Shariff Abbas, Flushing, NY, pro se.

**DECISION and ORDER**

WILLIAM M. SKRETNY, Chief Judge.

**INTRODUCTION**

*1 Plaintiff Shariff Abbas commenced this *pro se* action pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671 et seq., and other federal laws, alleging violation of his rights while detained at the Buffalo Federal Detention Facility ("BFDF") in Batavia, the Albany County Jail and the Perry County Correctional Center ("PCCC") in Uniontown, Alabama. Currently before the Court for review pursuant to 28 U.S.C. § 1915(e)(2)(B) is plaintiff's amended complaint [1], submitted in response to the Court's Order filed on August 16, 2013 ("August 16 Order") (Docket No. 6), which reviewed plaintiff's original complaint (Docket No. 4), dismissed several of the claims asserted therein, and granted plaintiff leave to file an amended complaint. For the reasons set forth below, plaintiff's FTCA claims against the United States related to his treatment at the BFDF may proceed and his remaining claims will be dismissed.

[1]     Plaintiff's amended complaint is accompanied by two voluminous bound volumes of exhibits captioned "Exhibit's [sic] Part 1", containing a Table of Contents and exhibits 1–18 and "Exhibit Part 2", containing a Table of Contents and exhibits 19–40. Given the voluminous nature of the exhibits, numbering hundreds of pages, and

the manner in which they are bound, which would make scanning them very difficult, the Court has not required the Clerk's Office to scan them into the court's electronic filing system. They will instead be maintained in paper form in a separate file in the Clerk's Office. *See* note to Docket No. 6.

**DISCUSSION**

A. *Bivens Claims*

The August 16 Order directed, *inter alia,* that plaintiff's FTCA claims stemming from his detention at the Albany County Jail and the PCCC be dismissed; that plaintiff be granted leave to file an amended complaint adding *Bivens* [2] or other federal claims against individual deportation officers and other personnel at BFDF who he alleges violated his rights; and that in the even he failed to timely file an amended complaint as directed, the Court would issue an Order directing service of the complaint upon the United States as the sole defendant to his medical malpractice claims brought under the FTCA. (Docket No. 5).

[2]     *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

The August 16 Order noted that in addition to his FTCA claims, plaintiffs original complaint asserted a variety of violations of his constitutional rights by individual deportation officers and other personnel during his periods of detention at BFDF and that these claims would be actionable against individual defendants under the *Bivens* doctrine, which allows a plaintiff to pursue constitutional claims against federal officials in their individual capacities for actions taken under color of federal law. *See Lombardi v. Whitman,* 485 F.3d 73, 78 (2d Cir.2007) ("[W]here an individual 'has been deprived of a constitutional right by a federal agent acting under color of federal authority,' the individual may bring a so-called *Bivens* action for damages against that federal agent in an individual capacity, provided that Congress has not forbidden such an action and that the situation presents 'no special factors counseling hesitation in the absence of affirmative action by Congress.' ") (internal citations omitted) (*quoting Thomas v. Ashcroft,* 470 F.3d 491, 496 (2d Cir.2006). The Court determined, however, that the *Bivens* claims could not proceed because of plaintiff's failure to name the individual custody officers and other officials who are alleged to have violated his rights as defendants in

the caption of the complaint, as required by Rule 10(a) of the Federal Rules of Civil Procedure:

**\*2** The Court cannot allow such *Bivens* claims to proceed, however, because of plaintiff's failure to name the individual custody officers and other officials who are alleged to have violated his rights as defendants in the caption of the complaint. Rule 10 of the Federal Rules of Civil Procedure provides that "[t]he title of the complaint must name all the parties" Fed.R.Civ.P. 10(a). Therefore, a party that is not named in the caption of a complaint or amended complaint is not a party to the action.

(August 16 Order at 16) (citations omitted). The Court proceeded to note that plaintiff's failure to name in the caption of the complaint the individual defendants against whom he wished to assert *Bivens* claims would make it infeasible for the Court to determine which of the individual custody officers mentioned in the body of the complaint should be deemed to be defendants to such claims, given the often ambiguous nature of his reference to such individuals. (*Id.* at 16–17). The Court therefore concluded that "[t]he way to remedy plaintiff's failure to name as defendants in the caption of his complaint those individuals against whom he may seek to assert *Bivens* claims, as suggested by the allegations set forth in the body of the complaint, is to afford him leave to file an amended complaint which conforms to the requirements of Rule 10(a)." (*Id.* at 17) (citations omitted). "Accordingly, plaintiff will be afforded the opportunity to file, as directed below, an amended complaint in which he shall name in the caption of the complaint, each of the individuals against whom he intends to assert a *Bivens* claim or claims, in a manner that conforms to the requirements of Rules 8(a) and 10(a) of the Federal Rules of Civil Procedure." (*Id.*).

The Court accordingly directed, in the Conclusion of the August 16 Order, that plaintiff be given leave to file an amended complaint conforming to the requirements of Rules 8 and 10 of the Federal Rules of Civil Procedure, and the Court again explicitly advised plaintiff of his duty to list all defendants in the caption of the complaint:

Plaintiff is reminded, as explained above, that if he wishes to assert *Bivens* or other claims against defendants other than the United States in the amended complaint, *he must name those individuals in the caption of the amended complaint* and set forth

specific allegations with respect to how those individuals violated his rights.

(*Id.* at 21). (emphasis added).

While plaintiff's amended complaint contains allegations that would support *Bivens* claims (*see* Amended Complaint, ¶¶ 17–42 *passim* ),[3] it does not name in the caption of the complaint any individuals against whom plaintiff is seeking to assert *Bivens* clams, nor does the section of the complaint captioned "PARTIES" list any individual defendants. While plaintiff does, in the section of the amended complaint captioned "CONCLUSION", set forth a list of "Federal Employees from (BFDF) Health Division" (Amended Complaint ¶ 57), which includes individuals mentioned elsewhere in the amended complaint in connection with plaintiff's allegations that would be relevant to *Bivens* claims, the individuals named therein are not listed as defendants in the caption of the amended complaint or in plaintiff's recital of the parties to this action at the beginning of the amended complaint; as noted *supra,* plaintiff lists only one defendant-the United States-in the complaint caption and in his recital of the parties. Moreover, plaintiff's statement of relief sought at the end of the amended complaint (captioned "PRAYER") demands judgment "against *the defendant.*" (*Id.* at p. 16) (emphasis added).[4]

3    Plaintiff divides his claims into two sections of the amended complaint, namely "Medical Malpractice" (Amended Complaint, p. 3–5, ¶¶ 8–16), which contains allegations supportive of his FTCA claims, and "U.S. D.H.S.-ICE Agency and Custody Officers Abuses" (*Id.* at p. 5–14, ¶¶ 17–56), which contains allegations supportive of his *Bivens* constitutional claims. The Court notes, however, that a number of the allegations set forth in the "Federal Agency and Custody Officers Abuses" section of the complaint are relevant to his FTCA malpractice claims. *See, e.g.,* Amended Complaint, ¶ 21.

4    Plaintiff's failure to include in the caption of the amended complaint the names of any defendants against whom he is asserting *Bivens* claims is not the only instance of his disregard of the Court's directives regarding the form and content of his

amended complaint. The August 16 Order noted that many of the *Bivens* claims that plaintiff's allegations would support against individuals identified in the body of the complaint appeared to be barred by the statute of limitations. August 16 Order at 18. The Court accordingly directed as follows:

> In the amended complaint that plaintiff will be given leave to file, as provided below, in which he must demonstrate either that his *Bivens* claims stemming from his incarceration at BFDF are timely or, if any such Bivens claims are untimely, he must allege facts demonstrating why equitable tolling should be applied to the statute of limitations periods for such claims.

(August 16 Order at 19). As noted *supra,* the August 16 Order provided that plaintiff would be given leave to file an amended complaint with respect to his *Bivens* claims, and plaintiff was further advised, in this regard, "that he should address the timeliness of any *Bivens* claims that he asserts in the amended complaint and any argument as to why the limitations period applicable to such claims should be equitably tolled." (August 16 Order at 21). However, plaintiff's amended complaint does not address the timeliness issue or offer any basis for equitable tolling of the limitations period. Given the Court's dismissal herein of the *Bivens* claims based upon plaintiff's failure to identify the defendants against whom he seeks to assert such claims, the Court need not further address the timeliness issue.

Plaintiff further disregarded the August 16 Order to the extent that he reasserts claims stemming from his detention at the Albany County Jail from February 21, 2006–March 21, 2006, and the Perry County Correctional Center ("PCCC") in Uniontown Alabama from August 5, 2006–February 9, 2007. (Amended Complaint at ¶¶ 14, 15, 28–40). The August 16 Order dismissed the claims stemming from plaintiff's incarceration at those facilities pursuant to 28 U.S.C. § 1406(a) for improper venue. (August 16 Order at 13–14). Those claims remain dismissed.

**\*3** The Court's duty to construe liberally the pleadings of *pro se* litigants does not absolve *pro se* litigants from the duty to comply with the requirements of the Federal Rules

of Civil Procedure and court orders issued pursuant to those rules. *See, e .g., Caidor v. Onondaga County,* 517 F.3d 601, 605 (2d Cir.2008) (noting that *pro se* litigants are required to familiarize themselves with procedural rules and comply with such rules); *McDonald v. Head Criminal Court Supervisor Officer,* 850 F.2d 121, 124 (2d Cir.1988) ("[W]hile *pro se* litigants may in general deserve more lenient treatment than those represented by counsel, all litigants, including *pro ses,* have an obligation to comply with court orders. When they flout that obligation they, like all litigants, must suffer the consequences of their actions.")). As discussed *supra,* this Court's previous order explained to plaintiff the requirement of Rule 10(a) that all defendants to an action be named and identified as such in the caption of the complaint, and the Court afforded him the opportunity to cure the defect in his initial complaint by filing an amended complaint naming all defendants. Plaintiff has inexplicably failed to comply with the Court's order and the requirement of Rule 10(a). Accordingly, to the extent that plaintiff seeks to bring *Bivens* claims against individual Custody Officers and other BFDF officials, *see* Amended Complaint, ¶ 58 ("Plaintiff want [sic] this Court to bring Justice against Federal Agency Employees who Violate constitutional law against Plaintiff's rights"), such claims must be dismissed in light of his failure to name those individuals as defendants in the caption of the amended complaint. *See, e.g., Ferdik v. Bonzelet,* 963 F.2d 1258, 1262–63 (9th Cir.1992) (dismissing action for refusal to comply with court orders to name defendants in the caption as required by Rule 10(a)).

Moreover, as explained in the August 16 Order (pp. 14–15), constitutional claims under *Bivens* cannot be brought against the only defendant named in the complaint, the United States. *See Robinson v. United States Bur. Of Prisons,* 244 F.Supp.2d 57, 66 (N.D.N.Y.2003) ("[A] *Bivens* action may not be maintained against the United States.") (citing *Washington v. DEA,* 183 F.3d 868, 872 n. 8 (8th Cir.1999). Nor can constitutional claims be asserted against the United States under the FTCA. *See Washington,* 183 F.3d at 873; *Russ v. United States,* 62 F.3d 201, 204 (7th Cir.1995) ("[C]onstitutional wrongs cannot be remedied through the FTCA,") (citing *FDIC v. Meyer,* 510 U.S. 471, 476, 114 S.Ct. 996, 1001–02, 127 L.Ed.2d 308(1994)).

Plaintiff having thus having failed to name a proper defendant to his *Bivens* claims, the Court concludes that his *Bivens* claims must be dismissed pursuant to 28 U.S.C. § 1915(e)(2) (B) for failure to state a claim on which relief can be granted.

### B. *Treaty Claims*

The Conclusion section of the amended complaint invokes, as a basis for relief against defendant United States not raised in plaintiff's original complaint, treaties to which the United States is a signatory. Specifically, the amended complaint states "At such time and places the United States violates International Laws as A[sic] result the United States are not in compliance with Refugee Convention Requirements or The United Nations Convention against Torture Prohibitions." (Amended Complaint, § 57). It is well established that the United Nations Convention Against Torture and Other Cruel, Inhumane or Degrading Treatment or Punishment, Dec. 10, 1984, 1465 U.N.T.S. 85, 23 I.L.M. 1027, ("CAT") does not give rise to a private right of action. *Renkel v. United States,* 456 F.3d 640, 644 (6th Cir.2006) ("As the Articles [of CAT] are not self-executing, they do not create private rights of action; therefore, any private lawsuit seeking to enforce the United States' obligations under the Convention must be based on domestic law."); *Wolinski v. Junious,* 2012 U.S. Dist. LEXIS 65889, at *18–19,2012 WL 1657576 (E.D.Cal. May 10, 2012) ("The CAT does not give rise to a private right of action because it is not self-executing.) (citing *Akhtar v. Reno,* 123 F.Supp.2d 191, 196 (S.D.N.Y.2000),

**\*4** The United Nations Convention Relating to the Status of Refugees, adopted July 28, 1951, art. 26, 19 U.S.T. 6259, 6576, 189 U.N.T.S. 150, 172 ("Refugee Convention") likewise does not create a private right of action. *United States v. Casaran–Rivas,* 311 Fed. Appx. 269, 272 (11th Cir.2009) (unpublished) ("[A]rgument that the indictment violated the refugee Convention and CAT Treaty is without merit, as the Refuge[e] Convention and CAT Treaty are not self-executing, or subject to relevant legislation, and, therefore, do not confer upon aliens a private right of action to allege a violation of their terms."); *Reyes–Sanchez v. Ashcroft,* 261 F.Supp.2d 276, 288–89 (S.D.N.Y.2003) ("Because the Refugee Convention is not self-executing, it does not create individual rights.").

Accordingly, plaintiff's claims against the United States under CAT and Refugee Convention are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) for failure to state a claim on which relief may be granted.

### C. *FTCA Claims*

The medical malpractice-related claims under the FTCA asserted by plaintiff in the amended complaint and stemming from his detention at BFDF may go forward against defendant United States. [5]

[5]    As explained in the August 16 Order, plaintiff's allegations of medical malpractice and the failure to properly treat his serious medical condition are clearly cognizable under the FTCA when asserted against the United States. (August 16 Order at 6).

### *ORDER*

IT IS HEREBY ORDERED, that plaintiff's *Bivens* claims are dismissed with prejudice;

FURTHER, that plaintiff's claims under CAT and the Refugee Convention are dismissed with prejudice;

FURTHER, that the Clerk of the Court is directed to complete, on plaintiff's behalf, and to issue, a summons for service of process on defendant United States of America;

FURTHER, the Clerk of the Court is directed to send copies of the Summons, Amended Complaint, [6] and this Order by certified mail to the following, pursuant to Rule 4(i) of the Federal Rules of Civil Procedure:

[6]    As explained in n. 1, *supra*, plaintiff's voluminous exhibits to the amended complaint are maintained in paper form in a separate file folder in the Clerk's Office.

• Attorney General of the United States, Main Justice Building, 10th and Constitution Avenues N.W., Washington, DC 20530;

• Civil Process Clerk, United States Attorney for the Western District of New York, United States Attorney's Office, USAO/WDNY, 138 Delaware Avenue, Buffalo, New York 14202.

SO ORDERED.

**All Citations**

Not Reported in F.Supp.3d, 2014 WL 3858398

---

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW    © 2025 Thomson Reuters. No claim to original U.S. Government Works.    4